IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Len Salas, | ) | Case No. 3:18-bk-02662 |
| | ) | Chapter 7 |
|     Debtor. | ) | Judge Harrison |
| _____ | ) | |
| | ) | |
| Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-Personal Representatives of the Estate of Nina Brekelmans | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| Michael McLoughlin and Martha Johnson, Co-Personal Representatives of the Estate of Michael Patrick McLoughlin, | ) ) ) ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Ad Pro No. 3:20-ap-90027 |
| | ) | |
| Max Salas, | ) | |
| | ) | |
|     Defendant. | ) | |

## JOINT PRETRIAL STATEMENT

Plaintiffs, Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-Personal Representatives of the Estate of Nina Brekelmans, and Michael McLoughlin and Martha Johnson, Co-Personal Representatives of the Estate of Michael Patrick McLoughlin ("Plaintiffs"), and Max Salas ("Defendant") respectfully submit this Joint Pretrial Statement, pursuant to Fed.R.Civ. Pro. ("Rule") 16 and the Preliminary Pretrial Order entered by the Court on March 3, 2020, applicable to this adversary proceeding.

# I.

## PLAINTIFFS' STATEMENT OF THE CASE

The Plaintiffs' Complaint seeks a declaratory judgment that the Plaintiffs are the owners of the subject property, commonly referred to as 1610 Riggs Place, NW, Washington DC ("the Property"), or alternatively recovery of property owned by Len Salas at the time of his bankruptcy filing in April, 2018. The property has been identified throughout the Salas cases, the Len Salas case in Middle District of Tennessee, Case No. 3:18-bk--02662, and the Max Salas Case in the District of Columbia, Case No. 18-00260. The Plaintiffs assert that because Len Salas was the sole titled owner of the Property at all times from 2007 through his bankruptcy filing in 2018, and, because Len Salas was the sole obligor under the SunTrust Deed of Trust Note which was the purchase money for the property, Len's bankruptcy estate had and has, a superior interest in the DC Property at issue here, whether under the Trustee's avoiding powers, pursuant to 11 U.S.C. §§ 544, et seq, or as a actual creditor, pursuant to 11 U.S.C. §§ 548 and or 549.

The Plaintiffs' Complaint seeks recovery of the Property, or its value. The Plaintiffs assert they are entitled to recovery under the Trustee's avoiding powers pursuant to a sale conducted by the Trustee under Court authority (Order of June 12, 2019 (D-179)) and a sale to the Plaintiffs approved by this Court and evidenced by the Trustee's Report of Sale dated August 14, 2019 (D-191). Because no transfer of the Property was effected from Len to Max prior to Len's bankruptcy filing, there is no applicable statute of limitations which would affect the causes asserted in the Plaintiffs' Complaint.

Pending the final sale of the subject property pursuant to the causes in the Plaintiffs' Complaint, the Plaintiffs seek interim relief assuring that the Property is properly maintained, fair market rent or other appropriate payments are made to the Plaintiffs and other relief, all as outlined in the Complaint.

# I.

## DEFENDANT'S STATEMENT OF THE CASE

In their seven-count Complaint, the Plaintiffs ask this Court to set aside a transfer of property made in 2010 – five years before the tragic fire at the center of this matter, six years earlier than the expiration of the statute of limitations for fraudulent transfers, and eight years before Plaintiffs became creditors of the Defendant. As Defendant has pointed out in his Motion to Dismiss, (a) any transfer of the Property occurred before the look-back period for all counts in this lawsuit and (b) the Plaintiffs have no standing to pursue this Complaint, as each of the seven counts belong exclusively to the Trustee and cannot be transferred to a third party. Therefore, this Complaint should be dismissed without as a matter of law.

Even if the Complaint did not violate the statute of limitations, and even if the Plaintiffs had standing to pursue this action, the Complaint still has a number of fatal factual flaws. First, the Plaintiffs cannot prove that there is any creditor of Len Salas that exists today that was also a creditor when the Property was transferred in 2010, which is an absolute bar to any recovery sought in the Complaint. Second, the Plaintiffs cannot prove that Len Salas transferred the

Property to Max Salas in an effort to avoid his creditors. In fact, the averments stated in the Complaint show just the opposite. The only reason that Max Salas ever transferred the Property to Len Salas in the first place was so that Len Salas could obtain a mortgage on the Property, the proceeds of which were used to pay Max Salas' divorce settlement. Len Salas never made any payments on account of the property and, in 2010, he transferred the Property back to a trust of which Max Salas was trustee, so that Max Salas could rent rooms on behalf of the trust. If anything, it was the 2007 transfer from Max Salas to Len Salas that was a "fraudulent transfer"; but the 2010 transfer (which the DC Court has already found made Max Salas the beneficial owner) certainly was not fraudulent as Len Salas had no creditors he was seeking to avoid. Finally, the Plaintiffs cannot demonstrate that reasonable inquiry by a third party, at any time after 2007, would not have disclosed that Max Salas was in fact the owner of the Property.

In short, this Complaint has a host of incurable problems: the Plaintiffs have no standing to pursue the Complaint; the Complaint violates all applicable statutes of limitations; and the facts simply do not support a recovery under any of the Plaintiffs' seven theories. Accordingly, the Complaint should be summarily dismissed.

## III.

## JOINT STATEMENT OF UNCONTESTED FACTS

1. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans and Michael Patrick McLoughlin, respectively.

2. Nina Brekelmans and Michael Patrick McLoughlin were tragically killed in a fire at a residence in Washington, DC (the "Fire") located at 1610 Riggs Place, NW, Washington, DC (the "Property").

3. Defendant resided in the Property from approximately 2007 through early June, 2015 and then commenced residing in the Property again in early 2018.

4. The Plaintiffs were the successful bidders at an auction sale of this bankruptcy estate's interest in the trustee's avoidance and recovery actions under Code §§ 544 *et seq*.

5. The Defendant is a debtor in Case No. 18-00260 before the United States Bankruptcy Court for the District of Columbia, which was instituted by the filing of a voluntary Chapter 11 petition by the Defendant in April 2018.

3

6. In April 2018, the Plaintiffs obtained judgements against both Len Salas and Max Salas totaling $15.2 Million (collectively, the "Judgement") on account of the death of Nina Brekelmans and Michael Patrick McLoughlin from the fire at the Property.

7. Len Salas was named a Defendant in the suit because he was, at all times relevant, and still is the record title holder of the Property, according to the DC register of deeds.

8. Although Max Salas and Len Salas both appealed the Judgment, there has been no prosecution of the appeal and no stay entered in the appeal.

9. On January 28, 2019, the Bankruptcy Court for the District of Columbia entered an Order Confirming Max's Third Amended Plan of Reorganization (the "Confirmed Plan"). Max filed a Fourth Amended Plan ("the Confirmed Plan") which contained no substantive changes from the Third Amended Plan but did change the name of the disbursement agent.

10. Under the terms of the Confirmed Plan, entered in Max Salas' bankruptcy on or about January 31, 2020, Max Salas is withdrawing his appeal of the Judgement.

11. Max Salas deeded the Property to Len Salas in 2007 (the "2007 Deed") because Max was unable to refinance the Property, which refinance was necessary due to Max's pending divorce from his then wife, a co-owner of the Property.

12. Simultaneously with the transfer from Max to Len, Len obtained a loan from SunTrust Bank for $870,000 (the "SunTrust Loan") by pledging the Property as collateral.

13. The proceeds of the SunTrust Loan were paid to Max Salas' ex-wife as part of a divorce settlement.

14. The Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the Property to Max Salas". The Plan further provides that any such conveyance is subject to the Plaintiffs' avoidance actions.

4

15. In 2007, Max Salas had tax liens and other obligations which made it impossible for Max Salas to obtain a loan on the Property.

16. In addition, in 2007, Max Salas has a tax evasion conviction on his record.

17. Max Salas tried to refinance the Property several times after 2007, all to no avail.

18. At least through 2015, every attempt to refinance the Property required the participation of Len Salas as a co-signer or co-obligor.

19. From sometime after 2007 through the date of the Fire, Max Salas, acting as "agent" or "trustee" rented out rooms at the Property.

20. All tenants, including Nina Brekelmans and Michael Patrick McLoughlin, signed leases with "the CLR Trust", and Max Salas signed each lease as trustee of the trust.

21. According to Len Salas, the CLR Trust was a trust created by Max Salas for the benefit of his three sons, Chase, Len and Ron.

22. The lease payments were put into an account in the name of the CLR Trust and were used to pay obligations on the SunTrust Loan and other expenses associated with the Property.

23. Through the date of the Fire and at all times prior to the bankruptcy filings, all governmental notices and tax bills and notices regarding the Property were addressed to Len Salas.

24. In July 2010, Max Salas and Len Salas traveled to Colorado to visit Ron Salas, one of Max Salas' sons who was a recent law school graduate and was also recently admitted to practice law in Colorado.

5

25. While in Colorado, Len Salas and Max Salas executed a trust agreement which Ron Salas prepared using a Colorado form even though the purported trust property, the Property, was located in D.C.

26. Ron Salas also prepared a form quitclaim deed (the "Quitclaim Deed") for the Property, which Len Salas also signed.

27. Len Salas deeded the Property to his father via the Quitclaim Deed, while Len Salas remained the sole obligor on the SunTrust Loan.

28. At all relevant times, Len Salas had limited income and assets, other than the Property.

29. Max Salas intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes.

30. The Quitclaim Deed has never been recorded.

31. Because Len Salas was not residing in the Property he could not claim the benefit of the DC homestead exemption.

32. In early 2018, less than a month prior to the Superior Court trial, Max Salas and Len Salas produced a copy of the 2010 trust and quitclaim deed for the first time, and sought to exclude Len Salas from the Superior Court litigation by asserting that Max Salas was the actual owner of the Property.

33. The Superior Court denied this attempt, the trial continued, and Judgment was entered against Len Salas and Max Salas.

34. The Judgment is now final and binding on all parties as a result of the pending final distribution and closing of Len Salas' estate in this Court and the Confirmed Plan in Max Salas' bankruptcy.

35. From the time of the Fire until February or March 2018, no one resided in the Property.

36. During that time, and until November 2019, no payments were made on the SunTrust Loan with the exception of one payment made by Max Salas from the insurance proceeds he received as a result of the fire damage.

37. According to the schedules filed in Max Salas' bankruptcy, as of the commencement of his bankruptcy case, in April, 2018, the only lien creditors were the IRS ($6,768.66 claim) and SunTrust Mortgage ($1,030,825.86).

38. The balance of the SunTrust Loan as of October 26, 2018 was $1,141,021.14.

39. Max Salas has been making the required payments on the Property since November 2019.

40. On September 25, 2018, the Bankruptcy Court for the District of Columbia entered a Memorandum and Order overruling the Estates' Objections to the Defendant's claim of Exemption.

41. The Estates timely appealed to the United States District Court for the District of Columbia.

42. On or about January 2, 2020, the United States District Court for the District of Columbia issued an order remanding the appeal to the Bankruptcy Court for determination of issues raised by the Plaintiffs in a Motion seeking to add to the appellate record or, alternatively, to remand.

43. In the Exemption Ruling, the D.C. Bankruptcy Court ruled that Max Salas was the owner of the Property by virtue of the 2010 Quitclaim Deed.

44. The Bankruptcy Court made no final determination of the effect of the trustee's avoiding powers asserting that effect was up to Len Salas' bankruptcy estate.

45. No deed has been recorded naming Max Salas as trustee or owner of the Property.

46. Other than the original deed dated 2007 and the Confirmation Order, no deeds or other documents of title have been filed related to the Property.

47. Pursuant to an order of this Court dated June 12, 2019, the trustee in this case was authorized to sell the estate's interest in the Trustee's avoidance and recovery rights under 11 U.S.C. §§ 544 through 551.

48. On July 23, 2019, the trustee in Len Salas' case held an auction sale to sell the bankruptcy estate's interest in the avoidance and recovery actions pursuant to 11 U.S.C. §§ 544 through 553.

49. The Plaintiffs were the successful bidders.

50. Max Salas valued the Property at $2.5 Million on his schedules in or about May 2018, and the Property was appraised for approximately $2.4 Million in or about August 2019.

## IV.

## JOINT STATEMENT OF CONTESTED FACTS

51. Whether the current value of the Property exceeds the secured claims against the Property by more than $1 million, as the Plaintiffs claim.

52. Whether the deaths of Nina Brekelmans and Michael Patrick McLoughlin were the result of the Defendant's gross negligence, as alleged by the Plaintiffs.

53. Whether the Property was purchased by Len in 2007 after his father, Max and Max's then wife, divorced.

8

54. Whether Max Salas has "consistently attempted to hide assets from the IRS and other taxing authorities, including his potential interest in the Property."

55. Whether Max Salas did not want the Property, or any matters related to the Property, in his name so as to avoid taxes or any publicly recorded or confirmed ownership interest.

56. Whether Max Salas deposited all income from leases associated with the Property into the CLR Trust bank account because he did not want to record any income in his name.

57. Whether Max Salas and Ron Salas took advantage of Len Salas and convinced him to deed the Property to his father.

58. Whether, at any time since 2007, Max made any payments to Len Salas or gave him any other value related to the Trust or the Quitclaim Deed.

59. Whether the D.C. Bankruptcy Court determined that the trustee's avoiding powers could result in the recovery of the Property for the benefit of the creditors of Len Salas' estate and, therefore, that those avoiding powers could result in a recovery of the Property, or its value, for the benefit of creditors.

60. Whether all indicia of ownership of the Property was held by Len Salas through the date of Max Salas' bankruptcy.

61. Whether the alleged Quitclaim Deed in 2010 was abandoned by Len Salas and Max Salas.

62. Whether the alleged Quitclaim Deed in 2010 resulted in a transfer of the Property from Len to Max.

63. Whether, at the time of the transfer in 2010, the Property was worth in excess of $1.5 million.

9

64. Whether any of Len Salas' creditors today were creditors of his in July 2010.

65. Whether the July 2010 transfer was made with the actual intent to defraud creditors and/or potential creditors.

66. Whether the July 2010 transfer made Len Salas insolvent and unable to pay his obligations as they came due.

67. Whether the July 2010 transfer of the Property was made for less than reasonably equivalent value.

68. Whether, in July 2010, Len Salas was insolvent or was rendered insolvent as a result of the July 2010 transfer.

69. Whether the transfer of the Property was made to an insider for an antecedent debt.

70. Whether Max Salas had reasonable cause to believe that Len Salas was insolvent on the date of the transfer.

71. Whether, at the time of the fire, the Property was owned by, and titled in the name of, Len Salas.

72. Whether, at the time of the alleged Quitclaim Deed, and at all times thereafter, Len Salas did not have sufficient income or assets to pay the SunTrust Mortgage balance.

V.

**JOINT STATEMENT OF CONTESTED LEGAL ISSUES**

73. Whether this Court has jurisdiction over this matter.

74. Whether venue lies in this Court.

75. Whether this is a core matter.

10

76. Whether the Plaintiffs have standing to pursue any of the counts contained in the Complaint.

77. Whether all of the causes of action alleged in the Complaint are barred by the applicable statute of limitations.

78. Whether the Property is currently owned by Len Salas or Max Salas.

79. Whether the Property was ever owned by Len Salas.

80. Whether the Quitclaim Deed was a violation of the SunTrust Loan terms.

81. Whether, at the time of the Quitclaim Deed in July 2010, Len Salas' only significant asset was the Property.

82. Whether, at the time of the Quitclaim Deed and immediately thereafter, Len Salas was insolvent.

83. Whether, at the time of the Quitclaim Deed and immediately thereafter, Len Salas' liabilities exceeded his assets and his income was insufficient to pay his obligations.

84. Whether, pursuant to 11 U.S.C. § 544(a)(3), the Plaintiffs are (a) owners of the Property, (b) entitled to possession of the Property, or (c) entitled to sell the Property.

85. Whether, pursuant to 11 U.S.C. § 544(a)(1), Plaintiffs have a judgment lien against the Property.

86. Whether, pursuant to 11 U.S.C. § 544(a)(2), Plaintiffs have a superior claim to the Property.

87. Whether the July 2010 transfer was made with the actual intent to defraud creditors and/or potential creditors.

88. Whether the July 2010 transfer of the Property is avoidable pursuant to 11 U.S.C. § 548.

11

89. Whether the transfer of the Property, if any, from Len Salas to Max Salas occurred within the statute of limitations established by 11 U.S.C. § 548.

90. Whether the Plaintiffs' claims arose before or after any transfer of the Property.

91. At what time would a good faith purchaser have notice of the transfer of the Property from Len Salas to Max Salas.

92. Whether the Plaintiffs are entitled to any relief pursuant to 11 U.S.C. § 544(b)(1) and/or D.C. Code § 28-3104 *et seq.*

93. Whether any transfer of the Property occurred after the filing of Len Salas' bankruptcy case.

94. Whether the Plaintiffs are entitled to any relief pursuant to 11 U.S.C. § 549.

95. Whether 11 U.S.C. § 550 creates any cause of action that enables the Plaintiffs for any relief.

96. Whether Len Salas and Max Salas waived or abandoned the alleged Quitclaim Deed after July, 2007.

12

RESPECTFULLY SUBMITTED:


/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
615-465-6008 (Telephone)
phillip@thompsonburton.com

*Counsel for Defendant*


/s/ Philip J. McNutt
Philip J. McNutt
Law Office of Philip J. McNutt, PLLC
11921 Freedom Drive, Ste 584
Reston, VA 20190
703-904-4380
pmcnutt@mcnuttlawllc.ocm

and

Taylor A. Cates
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103
901-524-5165
tacates@bpjlaw.com

*Counsel for Plaintiffs*