
Marian F. Harrison
US Bankruptcy Judge

Dated: 12/7/2020



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 318-02662 |
| LEN SALAS, | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) CHAPTER 7 |
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS, | ) ADV. NO. 320-90027 |
| and | ) |
| MICHAEL MCLOUGHLIN AND MARTHA JOHNSON, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF PATRICK MCLOUGHLIN, | ) |
| Plaintiffs, | ) |
| v. | ) |
| MAX SALAS, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Max Salas' motion to dismiss the above-styled complaint filed by Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-Personal Representatives of the Estate of Nina Brekelmans, and Michael McLoughlin and Martha Johnson, Co-Personal Representatives of the Estate of Patrick McLoughlin (collectively "plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), made applicable by Federal Rule of Bankruptcy Procedure 7012. For the following reasons, the Court finds that the complaint should be dismissed.

## I. ISSUES

1. Whether Max Salas' objection to standing is barred under the doctrines of waiver and/or judicial estoppel?

2. Whether the plaintiffs have standing to bring this complaint?

3. Whether the complaint is barred by the applicable statutes of limitation?

## II. FACTS

The underlying facts that led to this adversary proceeding are tragic and heartbreaking. In 2015, a fire occurred at 1610 Riggs Place, NW, Washington, D.C. ("Property"). Nina Brekelmans and Patrick McLoughlin perished in the fire, and Max Salas was seriously injured. On October 20, 2015, the plaintiffs filed two separate wrongful death actions against Max Salas and his son, Len Salas, in the Superior Court for the District of Columbia ("Superior Court"). The Superior Court trial began on March 26, 2018. Less than a month prior to the trial, Len Salas filed a motion for summary judgment,

producing for the first time a copy of a 2010 trust and quitclaim deed ("2010 Quitclaim") and seeking to exclude Len Salas from the litigation by asserting Max Salas was the real owner of the Property. The request was denied, but the plaintiffs were put on notice of the July 2010 transfer at that time. The matters continued to trial, and the plaintiffs were awarded a collective judgment of $15.2 million against Len and Max Salas, jointly and severally, in April 2018. Shortly after entry of the judgment, Max Salas filed for bankruptcy protection in the District of Columbia, and Len Salas filed his petition in this Court on April 18, 2018. Len Salas' case was converted from Chapter 11 to Chapter 7 on December 26, 2018, and the Chapter 7 Trustee ("Trustee") was appointed.

Len Salas was the record owner of the Property from 2007 until July 2010. In July 2010, Len Salas executed the 2010 Quitclaim by which he transferred his interest in the Property to a trust formed by and for Max Salas. The 2010 Quitclaim was not recorded. On September 25, 2018, the District of Columbia Bankruptcy Court, in the context of Max Salas' Chapter 11 case, ruled that the Property belonged to Max Salas by virtue of the 2010 Quitclaim and that he was entitled to claim the District of Columbia's unlimited homestead exemption in the Property. *In re Salas*, No. 18-00260, 2018 WL 4621930 (Bankr. D.C. Sept. 24, 2018) ("Homestead Opinion"). The District of Columbia Bankruptcy Court held that failure to record the 2010 Quitclaim did not invalidate the transfer under District of Columbia law. *Id.* at *20. While D.C. Code § 42-401 requires recordation, "that section deals with acknowledgment, certification, and recordation as protections for creditors and subsequent bona fide purchasers . . . [and t]hose requirements

3

do not bar the operation of a signed, sealed, and delivered deed against parties and their assignees." *Id.* (citations and internal quotations omitted). Accordingly, the District of Columbia Bankruptcy Court held that the 2010 Quitclaim gave Max Salas both legal and beneficial interests in the property. *Id.* The District of Columbia Bankruptcy Court did not rule on whether the transfer could be avoided in this bankruptcy case, stating that "whether a hypothetical purchaser of the Property would have inquiry notice of Max's ownership of the Property must be decided by the U.S. Bankruptcy Court for the Middle District of Tennessee." *Id.* at *21.[1]

On April 10, 2019, the Trustee filed a motion to sell any actions related to the Property to Ron Salas ("Ron"), Max Salas' other son. The plaintiffs and the U.S. Trustee objected[2] but did not raise either the standing question or whether the Trustee could sell his right to bring avoidance actions. After a hearing, the Court approved the sale on June 12, 2019, instructing the Trustee to give notice of the sale to all interested parties and potential buyers. If alternative bids were received, the Trustee was to conduct an auction, which he did. The plaintiffs were the highest and best bidders. In exchange for $156,000,

---

[1] The plaintiffs appealed the Homestead Opinion to the District Court for the District of Columbia. On January 13, 2020, the District Court denied the plaintiffs' motion to supplement the record on appeal and dismissed the appeal after construing the plaintiffs' alternative motion to remand as a motion to voluntarily dismiss. The plaintiffs then filed a motion to reconsider the Homestead Opinion in the bankruptcy court. The motion to reconsider was denied on October 13, 2020, and the plaintiffs filed a notice of appeal on October 26, 2020.

[2] In their objection, the plaintiffs asserted that the sale to Ron was not in the best interest of the estate. The U.S. Trustee objected because the motion did not present adequate proof that the sale to an insider was in the best interest of the estate.

4

the Trustee sold to the plaintiffs the estate's interest in "[a]ny potential avoidance actions against Max Salas and/or his bankruptcy estate under 11 U.S.C. Sections 544, 545, 547, 548, 549, and 553" as related to the Property. After administrative claims were paid, the Trustee distributed the remaining funds from the sale ($126,769.43) pro rata to unsecured creditors. The plaintiffs represent 99.8% of the unsecured claims.

The plaintiffs filed this complaint against Max Salas on March 2, 2020, seeking to avoid the 2010 Quitclaim conveyance of the Property. In the complaint, the plaintiffs seek relief under seven different theories: (1) the Trustee's avoidance powers based upon the bona fide purchaser status conferred by 11 U.S.C. § 544(a)(3); (2) the Trustee's avoidance powers based upon the hypothetical judgment lien holder status conferred by 11 U.S.C. § 544(a)(1); (3) the Trustee's avoidance powers based upon the hypothetical judgment creditor execution status conferred by 11 U.S.C. § 544(a)(2); (4) the Trustee's fraudulent transfer avoidance rights pursuant to 11 U.S.C. § 548(a); (5) the Trustee's state court fraudulent transfer avoidance rights pursuant to 11 U.S.C. § 544(b)(1); (6) the Trustee's post-petition transaction avoidance rights pursuant to 11 U.S.C. § 549; and (7) the Trustee's recovery rights pursuant to 11 U.S.C. § 550.

In response to the complaint, Max Salas filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), made applicable by Federal Rule of Bankruptcy Procedure 7012. Max Salas asserts that the plaintiffs lack standing to pursue any of the seven counts, and even if the plaintiffs did have standing, the claims are barred

5

by the applicable statutes of limitation. The plaintiffs oppose the motion, asserting that Max Salas is barred from objecting to standing based on the doctrines of waiver and judicial estoppel. The plaintiffs also assert, for the first time, that the date of the 2010 Quitclaim is not the relevant date under the statutes of limitation. Because the deed was never recorded, the plaintiffs argue that April 17, 2018, the day before Len Salas filed his petition, is considered the date of transfer pursuant to 11 U.S.C. § 548(d)(1). The plaintiffs also assert that under District of Columbia fraudulent conveyance law, the transfer date is when the deed is recorded. As of the date when Max Salas' motion to dismiss was argued, the parties had no knowledge as to whether the 2010 Quitclaim was ever recorded.

### III. DISCUSSION

#### A. Federal Rule of Civil Procedure 12(b) Standards

A case will be dismissed if a court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). In doing so, the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000)). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that

make the asserted claim plausible on its face. ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007).

A complaint must also demonstrate that the plaintiff is the proper party to pursue the cause of action. Where the attack on standing is a facial attack on jurisdiction, as it is here, the Court takes the allegations of the complaint as true for purposes of Rule 12(b)(1). ***Cartwright v. Garner,*** 751 F.3d 752, 759 (6th Cir. 2014) (citation omitted). ***See also In re Del-Met Corp.***, 322 B.R. 781, 793 n.3 (Bankr. M.D. Tenn. 2005) (citations omitted) ("[M]otions under 12(b)(1) and 12(b)(6) invoke the same legal standards: All well-pleaded facts are accepted as true and the complaint must be construed in the light most favorable to the plaintiff."). ***Cf. Morris v. Paine (In re Morris)***, Bankr. No. 10-04143, Adv. No. 10-00242, 2010 WL 4272868, at *4 (Bankr. M.D. Tenn. Oct. 22, 2010) (citing ***B&V Distrib. Co., Inc. v. Dottore Cos., Inc.,*** 278 F. App'x 480, 488 (6th Cir. 2008) ("If a party lacks standing to bring an action, a court may dismiss the action for failure to state a claim pursuant to Rule 12(b)(6).").

### B. Standing
### 1. Waiver and/or Estoppel

The plaintiffs argue that Max Salas waived any objection to standing by failing to object to the sale or to appeal the order approving the sale, which is now a final order. As asserted by Max Salas, he is not objecting to any aspect of the Trustee's sale. Instead, Max Salas is challenging the plaintiffs' standing to *pursue* this litigation, which is a

7

Case 3:20-ap-90027    Doc 29    Filed 12/07/20    Entered 12/07/20 14:13:15    Desc Main
Document      Page 7 of 15

different issue. Even if standing could be waived, it has not been waived here. *See Virginia House of Delegates v. Bethune-Hill*, ___ U.S. ___, 139 S. Ct. 1945, 1951 (2019) ("As a jurisdictional requirement, standing to litigate cannot be waived or forfeited.").

The plaintiffs also argue that Max Salas is judicially estopped from challenging standing. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation omitted). Its purpose is "to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship,'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002)), and it "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). To support judicial estoppel, the Court must find:

> (1) [the party] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the party's] omission did not result from mistake or inadvertence.

*White*, 617 F.3d at 477-78. Whether to invoke judicial estoppel is discretionary and should be used with caution. *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (citation omitted).

8

Case 3:20-ap-90027    Doc 29    Filed 12/07/20    Entered 12/07/20 14:13:15    Desc Main
Document      Page 8 of 15

The crux of the plaintiffs' argument is that Max Salas' current position is inconsistent with the position he took at the time of the sale. For judicial estoppel to apply, a party's later position must be clearly inconsistent with its earlier position. ***Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP***, 546 F.3d 752, 757 (6th Cir. 2008) (citation omitted). Even if his son Ron's support of the sale and attempt to purchase the rights are attributable to Max Salas, this does not constitute an inconsistent position. Neither Ron nor Max Salas were opposed to the sale, but neither took a position on whether the rights being sold could be pursued. In fact, Ron sought to buy the rights so that he could end the litigation against Max Salas. Accordingly, judicial estoppel does not apply, and the issue of standing must be determined on the merits.

### 2. Standing to Pursue the Trustee's Avoidance Actions

The issue is whether the plaintiffs have standing to bring these avoidance actions on their own behalf. Sections 544(b)(1), 547(b), and 548 of the Bankruptcy Code give the avoidance powers to the Trustee. Standing of a creditor to pursue actions on its own behalf in another situation where certain powers have been given to the Trustee or debtor-in-possession was denied by the Supreme Court in ***Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.***, 530 U.S. 1, 6 (2000) (only debtors-in-possession, pursuant to 11 U.S.C. § 1107, and trustees may recover the reasonable costs of preserving the estate under 11 U.S.C. § 506). In ***Hartford Underwriters***, the Supreme Court invoked a broad statutory rule of construction that is relevant to this case: "'Where a statute . . . names the parties

9

granted [the] right to invoke its provisions, . . . such parties only may act.'" *Id.* at 6-7 (citations omitted).

After ***Hartford Underwriters***, the Ninth Circuit Bankruptcy Appellate Panel still allowed the purchase of avoidance actions from the bankruptcy trustee and the pursuit of those avoidance actions by a creditor on his own behalf. *See **Simantob v. Claims Prosecutor, LLC (In re Lahijani)***, 325 B.R. 282, 288 (B.A.P. 9th Cir. 2005) (citing ***Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)***, 177 F.3d 774, 781–82 (9th Cir. 1999), and ***Briggs v. Kent (In re Prof'l Inv. Props. of Am.)***, 955 F.2d 623, 625-26 (9th Cir. 1992)). The laudable premise for this position is that the sale price benefits the estate. *Id.* ("The benefit to the estate in such circumstances is the sale price, which might or might not include a portion of future recoveries for the estate.").

The Fifth Circuit has not gone as far as the Ninth Circuit Bankruptcy Appellate Panel. In ***The Cadle Co. v. Mims (In re Moore)***, 608 F.3d 253 (5th Cir. 2010), the Fifth Circuit Court of Appeals focused narrowly "on the trustee's ability to sell causes of action that he has inherited from creditors under § 544(b), — causes of action that exist independent of the bankruptcy proceeding." *Id.* at 261. The court specifically did not decide "whether a trustee may sell *all* chapter 5 avoidance powers, such as the power to avoid preferences under § 547 or to avoid fraudulent transfers under § 548." *Id.* at 261 n.13 (emphasis added). *See also **Real S.A. DE C.V. v. N. Mill Capital, LLC (In re Wilton***

*Armetale, Inc.)*, 968 F.3d 273, 285 (3d Cir. 2020) (citation omitted) (Chapter 7 trustees may abandon asset-plundering claims back to the creditors who had them before the bankruptcy.).

Other courts have refused to allow trustees to sell their powers to pursue avoidance actions and have not recognized that a purchaser has standing to assert the trustee's powers on their own behalf. *See In re Clements Mfg. Liquidation Co., LLC*, 558 B.R. 187, 189 (Bankr. E.D. Mich. 2016) ("Chapter 7 Trustee in this case may not assign any of the avoidance actions/powers" to a group of creditors who could then pursue the claims on their own behalf.); *In re Dinoto*, 562 B.R. 679, 682 (Bankr. E.D. Mich. 2016) ("[F]raudulent transfer claims may not be assigned by the Chapter 7 Trustee, as part of a settlement or a sale, or otherwise."); *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 801 (E.D. Tenn. 1998) (The Chapter 7 Trustee "has the exclusive standing and capacity to sue and be sued on behalf of the bankruptcy estate under 11 U.S.C. § 323(b)."); *Fed. Ins. Co. v. Morris (In re Morris)*, Bankr. No. 11-60657, Adv. No. 11-6049, 2011 WL 4544057, at *3 (Bankr. N.D. Ohio Sept. 29, 2011) (citation omitted) ("The chapter 7 trustee has exclusive standing to prosecute or settle avoidance actions for the purpose of orderly administration of the bankruptcy estate."); *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 862 (10th Cir. 1986) (The trustee has the exclusive right to reach out and recover preferential transfers.); *Hopkins v. Foothill Mountain, Inc. (In re Hopkins),* 346 B.R. 294, 306 (Bankr. E.D.N.Y. 2006) ("The trustee has exclusive standing to assert the adverse

possession and avoidance causes of action."). *Cf. Republic Credit Corp. v. Boyer (In re Boyer)*, 372 B.R. 102, 105 (D. Conn. 2007) ("The sale or assignment of avoidance claims to an objecting creditor is not permitted if the creditor intends to pursue the claims on its own behalf."); *Claridge Assocs., LLC v. Schepis (In re Pursuit Capital Mgmt., LLC)*, 595 B.R. 631, 664 (Bankr. D. Del. 2018) (derivative standing requirements were met as part of sale order).[3]

The Sixth Circuit Court of Appeals has not directly addressed the standing of a creditor to bring avoidance actions purchased from a Chapter 7 Trustee. However, the Court has cast doubt on a creditor-purchaser's individual standing to bring an independent avoidance action which the Trustee is given power to bring. In *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.),* 555 F.3d 231, 244 (6th Cir. 2009) (derivative standing, not independent standing), and *Jefferson Cty. Bd. of Cty. Comm'rs v. Voinovich (In re The V Cos.)*, 292 B.R. 290, 298 (B.A.P. 6th Cir. 2003) (derivative standing, not independent standing), both the Sixth Circuit and its Bankruptcy Appellate Panel discussed *Hartford Underwriters* and carefully distinguished it,

---

[3] Some courts have reasoned that the power of the trustee (or debtor-in-possession) to bring avoidance actions is not an estate asset that can be sold. Rather, this authority is merely a means for the trustee to bring property into the estate. *The Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 245 (3d Cir. 2000) (debtor-in-possession's sale of all Chapter 11 assets did not include avoidance actions). *Cf. In re Wilton Armetale*, 968 F.3d 273, 285 (Our decision in "*Cybergenics* supports, rather than undermines, our holding: Chapter 7 trustees can abandon asset-plundering claims back to the creditors who had them before the bankruptcy."). *See also Moyer v. ABN Amro Mortg. Group, Inc. (In re Feringa)*, 376 B.R. 614, 624 (Bankr. W.D. Mich. 2007) (Trustee's ability to avoid "a preferential transfer is simply a power granted to him by Section 547" rather than an asset which can be abandoned.)

explaining that *Hartford Underwriters* only addressed the issue of whether a creditor could bring an independent (as opposed to derivative) action seeking recovery under 11 U.S.C. § 506(c). Using *Hartford Underwriters* as guidance, the Sixth Circuit and the Bankruptcy Appellate Panel held that a creditor, acting on behalf of the bankruptcy estate and with bankruptcy court approval, could bring avoidance actions. *Trailer Source*, 555 F.3d at 245 ("[W]e reaffirm the continued vitality after *Hartford Underwriters* of granting derivative standing to creditors to pursue avoidance actions on behalf of the estate and hold that this practice is available in both Chapter 11 and Chapter 7 proceedings."); *The V Cos.*, 292 B.R. at 298 (granting of derivative standing is consistent with holding in *Hartford Underwriters*). In *Trailer Source*, the Sixth Circuit stated that unlike *Hartford Underwriters*:

> [The creditor] does not assert an independent right, but instead [in a derivative suit] must seek and obtain permission from the bankruptcy court . . . before it may proceed on behalf of the estate. Because derivative standing is not asserted as an independent right and must be authorized by the bankruptcy court, it does not present the same risk of interference with the trustee and the bankruptcy court feared by the Supreme Court in *Hartford Underwriters*.

555 F.3d at 244.

In distinguishing independent from derivative suits by a creditor, the Sixth Circuit in *Trailer Source* reiterated its earlier strict prerequisites for exercising derivative standing set forth in *Canadian Pac. Forest Prod. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)* 66 F.3d 1436 (6th Cir. 1995). *Id.* at 244-45. As held in *Gibson Group*:

13

> [A] creditor or creditors' committee may have derivative standing to initiate an avoidance action where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and 4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case. A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

*Id.* at 1446.

There may be benefits to a bankruptcy estate from the sale of avoidance actions, and the plaintiffs argue they should not be deprived of the benefit of their bargain.[4] Nevertheless, based on the Sixth Circuit's decision in ***Trailer Source***, its discussion of independent versus derivative standing, and its strict rules regarding derivative standing, this Court is hesitant to find that the plaintiffs have independent standing to pursue these avoidance actions. The Trustee sold whatever avoidance actions he might have, but he made no warranty regarding viability or the purchasers' ability to pursue such actions. In addition, at the hearing on the motion to sell, no one, including the plaintiffs, raised the possibility of a derivative suit or of any standing problem. When standing was raised by Max Salas at the hearing on his motion to dismiss this complaint, the Court stated it would entertain a motion to amend the plaintiffs' complaint or a request for derivative standing.

---

[4] As noted earlier, a large portion of the sale proceeds were distributed back to the plaintiffs.

Despite ample time for such a motion to be made, the plaintiffs have apparently not chosen to do so.

If the plaintiffs wish, they may still file such a motion asking for derivative standing within 10 days of the Order accompanying this Memorandum Opinion, bearing in mind that they must demonstrate compliance with all the elements set forth in *Gibson* above. If no such motion is filed, the plaintiffs' complaint will be dismissed for lack of standing.

## IV. CONCLUSION

For the reasons stated, the Court finds that the plaintiffs lack standing to pursue the Trustee's avoidance actions on their own behalf. Accordingly, the Court need not address the statute of limitation issues at this time.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

15

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:20-ap-90027    Doc 29    Filed 12/07/20    Entered 12/07/20 14:13:15    Desc Main
Document      Page 15 of 15