
Marian F. Harrison
US Bankruptcy Judge

Dated: 2/11/2021



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 318-02662 |
| LEN SALAS, | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) CHAPTER 7 |
| NICOLAAS BREKELMANS AND | ) |
| GAIL GREGORY BREKELMANS, | ) |
| CO-PERSONAL REPRESENTATIVES | ) ADV. NO. 320-90027 |
| OF THE ESTATE OF NINA | ) |
| BREKELMANS, | ) |
| | ) |
| and | ) |
| | ) |
| MICHAEL MCLOUGHLIN AND | ) |
| MARTHA JOHNSON, CO-PERSONAL | ) |
| REPRESENTATIVES OF THE | ) |
| ESTATE OF PATRICK | ) |
| MCLOUGHLIN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MAX SALAS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

This matter is before the Court on the motion for derivative standing and amended complaint filed by Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-Personal Representatives of the Estate of Nina Brekelmans, and Michael McLoughlin and Martha Johnson, Co-Personal Representatives of the Estate of Patrick McLoughlin (collectively "plaintiffs"). For the following reasons, the Court finds that the motion should be granted in part.

## I. FACTS

In 2015, a fire occurred at 1610 Riggs Place, NW, Washington, D.C. ("Property"). Nina Brekelmans and Patrick McLoughlin perished in the fire, and Max Salas was seriously injured. On October 20, 2015, the plaintiffs filed two separate wrongful death actions against Max Salas and his son, Len Salas, in the Superior Court for the District of Columbia ("Superior Court"). The Superior Court trial began on March 26, 2018. Less than a month prior to the trial, Len Salas filed a motion for summary judgment, producing for the first time a copy of a 2010 trust and quitclaim deed ("2010 Quitclaim") and seeking to exclude Len Salas from the litigation by asserting Max Salas was the real owner of the Property. The request was denied, but the plaintiffs were put on notice of the July 2010 transfer at that time. The matters continued to trial, and the plaintiffs were awarded a collective judgment of $15.2 million against Len and Max Salas, jointly and severally, in April 2018. Shortly after entry of the judgment, Max Salas filed for bankruptcy protection in the District of Columbia, and Len Salas filed his petition in this Court on April 18, 2018.

2

Len Salas' case was converted from Chapter 11 to Chapter 7 on December 26, 2018, and the Chapter 7 Trustee ("Trustee") was appointed.

Len Salas was the record owner of the Property from 2007 until July 2010. In July 2010, Len Salas executed the 2010 Quitclaim by which he transferred his interest in the Property to a trust formed by and for Max Salas. The 2010 Quitclaim was not recorded. On September 25, 2018, the District of Columbia Bankruptcy Court ("D.C. Court"), in the context of Max Salas' Chapter 11 case, ruled that the Property belonged to Max Salas by virtue of the 2010 Quitclaim and that he was entitled to claim the District of Columbia's unlimited homestead exemption in the Property. *In re Salas*, No. 18-00260, 2018 WL 4621930 (Bankr. D.C. Sept. 24, 2018) ("Homestead Opinion"). The D.C. Court held that failure to record the 2010 Quitclaim did not invalidate the transfer under District of Columbia law. *Id.* at *20. While D.C. Code § 42-401 requires recordation, "that section deals with acknowledgment, certification, and recordation as protections for creditors and subsequent bona fide purchasers . . . [and t]hose requirements do not bar the operation of a signed, sealed, and delivered deed against parties and their assignees." *Id.* (citations and internal quotations omitted). Accordingly, the D.C. Court held that the 2010 Quitclaim gave Max Salas both legal and beneficial interests in the property. *Id.* The D.C. Court did not rule on whether the transfer could be avoided in this bankruptcy case, stating that "whether a hypothetical purchaser of the Property would have inquiry notice of Max's

ownership of the Property must be decided by the U.S. Bankruptcy Court for the Middle District of Tennessee." *Id.* at *21.[1]

On April 10, 2019, the Trustee filed a motion to sell any actions related to the Property to Ron Salas ("Ron"), Max Salas' other son. The plaintiffs and the U.S. Trustee objected[2] but did not raise either the standing question or whether the Trustee could sell his right to bring avoidance actions. After a hearing, the Court approved the sale on June 12, 2019, instructing the Trustee to give notice of the sale to all interested parties and potential buyers. If alternative bids were received, the Trustee was to conduct an auction, which he did. The plaintiffs were the highest and best bidders. In exchange for $156,000, the Trustee sold to the plaintiffs the estate's interest in "[a]ny potential avoidance actions against Max Salas and/or his bankruptcy estate under 11 U.S.C. Sections 544, 545, 547, 548, 549, and 553" as related to the Property. After administrative claims were paid, the Trustee distributed the remaining funds from the sale ($126,769.43) pro rata to unsecured creditors. The plaintiffs represent 99.8% of the unsecured claims.

---

[1] The plaintiffs appealed the Homestead Opinion to the District Court for the District of Columbia. On January 13, 2020, the District Court denied the plaintiffs' motion to supplement the record on appeal and dismissed the appeal after construing the plaintiffs' alternative motion to remand as a motion to voluntarily dismiss. The plaintiffs then filed a motion to reconsider the Homestead Opinion in the bankruptcy court. The motion to reconsider was denied on October 13, 2020, and the plaintiffs filed a notice of appeal on October 26, 2020.

[2] In their objection, the plaintiffs asserted that the sale to Ron was not in the best interest of the estate. The U.S. Trustee objected because the motion did not present adequate proof that the sale to an insider was in the best interest of the estate.

The plaintiffs filed a complaint against Max Salas on March 2, 2020, seeking to avoid the 2010 Quitclaim conveyance of the Property. In response to the complaint, Max Salas filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), made applicable by Federal Rule of Bankruptcy Procedure 7012. The Court agreed that the plaintiffs did not have standing to pursue their complaint but allowed the plaintiffs 10 days to file a motion requesting derivative standing.

The plaintiffs timely filed a motion for derivative standing with an amended complaint attached. Max Salas opposes the motion, asserting that there are no colorable claims based on the relevant statutes of limitations. The matter was heard on January 19, 2021.

## II. DISCUSSION

### A. Derivative Standing Standards

In ***Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.),*** 555 F.3d 231, 244-45 (6th Cir. 2009), the Sixth Circuit reiterated its earlier strict prerequisites for exercising derivative standing set forth in ***Canadian Pac. Forest Prod. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*** 66 F.3d 1436 (6th Cir. 1995). As held in ***Gibson Group***:

> [A] creditor or creditors' committee may have derivative standing to initiate an avoidance action where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit

> analysis performed by the court, and 4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case. A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

*Id.* at 1446. In setting forth these requirements, the ***Gibson Group*** Court recognized that the creditor seeking derivative standing has the initial burden to allege facts showing that the refusal to file suit is "unjustified." *Id.* at 1438-39. However, the debtor-in-possession (or trustee) must rebut the presumption if the creditor carries its initial burden. *Id.* at 1439.

In order to determine whether the amended complaint states a colorable claim, the Court must evaluate the amended complaint on its face. ***Trailer Source***, 555 F.3d at 245 (citing ***Gibson Group***). The amended complaint must be evaluated as the Court would evaluate a motion to dismiss; only if the claims could survive a motion to dismiss is it deemed to be a colorable claim. ***In re Thomas***, No. 16-27850-K, 2018 WL 10323389, at *3 (Bankr. W.D. Tenn. Aug. 24, 2018). Only if a claim is deemed colorable may this Court presume that the Trustee's failure to pursue the action was unjustified. ***Gibson Group***, 66 F.3d at 1439.

There is no dispute that a demand was made upon the Trustee and that he declined to take any action. The relevant issue is whether the amended complaint presents a colorable cause of action. Max Salas asserts that there are no colorable claims because the

6

relevant statutes of limitations bar them and that is why the Trustee refused to pursue the claims. If there are no colorable claims, then the Trustee was justified in taking no action, and the adversary proceeding must be dismissed.

### B. Colorable Claims

Like the original complaint, the amended complaint includes seven theories for avoiding the conveyance of the Property from the debtor to the defendant: I. The Trustee's avoidance powers based upon the bona fide purchaser status conferred by 11 U.S.C. § 544(a)(3); II. The Trustee's avoidance powers based upon the hypothetical judgment lien holder status conferred by 11 U.S.C. § 544(a)(1); III. The Trustee's avoidance powers based upon the hypothetical judgment creditor execution status conferred by 11 U.S.C. § 544(a)(2); IV. The Trustee's fraudulent transfer avoidance rights pursuant to 11 U.S.C. § 548(a); V. The Trustee's state court fraudulent transfer avoidance rights pursuant to 11 U.S.C. § 544(b)(1); VI. The Trustee's post-petition transaction avoidance rights pursuant to 11 U.S.C. § 549; and VII. The Trustee's recovery rights pursuant to 11 U.S.C. § 550. The Court must look at each count to determine whether a colorable claim has been presented.

### 1. 11 U.S.C. § 544 Causes of Action

Four of the plaintiffs' causes of action are based on the provisions of 11 U.S.C. § 544: Count I (11 U.S.C. § 544(a)(3)); Count II (11 U.S.C. § 544(a)(1)); Count III (11 U.S.C. § 544(a)(2)); and Count V (11 U.S.C. § 544(b)(1)). Section 544 is known as "the 'strong arm' clause," *Sovran Bank/DC Nat'l v. United States (In re Aumiller)*, 168 B.R. 811, 817 (Bankr. D.C. 1994), and "'gives a bankruptcy trustee the rights and powers of a judicial lien creditor or a bona fide purchaser of real property and allows the trustee to avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a judicial lien creditor or a bona fide purchaser of real property.'" *Drown v. Wells Fargo Bank, N.A. (In re Scott)*, 424 B.R. 315, 327 (Bankr. S.D. Ohio 2010) (quoting *Craig v. Seymour (In re Crabtree)*, 871 F.2d 36, 37 (6th Cir. 1989)). The scope of these powers is governed by the substantive laws of the state in which the property is located, in this case, the District of Columbia. *Midlantic Nat'l Bank v. Bridge (In re Bridge),* 18 F.3d 195, 200 (3d Cir. 1994) (citations omitted).

#### a. 11 U.S.C. § 544(a)

First, the Court reviews the powers granted under 11 U.S.C. § 544(a). Section 544(a)(1) grants a trustee "the status of a hypothetical lien creditor who is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition." *Rogan v. Bank One, N.A. (In re Cook)*, 457 F.3d 561, 564 (6th Cir. 2006). Of course, a perfected mortgage is superior to a later-recorded judicial lien. *Id.* at 565. Under 11 U.S.C.

8

Case 3:20-ap-90027    Doc 38    Filed 02/11/21    Entered 02/11/21 14:04:28    Desc Main
Document      Page 8 of 17

§ 544(a)(2), a trustee has the rights and powers of an unsatisfied execution creditor, a hypothetical "creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time." 11 U.S.C. § 544(a)(2). Finally, under 11 U.S.C. § 544(a)(3), a trustee has the status of "a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." In other words, a "trustee hypothetically purchases the debtor's property at the commencement of the bankruptcy case, then determines whether [the property] is subject to any valid prior interests." *Gregory v. Ocwen Fed. Bank (In re Biggs)*, 377 F.3d 515, 517 (6th Cir. 2004).

In spite of its wide scope, this strong-arm power "'does not clothe a trustee with [the] protective mantle'" of a bona fide purchaser if it was impossible "'under the applicable state law, that anyone could attain the status of a bona fide purchaser.'" *Treinish v. Norwest Bank Minnesota, N.A. (In re Periandri)*, 266 B.R. 651, 655 (B.A.P. 6th Cir. 2001) (citation omitted). *See also Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 864 (5th Cir. 2000) (citations omitted) ("[A]lthough section 544 provides that a trustee's actual knowledge is not relevant, a trustee is still bound by the state law regarding recordation and constructive notice, as well as other state law limitations upon bona fide third party purchaser status.").

9

In the amended complaint, the plaintiffs rely on the definition of a fraudulent transfer found in D.C. Code § 28-3105(b):

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Pursuant to D.C. Code § 28-3109(3), a fraudulent transfer cause of action under D.C. Code § 28-3105(b) "is extinguished unless action is brought . . . within 1 year after the transfer was made or the obligation was incurred." When real property is transferred, D.C. Code § 28-3106(1)(A) provides that the transfer is made when it "is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee."

The D.C. Court determined that the transfer of real property occurred in July 2010, but all parties agree that the transfer has never been recorded, and thus, never perfected. As stated, under District of Columbia law, a transfer is not "so far perfected that a good-faith purchaser" could not "acquire an interest in the asset that [was] superior to the interest of the transferee." D.C. Code § 28-3106(1)(A). The 2010 Quitclaim was never recorded, so the District of Columbia's statute of limitations did not start to toll prior to the filing of Len Salas' bankruptcy petition on April 18, 2018. Because the underlying state law avoidance claim was not time-barred as of the commencement of Len Salas' case, this

claim could have been brought by the Trustee provided the complaint was filed within the time periods prescribed in 11 U.S.C. § 546(a). *See UMB Bank, N.A. v. Sun Capital Partners V, LP (In re LSC Wind Down, LLC)*, 610 B.R. 779, 785 (Bankr. D. Del. 2020) (If "underlying state law avoidance claim is not time-barred as of the commencement of a bankruptcy case, a section 544(b)(1) claim may be brought provided that it is commenced within the time periods prescribed by section 546(a)."); *Tabor v. Davis (In re Davis)*, No. 05-15794-L, 2016 WL 11696269, at *13 (Bankr. W.D. Tenn. June 15, 2016) ("The reachback period for avoiding fraudulent transfers that could have been avoided by a creditor but for the filing of a bankruptcy case is measured from the entry of the order for relief.").

Pursuant to 11 U.S.C. § 546(a)(1), an action under 11 U.S.C. § 544 must be commenced the *later* of two years after the entry of the order of relief[3] or one year after the appointment of the Trustee. Len Salas filed his bankruptcy petition on April 18, 2018, and the Trustee was appointed on December 26, 2018. The plaintiffs filed their original complaint on March 3, 2020, well before the expiration of the two-year limitation set forth in 11 U.S.C. § 546(a)(1). As a result, the claims under 11 U.S.C. § 544(a) are colorable, and the plaintiffs are granted derivative standing to pursue Counts I, II, and III.

---

[3] "The commencement of a voluntary case under a chapter of this title constitutes an order for relief." 11 U.S.C. § 301(b).

11

Case 3:20-ap-90027 Doc 38 Filed 02/11/21 Entered 02/11/21 14:04:28 Desc Main Document Page 11 of 17

### b. 11 U.S.C. § 544(b)(1)

The same is true for the plaintiffs' claim under 11 U.S.C. § 544(b)(1). Pursuant to 11 U.S.C. § 544(b)(1), a trustee is authorized to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." This provision "permits a trustee to step into the shoes of an ***actual creditor*** who has a fraudulent transfer remedy under other 'applicable law' (i.e. a state fraudulent transfer statute) and exercise that creditor's remedies on behalf of the bankruptcy estate." ***McClarty v. Hatchett (In re Hatchett)***, 588 B.R. 472, 477 (Bankr. E.D. Mich. 2018) (emphasis added). Because the Trustee stands in the shoes of an actual creditor, "the Trustee is 'subject to the same procedural limitations affecting their right to avoid a particular transfer under the applicable law.'" ***Paris v. Walker (In re Walker)***, 566 B.R. 503, 534 (Bankr. E.D. Tenn. 2017) (citation omitted).

A deed conveying real property in the District of Columbia is not valid against a subsequent bona fide purchaser without notice until the deed is recorded. D.C. Code § 42-401. "A bona fide purchaser is one 'who acquires an interest in property for a valuable consideration and without notice of any outstanding claims which are held against the property by third parties.'" ***Clay Props., Inc. v. Wash. Post Co.***, 604 A.2d 890, 894 (D.C. 1992) (citation omitted). Under District of Columbia law, a bona fide purchaser is subject to three types of notice: actual, constructive, and inquiry. ***Id.*** at 895 (citation omitted). "A

purchaser is held to be on inquiry notice where he or she is aware of circumstances which generate enough uncertainty about the state of a title that a person of ordinary prudence would inquire further about those circumstances." *Id.*

The record reflects that the plaintiffs ("actual creditors") were put on notice of the 2010 Quitclaim when Len Salas filed his emergency motion for summary judgment in the Superior Court on March 19, 2018. The plaintiffs acknowledge this fact in the amended complaint, stating that the 2010 Quitclaim was produced in early 2018.

Under 11 U.S.C. § 544(b), the Trustee steps into the shoes of the plaintiffs. ***Kelley v. Opportunity Fin., LLC (In re Petters Co., Inc.*,**) 561 B.R. 738, 746 (Bankr. D. Minn. 2016) (citation omitted) ("Section 544(b) empowers a trustee to step into the shoes of an actual unsecured creditor and utilize whatever state or nonbankruptcy federal law remedies that particular creditor may have."). Thus, if the plaintiffs' claims were barred by the applicable state law statute of limitations, then the Trustee would also be barred.

The plaintiffs had notice of the 2010 Quitclaim on March 19, 2018. As such, the one-year statute of limitations in D.C. Code § 28-3109(3) would not have expired prior to the filing of the bankruptcy petition on April 18, 2018. Again, because the relevant District of Columbia statute of limitations had not expired on the petition date, the Trustee could

13

Case 3:20-ap-90027 Doc 38 Filed 02/11/21 Entered 02/11/21 14:04:28 Desc Main
Document Page 13 of 17

have brought this claim within the limitations period set forth in 11 U.S.C. § 546(a). *See Rund v. Bank of Am. Corp. (In re EPD Invest. Co., LLC)*, 523 B.R. 680, 692 (B.A.P. 9th Cir. 2015). Len Salas filed his bankruptcy petition on April 18, 2018, and the plaintiffs filed their original complaint on March 3, 2020, before the expiration of the two years. As a result, the claim under 11 U.S.C. § 544(b)(1) is colorable, and the plaintiffs are granted derivative standing to pursue Count V.

### 2. 11 U.S.C. § 548(a)

Count IV of the Complaint seeks relief pursuant to 11 U.S.C. § 548(a)(1), which provides:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition.

Because the petition in this case was filed on April 18, 2018, the two-year look back date under 11 U.S.C. § 548 would be April 18, 2016. Section 548(d)(1) also provides:

> For purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, *but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.*

14

(Emphasis added).  Accordingly, for purposes of 11 U.S.C. § 548, the transfer date would be April 17, 2018, because the 2010 Quitclaim was never recorded.  The original complaint was filed on March 3, 2020, which was within two years of the order for relief.  *See* 11 U.S.C. § 546(a)(1)(A).

Max Salas argues that the relevant date is when the plaintiffs were made aware of the transfer.  Even if this was the relevant date, it would not bar the 11 U.S.C. § 548 cause of action.  As discussed earlier, the plaintiffs became aware of the 2010 Quitclaim on March 19, 2018.  Pursuant to District of Columbia law, this would be considered the transfer date as to the plaintiffs.  *See* D.C. Code § 28-3106(1)(A).  Even a look-back date of March 19, 2018, was well within two years of the petition date.

Accordingly, the Court finds that the plaintiffs have presented a colorable claim under 11 U.S.C. § 548, and the plaintiffs are granted derivative standing to pursue Count IV.

### 3. 11 U.S.C. § 549

Although not barred by a statute of limitations, the plaintiffs' cause of action pursuant to 11 U.S.C. § 549, Count VI, is not a colorable claim.  Section 549 allows the avoidance of post-petition transfers of estate property.  Nothing in the amended complaint

refers to a post-petition transfer. Accordingly, on its face, the amended complaint fails to state a colorable claim for this cause of action, and derivative standing to pursue Count VI is denied.

### 4. 11 U.S.C. § 550(a)

Before a "trustee may recover, for the benefit of the estate," a transfer must be avoided, at least in part, under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), or 724(a). 11 U.S.C. § 550(a). In short, 11 U.S.C. § 550(a) does not give rise to any affirmative relief on its own. Instead, it sets forth the available remedies if a transfer is avoided. ***See Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)***, 340 B.R. 829, 837-38 (Bankr. E.D. Mich. 2006). Because the plaintiffs have colorable claims under 11 U.S.C. §§ 544 and 548, the remedy set forth in Count VII is available.

### III. CONCLUSION

For the reasons stated, the Court finds that derivative standing should be granted to pursue Counts I, II, III, IV, V, and VII of the proposed amended complaint. Derivative standing to pursue Count VI should be denied and dismissed.

An appropriate order will enter.

16

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.