UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-00260 |
| MAX E. SALAS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION DATED DECEMBER 5, 2019**

COMES NOW Max E. Salas, the Debtor and Debtor-in-Possession ("Debtor"), and

hereby presents this Disclosure Statement pursuant to the provisions of Chapter 11 of Title 11 of

the United States Code.

## I. INTRODUCTION

The Debtor provides this Disclosure Statement in order to disclose the information

believed to be material for creditors to arrive at a reasonably informed decision in exercising the

right to vote on acceptance of the Plan of Reorganization Under Chapter 11 of the United States

Bankruptcy Code Proposed by the Debtor (the "Plan").

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED

BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE

STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE

ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE NOT CONTAINED IN

THIS STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR AND

SHOULD BE REPORTED TO THE OFFICE OF THE UNITED STATE TRUSTEE.

INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN**

DB02/804722 0002/6981750.2
CORE/3502869.0005/156430962.1

**SUBJECT TO A CERTIFIED AUDIT.  CONSEQUENTLY, THE RECORDS KEPT BY THE DEBTOR ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE AND COMPLETE.**

## II.  VOTING ON THE PLAN AND CONFIRMATION

Voting on acceptance or rejection of the Plan is governed by provisions of the Bankruptcy Code.  Each voting creditor will be supplied with an Official Ballot, in a form prescribed by the Bankruptcy Rules.  Creditors may vote to accept or reject the Plan by filing a completed ballot with counsel for the Debtor, within the time prescribed for voting.  A class of creditors will be considered to have accepted the Plan (i) if it is accepted by creditors holding at least two-thirds in amount and more than one half in number of the allowed claims of such class that have voted, or (ii) if the class is unimpaired within the meaning of the Bankruptcy Code.

The Bankruptcy Court will conduct a hearing and rule on confirmation of the Plan in accordance with the Bankruptcy Code at the United States Bankruptcy Court for the District of Columbia, Bankruptcy Court's Courtroom, United States Courthouse, 3rd and Constitution Avenues, NW, Washington, DC 20001.  You will receive a separate notice of that hearing.

## III.  CONFIRMATION UNDER ALTERNATE STANDARDS

If all requirements for confirmation of the Plan under the Bankruptcy Code are otherwise satisfied, the Debtor will ask the Bankruptcy Court to confirm the Plan without the unanimous acceptance of classes of creditors assuming the Court finds that the Plan does not discriminate unfairly against, and is fair and equitable (within the meaning of the Bankruptcy Code) with respect to, any class of holders of claims that has or is deemed to have rejected the Plan.

## IV.  HISTORY AND BACKGROUND OF THE DEBTOR
## AND REASONS FOR FILING BANKRUPTCY

The debtor in this case is an individual residing in the District of Columbia at 1610 Riggs Place, NW, Washington, DC 20009 (the "Property"). During the night of June 3, 2015, a fire occurred at the Property. Tragically, two roomers living in the main part of the home, Nina Brekelmans and Michael Patrick McLoughlin, were not able to escape and died in the blaze. As a result of the fire, the Property was nearly completely destroyed. Max Salas was also present at the time of the fire, where, along with his visiting grandson, he was forced to jump from the second story of the building. As a result, Max sustained serious injuries including burns and a broken ankle that required hospitalization for a period of six weeks. Following his release from the hospital Max further was in convalescence as a result of his injuries and due to an infection he contracted, was required to receive drip antibiotics for three months and was heavily sedated during this time. During this time, Max lived at an apartment provided to him through the insurance policy he had previously obtained in his name for the Property.

On October 20, 2015, the parents of Nina Brekelmans and Michael Patrick Mcloughlin initiated wrongful death actions against both Max Salas and Len Salas in D.C. Superior Court as Case Numbers 2015 CA 008054 B and 2015 CA 008061 B (the "Superior Court Litigation"). One of the Debtor's sons, Len Salas, was included in the action due his appearing as the last recorded interest in the Property with the D.C. Recorder of Deeds. The two cases brought by each family were later consolidated into a single action.

Following a jury verdict at the trial against Len and Max, Len, as record owner of the Property, was found jointly liable with Max to the McLoughlin Estate and the Brekelmans Estate (together, the "Judgment Creditors") in the respective amounts of $7.7 million and $7.5 million

(together, the "D.C. Superior Court Judgments"). These judgments prompted Max Salas and Len

Salas to each file a Chapter 11 bankruptcy case on April 18, 2018. Len Salas's bankruptcy case

was later converted to chapter 7 and is currently pending before the United States Bankruptcy

Court for the Middle District of Tennessee as Case No. 3:18-bk-02662 (the "Len Salas

Bankruptcy Case").

## V.      SIGNIFICANT EVENTS DURING THE DEBTOR'S CHAPTER 11 CASE

A.      Confirmation of the Debtor's Ownership Interest in the Property and Ability to Claim the
District of Columbia's Homestead Exemption for the Property

Max Salas's status as sole legal and equitable owner of the Property had previously been

called into question through the course of the Superior Court Litigation based on the fact that DC

Land Records displays Len Salas as possessing the last recoded deeded interest in the Property.

Questions concerning who possessed the proper ownership interest in the Property were further

complicated by the existence of a Trust Agreement previously signed by Len Salas and Max

Salas and a Quitclaim Deed that was not recorded with the DC Recorder of Deeds. With the

bankruptcy, Debtor claimed full ownership of the Property and claimed an exemption in this

interest in the Property pursuant to the District of Columbia's homestead exemption found in

D.C. Code § 15-501(a)(14). The Debtor's claim to ownership of the Property and to the

homestead exemption were objected to by the Judgment Creditors. Following a three-day trial on

the matter, on September 25, 2018, the Bankruptcy Court issued a fifty-nine page opinion (the

"Homestead Opinion") [ECF Dkt. No. 108]  detailing Max Salas's history with the Property. The

Homestead Opinion confirmed that Max Salas possessed the full legal and equitable interest to

the Property and overruled the Judgment Creditors' objection to the Debtor's claim of the

homestead exemption in the Property. A copy of the Homestead Opinion, which details Max

Salas's full ownership history of the Property is attached to this Disclosure Statement for

reference as Exhibit A.

The Judgment Creditors timely appealed the Homestead Opinion and that appeal is

currently pending before the United States District Court for the District of Columbia as Case

No. 1:18-cv-02318-KBJ (the "Homestead Appeal"). Although the Homestead Opinion is on

appeal, no stay has been issued concerning the Homestead Opinion and it currently remains an

enforceable order of the Court.

B.    Judgment Creditors Purchase of Avoidance Claims from the Len Salas Bankruptcy Estate

The Len Salas Bankruptcy Case was converted to chapter 7 on December 26, 2018, and a

chapter 7 trustee has been appointed to that case. Following the conversion, another of Debtor's

sons, Ron Salas, sought to purchase any potential avoidance rights concerning transfer of the

property from Len Salas to Max Salas described in the Homestead Opinion in order to help his

father with reducing further contingencies and uncertainties in his bankruptcy case concerning

the Property. Following an auction conducted by the trustee in the Len Salas Bankruptcy Case,

the Judgment Creditors purchased "each and every claim and recovery action to which the

Trustee or the [Len Salas bankruptcy] estate may have under the provisions of 11 U.S.C. § § 544

through 553, as applicable, related to" the Property for the purchase price of $156,000.00. As

evidenced by a *Trustee's Report of Sale* filed by the Trustee in the Len Salas Bankruptcy Case on

August 14, 2019 and a *Sale of Estate Property Free and Clear of Liens and Interests* attached to

that report, Payment was delivered by the Judgment Creditors and their purchase of the

avoidance actions from the Len Salas bankruptcy estate was competed on July 31, 2019. To date,

no avoidance actions have yet been initiated by the Judgment Creditors based on these claims, although on October 11, 2019, the Judgment Creditors did file a Motion for Relief from the Automatic Stay in the Debtor's bankruptcy case seeking authority to file such claim. [ECF Dkt. No. 252]. This motion is currently pending before the Court and is scheduled for hearing on November 14, 2019.

C.      Debtor Obtaining a Conditional Certificate of Occupancy and Licensing to Rent Rooms at the Property through Short-Tem Rentals

Following the issuance of the Homestead Opinion, the Debtor was able to secure a Certificate of Occupancy and licensing to begin renting rooms at the Property though the short-term rental site, Airbnb. A copy of the Debtor's Certificate of Occupancy and associated licensing is attached as Exhibit B. Debtor's Certificate of Occupancy in his name is conditioned upon Debtor's continued status as owner of the Property and would be revoked should that status be overturned through an adverse ruling in the Homestead Appeal or through an adverse ruling in a potential avoidance action that could be brought by the Judgment Creditors based on their purchase of those claims from the trustee in the Len Salas Bankruptcy Case. Since beginning to rent the rooms on a short-term basis through Airbnb beginning in April 2019, the Debtor has earned $62,041.42 in rental payouts for the period of April 1, 2019 through September 30, 2019. Additionally, the Debtor has secured a lease for the basement unit at the property for the monthly rental amount of $4,500.00.

D.      Fusion Contracting Default Judgment

On February 8, 2019, the Debtor filed a Complaint initiating Adversary Proceeding No. 19-10002 against Fusion Contracting Group, LLC (the "Fusion Adversary Proceeding") based on breach contract claims stemming from unfinished and faulty work performed by a contractor

contracted to perform renovation work to the Property after the fire that occurred in 2015.

Following a default by the defendant in that action, Judgment for the Debtor was entered on July

30, 2019, in the amount of $79,287.17 in damages and attorney's fees, with post-judgment

interest on that judgment award as provide by 28 U.S.C. § 1961. The Debtor has not yet

performed any post-judgment discovery regarding the Fusion Judgment and makes no

representations regarding its collectability.

E.      Deed of Trust Stipulation for Plan Treatment & New Funding for the Plan

Through the Plan the Debtor is seeking approval of a Stipulation Regarding Plan

Treatment reached between the Debtor and U.S. Bank/Select Portfolio Servicing for the existing

Deed of Trust on the Property. Under the terms of the proposed agreement, the Debtor will

assume payments of $8,329.19 per month toward the Deed of Trust for the Property as adequate

protection until Plan confirmation. Following approval of confirmation of the Plan, the Debtor

shall make payments following re-amortization by U.S. Bank following Confirmation based on

an approximate balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated

at a 360 month amortization schedule, with all amounts due upon the maturity date May 1, 2037.

The full stipulation between the Debtor and U.S. Bank, subject to approval of the Bankruptcy

Court of the Debtor's Plan, is attached hereto as Exhibit C.

In addition to the agreement reached between the Debtor and U.S. Bank/Select Portfolio

Servicing, the Debtor will deliver all non-exempt assets, primarily consisting of the Fusion

Judgment, towards funding of the Plan. Debtor additionally, will provide $225,000.00 in

additional new value into the Plan, in funds guaranteed and secured by funds contained in the

Debtor's exempt retirement account.

CORE/3502869.0005/156430962.1                               7

F.      Post-Petition Employment of Professionals

The Debtor has been represented in this Chapter 11 proceeding by Stinson LLP as his

general bankruptcy counsel, Phillip G. Young, Jr. of Thompson Burton, PLLC as local counsel

for representation in the Len Salas Bankruptcy Case[1], and Justin Fasano and Janet Nesse of

McNamee Hosea as conflicts counsel for matters concerning U.S. Bank. The Debtor's

accountant is Arthur Lander, CPA PC.  The Debtor will continue to use these professionals post-

confirmation as necessary until the bankruptcy case is closed.

## VI.  OVERVIEW OF ASSETS AND MAJOR CLAIMS

The Debtor's primary Asset, as declared in the Homestead Opinion, is the real property

located at 1610 Riggs Place, NW, Washington, DC 20009 and serves both as the primary

residence of the Debtor and source of rental income through the renting of rooms through short-

term rental site Airbnb. Debtor has scheduled the value of this property on his Schedules as $2.5

million. The recent appraised value of the real property is $2.45 million. Although not

specifically a secured claim of the Debtor, the Property is subject to a Note and Deed of Trust

made by Len Salas originally in favor of U.S. Bank National Association as Trustee for the

holders of Bank of America Funding Corporation Mortgage pass-Through Certificates, Series

2007-6 and originally serviced by SunTrust Mortgage, Inc. On April 8, 2019, Select Portfolio

Servicing, Inc. filed a Transfer of Claim Other than for Security in the Len Salas Bankruptcy

Case indicating that they now serve as servicer on the Note and Deed of Trust on the Property.

---

[1] The Debtor has also employed Roderick K. Barnes of Rollins, Smalkin, Richards & Mackie, LLC ("Barnes") as special counsel for matters concerning the Superior Court Litigation. Payment to Barnes is covered by the insurance policy the debtor possessed at the time of the Property fire and no attorney fees are expected to be owed from debtor's bankruptcy estate.

This claim is treated as Class 3 in the Plan. The Debtor has negotiated with U.S. Bank/Select

Portfolio Servicing and has arrived at terms for adequate protection payments to U.S. Bank while

confirmation of the debtor's plan is sought and for modification of the secured loan upon

approval of the plan, pursuant to the Stipulation for Plan Treatment attached as Exhibit C.

Debtor's interest in the property has been fully exempted pursuant to the Homestead Opinion and

DC Code § 15-501(a)(14).

From Debtor's exempt Property he generates rental income through the leasing of the

basement unit at the Property, and through short-term rentals of two individual room in the

Property through the web/rental service Airbnb. These rental monies received are themselves

exempt as fruits of the Debtor's exempt asset and are further detailed in the income projection

attached as Exhibit D. Airbnb records of demonstrating the rental history for the Property is

attached as Exhibit E.

A second significant asset of the estate includes the recently entered Judgment against

Fusion Contracting Group, LLC in the amount of $79,287.17. The likely collectability of the

Fusion Judgment is unknown at this time.

Although not an asset of the estate, the Debtor possesses an exempt retirement account.

From this exempt account, the Debtor is proposing in his plan to offer $225,000 to further fund

his Plan through funds backed by this exempt retirement account. Debtor plans to accomplish

this either by receiving a loan 100 percent guaranteed and secured by the exempt retirement

assets, or a direct withdrawal from his retirement account of these funds for delivery into a Plan

Fund for distribution to claimants. Debtor's exempt retirement account contains funds of

approximately $500,000 and is sufficient to cover direct withdrawal of the proposed $225,000,

and any additional tax liabilities incurred based on a withdrawal of the this amount, and any

payments toward extended tax payments under the Plan if necessary.

Other significant claims of the estate include those of the Judgment Creditors in the

respective amounts of $7.5 million (Brekelmans) and $7.7 million (McLoughlin). The Debtor

listed these claims as disputed in his bankruptcy Schedules based on the fact that the Debtor had

timely filed appeals of each judgment and on the fact that the judgements were not based on final

orders of the Superior Court pursuant to D.C. Sup. Ct. R. Civ. P Rule 54(b). Nevertheless, the

Debtor has provided for treatment of the Judgment Creditor claims within the Plan.

Based on the findings of fact stated in the Homestead Opinion, the District of Columbia

filed a Proof of Claim asserting a $83,960.42 associated with unpaid transfer and recordation

taxes associated with transfer of the Property from Len Salas to Max Salas in 2010, including

$34,832.19 in recordation and transfer taxes due based on the transfer of the property occurring

in July 6, 2010 and which is listed as a secured by the Property, a non-filing penalty of $8,708.05

(25%) (unsecured), and interest on the supposed deficiency in the amount of $40,420.18

(claimed as secured).

Debtor's Plan contains definitions, a procedure for claims objections and a provision for

post-confirmation jurisdiction. Readers should refer to the Plan for a complete discussion of

these provisions.

## VII.  SUMMARY OF THE PLAN

**A.  Classification and Treatment of Claims Under the Plan:**

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN.  THIS SUMMARY

SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES.  CREDITORS ARE URGED

TO READ THE ENTIRE PLAN.  A COPY OF THE PLAN IS BEING SENT TO YOU WITH

THIS DISCLOSURE STATEMENT.  THE PLAN REPRESENTS A PROPOSED LEGALLY

BINDING AGREEMENT BY AND BETWEEN THE DEBTOR AND ITS CREDITORS.  ALL

CREDITORS WILL BE BOUND BY THE PLAN.

1.    **Classification - Summary**

The following is a designation of each Class of Claims and Interests under the Plan.  A

Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest

qualifies within the description of that Class, and is classified in another Class or Classes to the

extent that any remainder of the Claim or Interest qualifies within the description of such other

Class or Classes.  Each "Class" (e.g., Class 2A versus Class 2B and Class 2A versus Class 2B) is

separate and distinct from all other Classes for all purposes.

2.    **Classification - Specifics**

Claims and Interests are classified for all purposes, including voting, confirmation and

distribution pursuant to the Plan, as follows:

| | |
|---|---|
| **Class 1:** | All administrative claims including for professional fees, United States Trustee Quarterly fees and administrative taxes.  This class consists of fees and expenses for Stinson LLP, fees and expenses for Thompson Burton PLLC, fees and expenses for McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.,  fees and expenses of Art Lander CPA PC, any other professional fees that may be incurred by the Debtor, and the United States Trustee's quarterly fees. (Unimpaired). |
| **Class 2**: | All Priority Claims including those arising pursuant to Bankruptcy Code Section 507(a)(8). (Impaired). |
| **Class 3:** | U.S. Bank National Association/ Select Portfolio Servicing, Inc. Secured Claim against Property (Impaired). |

**Class 4**:       Allowed Secured Claim of IRS (Impaired).

**Class 5:**      District of Columbia Transfer & Recordation Tax Claim (Claim 5) (Impaired)

**Class 6**:       Unsecured Claims of Judgment Creditors (Claim No. 3 – McLoughlin; Claim No. 4 - Brekelmans) (Impaired).

**Class 7:**      All Remaining Allowed Unsecured Non-Priority Claims. (Impaired).

**Class 8**:       Allowed Unsecured Penalty Claim of the District of Columbia (Impaired).

**Class 9**:       Paid Hyundai Lease Titling Trust Lease claim (Unimpaired)

**Class 10:**     Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)

### 3.    Treatment of Claims and Interests

    A.    <u>Administrative Claims</u>

        1.    <u>Class 1 Administrative Claims</u>

The Debtor shall assume and pay to each holder of an Allowed Administrative Claim, on account of the Administrative Claim and in full satisfaction thereof, Cash equal to the allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other less favorable treatment of such Claim. Debtor anticipates that some form of agreement concerning payment of fees will need to be reached with his legal counsel and accountant in order to preserve desired amounts for payment to additional creditors. Administrative Claims are expected to exceed $175,000, but payment of Administrative Claims from the Plan Fund shall not exceed and be capped at $175,000.

        2.    <u>Statutory Fees and Continuing Duties to the Office of the United States Trustee</u>

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtor in Cash in an amount equal to the amount of such Administrative Claim.

Until such time as the case is closed, dismissed or converted, the Debtor shall continue to report its disbursements each calendar quarter to the U.S. Trustee and shall timely pay all fees due under 28 U.S.C. § 1930(a)(6).

3.    Treatment and Payment of Administrative Claims.

After the Effective Date, all professional or others requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 503(b) and 1103 for services rendered before the Effective Date shall file an application for final allowance of compensation and reimbursement of expenses. Applications need not be filed with respect to fees and expenses previously applied for by Court approved professionals (including applications previously approved by and/or previously paid pursuant to an order of the Court). Fees and expenses of professionals shall be paid in Cash in full (a) immediately before the Effective Date, to the extent allowed by the Court as of such date (such payments to be made by the Debtor) or as agreed by the Parties if a lesser amount, but not to exceed an aggregate amount of $175,000.00 from the Plan Fund, and (b) on or before the tenth (10th) day after entry of an order allowing any such fees and expenses, to the extent such fees and expenses were not allowed as of the Effective Date, or upon such payment schedule as agreed between the Parties.

B.    Class 2:  Priority Claims

The only known Priority Claim consists of a certain portion of the claim filed by the Internal Revenue Service in the amount of $13,196.78 (Claim 2-2). Unless the applicable taxing agency or any other priority claim holders that may be established agree to less favorable

treatment, each holder of an Allowed Priority Claim to the extent their claim is allowable and

entitled to priority under Bankruptcy Code section 507(a), shall be paid by the Debtor in regular

monthly installment payments totaling the full amount of the claim plus interest pursuant to 11

U.S.C. § 511 beginning on the first day of the month following the Effective Date of the Plan

and lasting until April 1, 2023 pursuant to 11 U.S.C. § 1129(a)(9)(C). If Debtor is unable to

generate sufficient funds from his future rental income from the Property and other monthly

income received, Debtor will deliver payment on the Class 2 claims from funds held in his

exempt retirement account if necessary. This class is impaired.

> C.     Class 3: U.S. Bank National Association/ Select Portfolio Servicing, Inc.
>        Secured Claim against Property

        Class 3 consists of the secured lien currently in the name on Len Salas possessed by U.S.

Bank National Association/ Select Portfolio Servicing, Inc. and secured by the Property (the U.S.

Bank Claim).  Based on Debtor's ownership in the Property established through the Homestead

Opinion, the Debtor has entered into a Stipulation for Plan Treatment with U.S. Bank National

Association/ Select Portfolio Servicing, Inc. to establish terms for Debtor's payment toward the

US Bank Claim and address current arrearages owed. Full terms of the U.S. Bank Stipulation for

Plan Treatment are attached as Exhibit C. Under the stipulation, beginning November 1, 2019,

the Debtor is to begin making adequate protection payments on the U.S. Bank Claim in the

amount of $8,329.19 per month until approval of the U.S. Bank agreement through confirmation

of the Plan and the Plan's Effective Date, after which time the Debtor shall make payments

following re-amortization by U.S. Bank following Confirmation based on an approximate

balance of $1,208,720.40 at a 5.25% fixed interest rate with payments calculated at a 360 month

amortization schedule, with all amounts due upon the maturity date May 1, 2037. U.S. Bank's

claim is an *in rem* claim attaching to the Property, and the Debtor shall not be liability under the

underlying Deed of Trust and Note hall be limited to Debtor's interest in the Property, with no

personal liability. Debtor further intends to seek a refund of vacant real property taxes previously

erroneously assessed against the Debtor and paid pre-petition by U.S. Bank (at the time serviced

through SunTrust Bank) to the District of Columbia. If the Debtor were to be successful in

receiving a refund of tax payments previously paid, they are to be delivered in full to U.S.

Bank/SPS for payment of the existing escrow balance on the U.S. Bank Claim. This class is

impaired.

           D.        <u>Class 4: Allowed Secured Claim of IRS.</u>

Class 4 consists of the Allowed Secured Claim of the IRS consisting of that $6,768.66

portion of the claim they have filed in the Case (Claim 2-2). Unless the holder of this claim

agrees to less favorable treatment, to the extent the claim is allowed, payment on Class 4 claims,

is to be paid by the Debtor in regular monthly installment payments totaling the full amount of

the claim plus interest pursuant to 11 U.S.C. § 511 beginning on the first day of the month

following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11 U.S.C.

§ 1129(a)(9)(C). If Debtor is unable to generate sufficient funds from his future rental income

from the Property and other monthly income received, Debtor will deliver payment on the Class

4 claims from funds held in his exempt retirement account if necessary. The IRS shall retain its

lien until paid in full. This class is Impaired.

           E.        <u>Class 5: District of Columbia Transfer & Recordation Tax Claim</u>

Class 5 consists of that portion claimed as owing for Transfer & Recordation Taxes and

Interest on Deficiency in the amount of $75,252.37 claimed on Claim 5 filed by the District of

Columbia. The District has claimed this amount associated with the August 4, 2010 date of

transfer from Len Salas to Max Salas described in the Homestead Opinion. The Debtor believes

the District is not entitled to claim this amount due to the fact that no deed was recorded at that

time and any future recording confirming of Max Salas's ownership in the Property is to be

enacted through this Plan and exempt from such taxes pursuant to 11 U.S.C. § 1146(a). Debtor

intends to object to the District's Claim prior to Confirmation of the Plan. Nevertheless, payment

to the District, to the extent their claim is allowable, is to be paid by the Debtor in regular

monthly installment payments totaling the full amount of the claim beginning on the first day of

the month following the Effective Date of the Plan and lasting until April 1, 2023 pursuant to 11

U.S.C. § 1129(a)(9)(C). Class 5 is impaired.

      F.     <u>Class 6: Allowed Unsecured Claims of Judgment Creditors (Claim No. 3 –
McLoughlin; Claim No. 4 - Brekelmans)</u>

Class 6 consists of the two claims of the Judgment Creditors in the total amount of $15.2

million (Claim No. 3 – McLoughlin $7.7 million; Claim No. 4 – Brekelmans; $7.5 million).

Debtor's plan provides that payment on the Class 6 Claims will be made pro-rata, along with the

Class 7 remaining allowed unsecured non-priority claims, from a Plan Fund funded by the

minimal amounts of the existing non-exempt assets of the Debtor consisting of non-exempt cash

assets existing in Debtor's DIP account at the time of Confirmation, plus an additional influx of

$225,000 of funds secured by Debtor's exempt retirement account. Administrative Claims are

expected to exceed $175,000, but payment from the Plan Fund towards Administrative Claims

shall be capped at $175,000, leaving at least $50,000 of remaining funds from the additional

$225,000 cash infusion for distribution to Class 6 and Class 7 Claims. The Plan further provides

assignment of any uncollected amounts of the Fusion Judgment on the Effective Date jointly to

both Judgment Creditors. The Debtor will not oppose efforts and provide reasonable assistance

to the Judgment Creditors' efforts to collect available Insurance Proceeds from Encompass

associated with their judgments. Upon receipt of discharge, the Debtor will take steps to

withdraw his appeal of the Judgment Creditor Judgments in the DC Superior Court to further

resolve that issue. Judgment Creditor Claims are being given separate Class treatment based on

the fact that they may also collect on the amounts owed to them from available Insurance

Proceeds (See Motion for Relief from Stay Order; ECF Dkt. No. 74), and based on the fact that

they possess the right to prosecute the Tennessee Avoidance Actions regarding the Property

purchased from the Len Salas Bankruptcy Case.  The Class 6 and Class 7 claims listed on

Debtor's Schedules have been valued at $15,239,769.40, 99.7% percent ($15.2 million) of which

is possessed by the Judgment Creditors. It is anticipated therefore that 99.7% percent of

distributions from the Plan Fund will be distributed to Class 6 Claims.

The payment will be made thirty (30) days after the later of (i) the payment of all

Administrative Claims; and (ii) the Effective Date. This Class is Impaired.

G.      Class 7:  Remaining Allowed Unsecured Non-Priority Claims.

All Class 7 Claims, consisting of all remaining allowed unsecured non-priority claims

will receive a one-time pro-rata distribution following the Effective Date from remaining

amounts in the Plan Fund following payment to those possessing claims of a higher priority.

Administrative Claims are expected to exceed $175,000, but payment from the Plan Fund

towards Administrative Claims shall be capped at $175,000, leaving at least $50,000 of

remaining funds from the additional $225,000 cash infusion for distribution towards other

creditors. The Class 6 and Class 7 claims listed on Debtor's Schedules have been valued at

$15,239,769.40, 0.3% percent ($39,769.40) of which is possessed by the Class 7 Claimants. It is anticipated therefore that 0.3% percent of distributions from the Plan Fund will be distributed to Class 7 Claims. The payment will be made thirty (30) days after the later of (i) the payment of Administrative Claims from the Plan Fund; and (ii) the Effective Date. This class is impaired.

        H.      <u>Class 8:  Allowed Unsecured Penalty Claim of the District of Columbia</u>

Class 8 consists of that portion of the Claim filed by the District of Columbia in the amount of $8,708.05 representing a non-filing penalty associated with other aspects of Claim 5, to the extent such claim is an allowed unsecured penalty claim. Assuming funds remain available in the Plan Fund, Class 8 claims will receive a one-time pro-rata distribution following the Effective Date from remaining amounts in the Plan Fund following payment to those possessing claims of a higher priority. However, based on the large amount of claims in Class 6 and Class 7, no distribution is expected to be made on Class 8 claims. To the extent a payment is made, the payment will be made thirty (30) days after the later of (i) the payment of all higher priority Claims to be made from the Plan Fund; and (ii) the Effective Date.  This class is impaired.

        I.      <u>Class 9:  Allowed Paid Hyundai Lease Titling Trust Lease Claim</u>

Class 9 consists of the lease claim filed by Hyundai Titling Trust filed on May 3, 2018 as Claim 1 associated with the lease of a vehicle by the Debtor at the time of the Petition Date. Following the Petition Date, Debtor continued to make lease payments due for the vehicle until the lease terminated in January 2019. No further payments are owed under the Hyundai lease and the Debtor has surrendered the Vehicle. No further payments are therefore contemplated for this claim. This class has been paid in full and is unimpaired.

        J.      <u>Class 10:  Contribution Claim of Len Salas listed on Schedules associated with U.S. Bank/SPS Arrearages (Unimpaired)</u>

Class 10 consists of the claim of Len Salas listed on the Debtor's Schedule E/F at 4.14 in the amount of $428,614.90. This claim solely represents arrearages existing on the U.S. Bank/SPS Claim existing on the Petition Date. Because the deed of trust and underlying note for the Property were in the name of Len Salas, but the Debtor was responsible for making payments for the Property pursuant to his ownership interest later established in the Homestead Opinion, the Debtor included this claim to Len Salas representing amounts ultimately owed as arrearages for the lien on the Property. Len Salas having received his discharge and the Debtor having reached agreement with U.S. Bank/SPS regarding the U.S. Bank Claim described in the Stipulation for Plan Treatment, no further treatment or payment to Len Salas (for forwarding to U.S. Bank) is warranted by the Debtor and will not occur under Debtor's Plan. Class 10 is Unimpaired.

### 4.  Means of Funding the Plan.

Debtor's Plan seeks modification of the existing secured debt on the Property through the Stipulation for Plan Treatment with U.S. Bank. All continuing payments under the Plan, including pre- and post-confirmation monthly payments to U.S. Bank per the Stipulation for Plan Treatment, and for the Extended Tax Payments are expected to be derived wholly from the Debtor's future exempt earnings consisting of monthly deposits from social security, disability payments, and Airbnb and other rental earnings from the Property. A Projection of the Debtor's future income generated from these exempt sources is attached as Exhibit D. Further with respect to the Extended Tax Payments of the IRS, if Debtor's future income is insufficient to make these payments, Debtor will make payment on these claims from funds held in his exempt retirement account if necessary.  The Debtor will further submit all available non-exempt assets for the

benefit of creditors under the Plan at the time of Confirmation consisting of the Fusion Judgment

and existing non-exempt cash assets existing in Debtor's DIP account at the time of

Confirmation, but not including any value associated with the non-exempt portion of Debtor's

home furnishings, equipment, or clothes. The non-exempt portion of such home furnishings,

equipment, and clothes are believed to be *de minimus*, especially when compared to the

additional exempt Plan funding being supplied by the Debtor and the cost of ascertaining value

of the exempt portion. With the exception of the Fusion Judgment, further non-exempt assets of

the Debtor are expected to be minimal.

Following delivery of the existing non-exempt assets, the Plan will be further funded

through delivery of $225,000 towards the Plan Fund from either a loan to be received by the

Debtor for funds 100% secured by the Debtor's exempt retirement account, or if the Debtor was

unable to receive such a loan, from delivery of $225,000 directly withdrawn from this exempt

account by the Debtor within forty-five (45) days after Confirmation. Direct withdrawal of funds

from Debtor's account will cause the Debtor to incur additional tax consequences, making a loan

preferable. Nevertheless, Debtor's retirement account contains sufficient funds to cover tax

liability associated with a withdrawal of these funds. From this new value, payment towards

Administrative Claims from the Plan Fund would be capped at $175,000, allowing for payment

of at least $50,000 from the new value added into the Plan Fund for distribution to other

claimants. It is assumed that confirmation of the Debtor's Plan would require cramdown of the

Judgment Creditor's claims pursuant to 11 U.S.C. § 1129(b).

### 5.  Executory Contracts and Unexpired Leases.

The Plan proposes to assume all unexpired leases and executory contracts that have not previously been rejected in this bankruptcy case. Debtor's Plan further proposes that it shall have no effect on the post-petition lease of the Debtor's vehicle approved by the Court at ECF Dkt. Entry 159, and the post-petition tenant lease entered into by the Debtor for the renting of the basement unit at the Property.

### 6.  Pending Litigation.

 Debtor intends to object to the claim of the District of Columbia that asserts Debtor owes transfer and recordation taxes, penalties, and interests associated with the creation of the 2010 Quitclaim Deed from Len Salas for the Property and cited in the Homestead Opinion. Debtor further intends to seek a refund of vacant real property taxes previously erroneously assessed against the Debtor and paid pre-petition by U.S. Bank for the Deed of Trust for the Property (at the time serviced through SunTrust Bank). Any refunded tax payments would be delivered to US Bank/SPS to reduce the a outstanding escrow balance on the Property account associated with the previous payment.  Other pending litigation includes the appeal of the Homestead Opinion, which has been fully briefed for the United State District Court for the District of Columbia, as well as avoidance action litigation to be brought by the Judgment Creditors in the U.S. Bankruptcy Court for the Middle District of Tennessee following the Judgment Creditors' purchase of those claims from the Len Salas Bankruptcy Estate (the "Tennessee Avoidance Actions"). Other pending litigation includes the outstanding appeal of the Judgment Creditor Judgments in the DC Superior Court brought by the Debtor prior to filing bankruptcy. This appeal is currently stayed and would be withdrawn/dismissed by the Debtor upon discharge of debts owed to the Judgement Creditors contemplated in the Plan. Additional litigation may also

be brought to resolve the additional action against 1610 Riggs Place Trust contemplated previously by the Superior Court and/or an action to reduce the judgments in favor of the Judgment Creditors to final judgments pursuant to DC Superior Court Rule of Civil Procedure Rule 54(b). *See Order on Motion to Lift Automatic Stay With Respect to Finalization of Superior Court Judgments and Judgment Creditors' Recovery of Insurance Proceeds,* ECF Dkt. NO. 74. With Plan Confirmation, the Debtor would not oppose steps taken by the Judgment Creditors to resolve these issues or to claim insurance proceeds available under Debtor's Encompass Insurance Policy.

### 7. Confirmation Order as Recordable Order Conveying Property to Max Salas.

The Plan provides that, upon Confirmation, the Confirmation Order, or a separate order as needed, shall contain terms that will constitute an Order conveying the Property to Max Salas based on the ownership interest of the Debtor to the Property established through the Homestead Opinion and that such order may be recorded with the land records of the District of Columbia in lieu of a deed. If the District of Columbia shall later refuse to honor the Confirmation Order as a document properly conveying the Property to the Debtor, the Debtor reserves the right to obtain an appropriate deed to th Property signed by the trustee in the Len Salas Bankruptcy Case, or if such trustee refuses, to seek the appointment of an escrow agent in Debtor's Bankruptcy Case to sign such deed for recording purposes.

### 8. Recordation and Other Taxes Covered by Section 1146(a).

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer under the Plan (including the proposed recordation of the Confirmation Order or other Order as necessary to confirm Debtor's interest in the Property pursuant to the

Homestead Opinion) will not be subject to any stamp tax, real estate transfer, mortgage

recording, or any other similar tax.

### 9.    Discharge Following Distribution on the Effective Date of the Plan Pursuant to 11 U.S.C. § 1141(d)(5)(B).

Debtor's Plan provides for a discharge of debts upon the Effective Date of the Plan and

distribution of funds from the Plan Fund. Because Debtor's Plan provides for payment of tax

debts through April 2023, payments under the Plan will not be completed until that time. Cause

is warranted to grant a discharge of debts instead upon the Effective Date pursuant to 11 U.S.C.

1141(d)(5)(B), because unsecured creditors are to receive distribution of funds from the Plan

Fund at that time, which will be of a greater value than they would receive if the estate were to

be liquidated under chapter 7. Additionally, following the required monthly payments to U.S.

Bank and for the extended tax payments, Debtor is unlikely to have any additional disposable

income for distribution to his other creditors following the initial distributions of the Plan Fund.

Finally, cause is warranted to grant the Debtor a discharge upon the Effective Date of the Plan

instead of upon completion of all payments because doing so will allow the Debtor to take steps

(and the Debtor will take such steps) to withdraw the appeal of the Judgment Creditor Judgments

in the DC Superior Court to further resolve that issue.

## VIII.   CHAPTER 7 LIQUIDATION ANALYSIS

A comparison of the amounts to be paid under the Plan and the amounts that would be

available for distribution to creditors in the event of a liquidation under Chapter 7 indicates that

the Plan is fair and equitable and in the best interest of the creditors. The Homestead Opinion has

confirmed that the Debtor's primary asset is fully exempt pursuant to D.C. Code § 15-501(a)(14)

and any sale of the Property in Chapter 7 would not generate funds for payment to the estate

creditors. The Debtor maintains that income generated from the Property (including all Airbnb

and other rental income) is similarly exempt as income generated from an exempt asset. At least

two creditors (the Judgment Creditors) have questioned whether it is clear that such business

income derived from renting of parts of the Property may be treated as exempt. The Court has

not issued a ruling on this issue in this case. The Debtor possesses no other assets, other than the

Fusion Judgment, likely to generate any significant value to the estate. The Debtor is not aware

of any recovery or avoidance actions and does not believe any such actions exist. In addition, a

Chapter 7 trustee would hire his own attorneys and would charge a commission on any

distributions he did realize. Here, the Debtor is offering to use his exempt Property to fund a Plan

of Reorganization, which after reaching agreement with the primary secured lienholder for the

Property regarding continued payments for the Property, offers anticipated amounts of $225,000

in new value for payment towards the Debtor's creditors and claimants. For these reasons, a

conversion to Chapter 7 would not necessarily result in a greater distribution to unsecured and

penalty claimants and would result in delay of the creditor distributions.

## IX.  POTENTIAL RECOVERIES FROM VOIDABLE TRANSFERS

The Debtor has not fully analyzed the potential recoveries from voidable transfers, but

does not believe any voidable transfers exist that would be beneficial to pursue. The Debtor does

not anticipate pursuing any avoidance actions.

## X.  TAX CONSEQUENCES OF PLAN

To the extent creditors have written off any accounts receivable on their tax returns,

ordinary income may be recognized from any distributions received under this Plan.

THE DISCUSSION OF FEDERAL INCOME TAX CONSEQUENCES SET OUT HEREIN IS LIMITED TO THE GENERAL TAX CONSEQUENCES AFFECTING CREDITORS AS A RESULT OF THE DISCHARGE OF INDEBTEDNESS WITHOUT PAYMENT UNDER THE PLAN.  THE TAX CONSEQUENCES APPLICABLE TO A CREDITOR WILL BE ENTIRELY DEPENDENT UPON THE TAX STATUS OF THAT ENTITY OR INDIVIDUAL.  EACH CREDITOR SHOULD CONSULT THEIR OWN TAX ADVISOR TO DETERMINE THE TREATMENT AFFORDED THEIR RESPECTIVE CLAIMS BY THE PLAN UNDER FEDERAL TAX LAW, THE TAX LAW OF THE VARIOUS STATES AND LOCAL JURISDICTIONS OF THE UNITED STATES AND THE LAW OF FOREIGN JURISDICTIONS.

BECAUSE OF CONTINUAL CHANGES BY THE CONGRESS, THE TREASURY DEPARTMENT, AND THE COURTS WITH RESPECT TO THE TAX LAWS, NO ASSURANCES CAN BE GIVEN REGARDING INTERPRETATIONS OF THE TAX LAWS, REPRESENTATIONS WITH RESPECT THERETO OR ANY OTHER MATTER ASSOCIATED THEREWITH.

NO STATEMENT IN THIS DISCLOSURE STATEMENT IS TO BE CONSTRUED AS TAX ADVICE OR LEGAL ADVICE TO ANY CREDITOR.  THE DEBTOR AND ITS COUNSEL AND ACCOUNTANTS ASSUME NO RESPONSIBILITY OR LIABILITY FOR THE TAX CONSEQUENCES A CREDITOR MAY SUSTAIN AS A RESULT OF THE TREATMENT AFFORDED THEIR CLAIM UNDER THE PLAN.

CORE/3502869.0005/156430962.1

25

Case 3:20-ap-90027   Doc 73-4   Filed 07/29/22   Entered 07/29/22 18:53:45   Desc
Exhibit 2 M Salas Second Amended Disclosure Statement   Page 25 of 27

## XI.  <u>RISK FACTORS/FEASIBILITY</u>

While there are risk factors with certain individual aspects of the Debtor's Plan, including

securing a loan backed by the Debtor's retirement funds for proposed Plan funding, the Debtor

believes that his Plan provides for adequate contingency measures in each instance and that the

Plan overall provides minimal risk factors or feasibility issues. Other risk factors include the

potential that Debtor's interest in the Property will be overturned either though reversal of the

Homestead Opinion on appeal or through loss of a potential avoidance action that may be

brought by the Judgment Creditors based on the claims they have purchased from the Len Salas

Bankruptcy Case. Reversal of the Debtor's claim to ownership in the Property would affect

Debtor's ability to make his continuing payments for tax payments extended under the Plan

(which would not be discharged) and for the secured loan for the Property (which would remain

as an *in rem* lien on the Property), but would not likely affect other aspects of payment to

Debtor's other creditors from the additional Plan funding supplied by the Debtor. The Debtor and

his counsel have reviewed the merits of both of these litigation risks associated with the Debtor's

ownership in in the Property being lost and believe that they will prevail both on the Appeal and

in any potential avoidance action that could be brought through the Tennessee Avoidance

Actions. Because Debtor's Airbnb income is subject to market forces, there is also the risk that

he will not be as successful generating income from this source for payments under the U.S.

Bank Stipulation for Plan Treatment and the Extended Tax Payments. In this instance, however,

U.S. Bank would be protected by the default provisions under the Stipulation for Plan Treatment.

Tax claimants are similarly protected because their debts are not subject to discharge. For these

reasons, therefore, the Debtor submits that there is minimal risk under this Chapter 11 Plan.

## XII.  <u>CONCLUSION</u>

For all the reasons described above, the Debtor urges you to vote to accept the Plan of

Reorganization.  Any questions regarding this Disclosure Statement may be directed to the

undersigned.


Dated: December 5, 2019            By:    /s/ Max E. Salas
                                   Max E. Salas, Debtor and Debtor-In-Possession



                                   /s/ Joshua W. Cox
                                   Marc E. Albert, No. 345181
                                   Joshua W. Cox, No. 1033283
                                   STINSON LLP
                                   1775 Pennsylvania Ave., N.W., Suite 800
                                   Washington, DC 20006
                                   Tel. (202) 785-3020
                                   Fax (202) 572-9999
                                   marc.albert@stinson.com
                                   joshua.cox@stinson.com
                                   *Attorneys for*
                                   *Max E. Salas, Appellee and Debtor and Debtor-In-*
                                   *Possession*