IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville, Tennessee

| | | |
|---|---|---|
| In re: | : | |
| | | CHAPTER 11 |
| LEN SALAS | : | CASE No. 18-02662 |
| | | JUDGE: HARRISON |
| Debtor-in-possession | : | |

| | |
|---|---|
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS, et al | : : : : |
| In their capacity as authorized representatives of the Estate of Len Salas | : : |
| Plaintiffs | : |
| v. | : Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS | : |
| Defendant | : |

## AMENDED RESPONSES TO REQUESTS
## FOR ADMISSIONS TO THE DEFENDANT

Comes Now, Defendant, Max Salas ("Defendant"), and for his Amended Responses to Requests for Admissions to the Defendant (the "Discovery")[1], states as follows:

## GENERAL OBJECTIONS

1. Defendant's Responses to the Discovery shall not constitute a waiver of his objections as to admissibility.

2. Defendant objects to the Discovery to the extent it exceeds the scope of permissible discovery.

---

[1] To assist in production pursuant to the Court's 7/29/22 Granted Order 07/29/22 in Support of Plaintiffs' Motion to Compel Salas Amended Answers to Plaintiffs' Requests for Admissions Discovery

3. Defendant objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

4. Defendant objects to the Discovery to the extent that the information and documents sought are not in his possession, custody or control.

5. Defendant objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6. Defendant objects to the Discovery to the extent that the information sought is equally available to Plaintiff as to Defendant.

7. Defendant objects to the definitions and instructions to the extent Plaintiff seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Defendant is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Plaintiff's definitions and instructions, and Defendant's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8. Defendant reserves the right to supplement his Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

1. That the Defendant does not have the original Quitclaim Deed allegedly created in July, 2010.
**Response:** Admitted.

2. That the Defendant is unaware of the location of the original Quitclaim Deed.
**Response:** Denied. Ron Salas has an original copy.

3. That the Defendant did not attempt to record the Quitclaim Deed after 2010.
**Response:** Admitted.

4. That the Defendant is unaware that the original Quitclaim Deed exists.
**Response:** Denied. Ron Salas has an original copy.

Defendant to refinance the D.C. Property.
**Response:** Admitted.

6. That the Defendant tried to obtain refinancing after July, 2010 but was unsuccessful in doing so.
**Response:** Admitted.

7. That the Defendant made no attempts to refinance the D.C. Property after 2012.
**Response:** Denied.

8. That all D.C. notices regarding the Property, after 2007, were addressed to Len Salas as owner of the Property.
**Response:** Admitted.

9. That the Defendant did not want the Property in his name after 2010 so that he could avoid any tax or other obligations in his name.
**Response:** Denied. Titling the Property in Len Salas' name had nothing to do with tax obligations or any other obligations.

10. That during the period, 2008 through March, 2018, there were outstanding, overdue, unpaid federal income taxes owed by you.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information. Notwithstanding that objection, and pursuant to the Court's Discovery Order, Defendant admits that there were outstanding, overdue, unpaid federal income taxes owed by him during the time period 2015-2018.

11. That during the period, 2008 through March, 2018, there were outstanding, overdue, unpaid D.C. property taxes owed against the Property.
**Response:** Denied. Property taxes were paid from 2008 – 2018.

12. That during the period, 2008 through March, 2018, there were outstanding, overdue, unpaid local utilities' obligations owed against the Property.
**Response:** Denied. Utilities were paid from 2008-2018.

13. That during the period, 2008 through March, 2018, there were outstanding, overdue, unpaid fines for violations of D.C. ordinances against the Property.
**Response:** Denied. Defendant is aware of no unpaid fines from 2008-2018.

14. That during the period, 2008 through March, 2018, there were outstanding, overdue, unpaid federal income taxes owed by you.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information. Notwithstanding that objection, and pursuant to the Court's Discovery Order, Defendant admits that there were outstanding, overdue, unpaid federal income taxes owed by him during the time period 2015-2018.

15, That the Defendant was aware, in 2016 that his son Ron Salas and his son Len Salas, both had, or should have had, copies of the 2010 Quitclaim Deed.
**Response:** Denied. Defendant was unaware in 2016 that Ron Salas or Len Salas had copies of the 2010 Quitclaim Deed.

16. That from 2007 through April 18, Len Salas was the sole obligor under the Sun Trust loan documents executed in 2007.
    **Response:** Admitted.

17. That Max Salas had no written agreement or understanding with Len Salas that Max was responsible for the Sun Trust Mortgage/Deed of Trust obligation.
    **Response:** Admitted.

18. That Max Salas was not a listed or added obligor or guarantor under the SunTrust Deed of Trust obligation or Note.
    **Response:** Admitted.

19. That Max Salas did not notify Sun Trust or the D.C. government that he was an obligor under the Sun Trust Deed of Trust.
    **Response:** Denied. Max Salas notified SunTrust that he was obligated under the Deed of Trust.

20. That Max Salas did not notify D.C. or any taxing authority that he was the owner of the DC Property.
    **Response:** Denied. Max Salas has recorded the DC Bankruptcy Court order which declares him the owner. Max Salas also filed a homestead exemption with the Register of Deeds in 2012.

21. That the document attached as Exhibit B to the Amended Complaint filed herein is a true and correct copy of the Order Confirming Debtor's Third Amended Plan of Reorganization and The Third Amended Chapter 11 Plan of Reorganization Dated January 22, 2020.
    **Response:** Admitted.

22. That the transcript of your testimony in the bankruptcy case of Len Salas, Case No. 3:18-bk-02662 "the Len Salas Case"), dated December 12, 2018 is a true and correct copy of your testimony on December 12, 2018 in Nashville, Tennessee.
    **Response:** Admitted.

23. That you were present at all times, during the hearing on the attempted confirmation of the Debtor's proposed Chapter 11 Plan, the Len Salas Case, on December 12 and 13, 2018.
    **Response:** Admitted.

24. That you were represented by counsel at that hearing, including Mr. Cox, Mr. Albert and Mr. Young.
    **Response:** Admitted.

25. That on or about July 6, 2010 you visited your son, Ron, at his residence in Colorado along with your son, Len, and his wife.
    **Response:** Admitted.

26. That all lease payments for rental income from the rental of all or part of the DC Property from the period May, 2007 through April, 2018 were deposited into an account in the

**Response:** Denied as stated. Some, but not all, lease payments for rental income from the DC Property from May 2007 through Aprils 2018 were deposited into a CLR Trust bank account.

27. That there was no active bank account in the name of "CLR" other than the CLR Trust during the period between July, 2010 and April, 2018.
**Response:** Defendant can neither admit nor deny this Request as he does not understand the question as stated.

28. That you did not provide copies of bank statements, canceled checks, or other bank records related to any bank account on which you were a signatory, or in which you deposited funds as part of your document production to the Plaintiffs in the matter of their objection to your claim of exemption in the Salas Bankruptcy.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

29. That as of June 1, 2015 you had a copy of the signed Quitclaim Deed in your possession.
**Response:** Admitted.

30. That on and after July 6, 2010 you were aware that you had received the only signed, original Quitclaim Deed.
**Response:** Denied. Defendant later became aware that other signed, original copies of the Quitclaim Deed existed.

31. That the sole purpose of the Quitclaim Deed was to allow you the opportunity to refinance the Property so that your son would no longer have Deed of Trust obligation to Sun Trust Bank, or any other lender associated with the Property.
**Response:** Denied. Another purpose of the Quitclaim Deed was to secure a mortgage with a lower interest rate than the SunTrust Deed of Trust carried.

32. That the source of the funds to be used by your son, Ron, to purchase the Trustee's Avoiding and Recovery Powers from Mr. Gigandet in the L Salas Bankruptcy was funds owned and controlled by you.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

33. That all at times after commencement of the Superior Court Litigation you were aware of the existence of the Quitclaim Deed and the Riggs Property Trust.
**Response:** Denied.

34. That, at all times after commencement of the Superior Court Litigation you were aware that your sons, Ron and Len, had copies of the Quitclaim Deed.
**Response:** Denied.

35. That your son, Ron Salas, a Colorado lawyer was aware of the pendency of the Superior Court Litigation almost immediately after its commencement in 2015.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

36. That your son, Ron, was aware that the only reason your other son, Len, was a defendant in the Superior Court Litigation is because he was the titled owner of the Property.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information. Defendant further objects on the grounds that the Request seeks information from Defendant regarding the mental impressions of a third party.

37. You were aware, prior to 2016, that the only reason your son, Len, was a Defendant in the Superior Court Litigation was because he was the titled owner of the Property.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

38. That your son, Len, was physically present at your deposition in the Superior Court Litigation held on February 24, 2016.
**Response:** Admitted.

39. That you were physically present at Len's deposition in the Superior Court Litigation held on March 9, 2016.
**Response:** Admitted.

40. That you were unaware of the possibility that the Property could be exempted in a bankruptcy proceeding by you until after you spoke to Mr. Marc Albert in early 2018.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information. Defendant further objects on the grounds that the Request seeks information that is protected by the attorney-client privilege.

41. That you have not contacted Ms. Sylvia Jones regarding the location or existence of the original Quitclaim Deed since June, 2015.
**Response:** Admitted.

42. That you have not contacted Stan Goldstein or Capitol Title regarding the location or existence of the original Quitclaim Deed since June, 2015.
**Response:** Denied.

43. That you made no payments against the Sun Trust Deed of Trust Note during the period June 1, 2015 through October, 2019.
**Response:** Denied.

44. That the Note balance as of April, 2007 totaled approximately $870,000.
**Response:** Admitted.

45. That the Note balance as of June, 2010 totaled more than $870,000.
**Response:** Defendant is without sufficient knowledge to admit or deny this Request.

46. That the Note balance as of July, 2010 totaled more than $870,000.
**Response:** Defendant is without sufficient knowledge to admit or deny this Request.

than $1,030,825.86.
   **Response:** Admitted.

   48. That the Note balance as of October 23, 2019 was $1,208,720.40.
   **Response:** Admitted.

   49. That the Proof of Claim filed by the Internal Revenue Service ("the IRS Claim") in your bankruptcy case on December 16, 2018 (C-2-1) is a true and correct copy of the IRS claim which was allowed under your Confirmed Plan.
   **Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

   50. That you did not object to the IRS Claim and it remains an allowed secured and priority claim allowed in the Salas Bankruptcy.
   **Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

   51. That from the period 2008 through May, 2015 you rented multiple rooms at the Property, from time to time.
   **Response:** Admitted.

   52. That from the period 2008 through 2018 you did not declare the income from the rentals of rooms at the Property as income on your Federal or D.C. Income Tax Returns.
   **Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

   53. That from 2008 through the present, all notices from the District of Columbia and all tax forms related to the Property were addressed to Len Salas.
   **Response:** Defendant objects to this Request on the grounds that it is duplicative.

   54. That the Complaint is made by the Plaintiffs on behalf of the bankruptcy estate of Len Salas.
   **Response:** Admitted.

   55. That Salas had no communications with the Trustee concerning the Quitclaim Deed or the Riggs Property Trust until sometime after March, 2019.
   **Response:** Denied. Defendant's first communications with the Trustee concerning the Quitclaim Deed and the Riggs Property Trust occurred in December 2018.

   56. That neither Salas nor Len produced a copy of the Quitclaim Deed or the Riggs Property Trust in their document production as part of the Superior Court Litigation.
   **Response:** Admitted.

   57. That neither Salas nor Len provided the original or a copy of the Quitclaim Deed or Riggs Property Trust to Plaintiffs or their counsel (in the Superior Court Litigation) until after February 15, 2018.
   **Response:** While Defendant cannot admit to an exact date, Defendant admits that it was sometime after this general timeframe.

58. That the intent of the attempted Quitclaim Deed in July, 2010 was to remove Len Salas from any liability related to the DC Property.
**Response:** Defendant denies that this was the only reason for the Quitclaim Deed, as explained in other responses herein.

59. That the intent of the Riggs Property Trust was to avoid having the property in the name of Max Salas.
**Response:** Admitted, but the transfer to the trust was only done to aid in refinancing the note.

60. That the intent of the Riggs Property Trust was to avoid income tax liability of, or by, Max Salas.
**Response:** Denied.

61. That Salas was unaware he could exempt his alleged interest in the DC Property until after 2017.
**Response:** Defendant objects to this Request on the grounds that it is irrelevant and unlikely to lead to any discoverable information.

62. That Salas did not attempt to locate a copy of the Quitclaim Deed or Riggs Property Trust until 2018.
**Response:** Admitted.

63. That Salas was unaware of any assets owned or controlled by Len over the value of $25,000 in July, 2010.
**Response:** Admitted, because Defendant had little knowledge of Len Salas' assets in July 2010.

64. That Salas had more than one conversation with Len after 2010 about removing Len from the title to the DC Property.
**Response:** Admitted.

65. That Salas had more than one conversation with Len after 2010 about eliminating Len as an obligor on obligation(s) secured by the DC Property.
**Response:** Admitted.

Respectfully submitted,

/s/ Phillip G. Young_____
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Defendant*