IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE:

| | | |
|---|---|---|
| LEN SALAS | | CASE NO. 3:18-BK-02662 |
| | ) | CHAPTER 11 |
| DEBTOR. | ) | JUDGE HARRISON |
| | ) | |
| NICOLAAS BREKELMANS AND | ) | |
| GAIL GREGORY BREKELMANS, | ) | |
| CO-PERSONAL REPRESENTATIVES OF | ) | |
| THE ESTATE OF NINA BREKELMANS | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL MCLOUGHLIN AND | ) | |
| MARTHA JOHNSON, CO-PERSONAL | ) | |
| REPRESENTATIVES OF THE ESTATE | ) | |
| OF MICHAEL PATTRICK MCLOUGHLIN, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 3:20-ap-90027 |
| | ) | |
| MAX SALAS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

DEFENDANTS' RESPONSE TO PLAINTIFFS' AMENDED
LIST OF UNDISPUTED FACTS,  PURSUANT TO LOCAL
RULE 7056-1 IN SUPPORT OF  THE PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, Max Salas (the "Defendant"), by and through counsel, and submits

the following responses to the statement of undisputed facts (Doc. 74-1) (the "Plaintiffs' Statement of

Undisputed Facts") submitted by the Plaintiffs:

1. The Plaintiffs are the personal representatives of the Estates of Nina Brekelmans

and Michael Patrick McLoughlin, respectively. Joint Stipulation of Uncontested Facts, Joint

Pretrial Statement, June 22, 2020 (D-14) ("Stip"), No. 1.

**RESPONSE:**

Admitted

2. Nina Brekelmans and Michael Patrick McLoughlin were tragically killed in a fire at a residence in Washington, DC (the "Fire") located at 1610 Riggs Place, NW, Washington, DC (the "Property"). Stip. No. 2

**RESPONSE:**

Admitted

3. Defendant resided in the Property from approximately 2007 through early June, 2015 and then commenced residing in the Property again in early 2018. Stip No. 3, Exemption Trans. Vol. 3, 62:11 - 63:17.

**RESPONSE:**

Admitted

4. In 2007 Len Salas took out a loan for $870,000 in order to pay Max's ex-wife an agreed $500,000 in a divorce settlement.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

5. Michael Gigandet, the Court appointed Trustee of the Estate, has declined to pursue the causes asserted herein and has also declined to join in this action. Court's Memorandum Opinion dated February 11, 2021 (D-38)("L Salas Memorandum Opinion"), at p. 6-7.

**RESPONSE:**

Admitted

6. The Complaint is brought as a derivative action on behalf of the Estate of Len Salas. L Salas Memorandum Opinion dated February 11, 2021, in Case No. 20-90027 (D-38).

**RESPONSE:**

Admitted

7. In April, 2018, the Plaintiffs obtained judgments against Len and Max totaling $15.2 Million (collectively, "the Judgment"). Joint Statement of Stipulated Facts, Joint Pre-trial Statement dated June 22, 2020 (D-14), Stipulation No. ("Stip. No.") 6.

**RESPONSE:**

Admitted

8. The Defendant, Max Salas does not have the original of the Quitclaim Deed and the 1610 Riggs Property Trust, dated July 6, 2010. Defendant's Amended Responses to the Plaintiffs Request for Admissions, dated November 11, 2021 ("Amended Responses-RFP"), Exhibit 17, Resp No. 2, p.3. Amended Responses-RFA, Request No. 1., p. 2.

**RESPONSE:**

Admitted

9. Len Salas does not remember seeing a "wet ink" original of the Quitclaim Deed after July 6, 2010. L Salas Trans. 140:13-23.

**RESPONSE:**

Admitted

10. The Defendant does not have the original Quitclaim Deed created in July, 2010. Defendant's Amended Responses to the Plaintiffs' Request for Admissions ("RFA"), Req. 1

**RESPONSE:**

Admitted

11.     That the Defendant is unaware of the location of the original Quitclaim Deed after 2012.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

12.  Ron Salas gave original(s) of the Trust and Quitclaim Deed of July 6, 2010 to Max Salas and only kept a copy.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

13.  The Defendant did not attempt to record the Quitclaim Deed after 2010.        RFA, Req. 3.

**RESPONSE:**

Admitted

14. That from 2007 through April 18, Len Salas was the sole obligor under the Sun Trust loan documents executed in 2007.  RFA 16.

**RESPONSE:**

Admitted

15. Max Salas had no written agreement or understanding with Len Salas that Max was responsible for the Sun Trust Mortgage/Deed of Trust obligation. RFA 17.

**RESPONSE:**

Admitted

16.  Neither Len Salas nor Max Salas informed SunTrust in writing that Max was

responsible for the SunTrust Deed of Trust Note payments.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

17. Max Salas was not a listed or added obligor or guarantor under the SunTrust Deed of Trust obligation or Note. RFA 18.

**RESPONSE:**

Admitted

18. Max Salas did not contact Ms. Sylvia Jones, a real estate broker acquaintance, regarding the location or existence of the original Quitclaim Deed since June, 2015. RFA 41

**RESPONSE:**

Admitted

19. That the Note balance as of April, 2007 totaled approximately $870,000. RFA 44

**RESPONSE:**

Admitted

20. That the Note balance as of the commencement of the Salas bankruptcy case (April 18, 2018) totaled more than $1,030,825.86. RFA 47

**RESPONSE:**

Admitted

21. That the Note Balance as of September 29, 2019 totaled $1,208,720.40. Stipulation filed on November 20, 2019 (D-266-1) in Max Salas' bankruptcy, Motion to Approve Settlement with U.S. Bank, Exhibit 15.

**RESPONSE:**

Admitted

22. That on or about July 6, 2010, Ron Salas, an attorney recently admitted to practice law in Colorado, prepared a Trust document for the 1610 Riggs Property Trust along with a Quitclaim Deed purporting to transfer the Property from Len to Max.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

23. That the foresaid Trust and Deed were prepared and executed in Colorado.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

24. That the Trust was registered in Colorado by Ron Salas in 2011 even though the

Property was located in D.C. Email dated June 17, 2011 from Ron to Max, Exhibit 7.

**RESPONSE:**

Admitted

25. That the Defendant made at least two attempts to obtain a new or different Quitclaim Deed from the Law Firm of Stan Goldstein in 2011 and 2012. Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7.

**RESPONSE:**

Admitted

26. That on June 17, 2011, Ron Salas sent an email to his father, the Defendant, stating that the "next step" was for his father to obtain counsel to prepare a Quitclaim Deed for Len to sign. Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012,

Exhibit 7.

**RESPONSE:**

Admitted

27. That on June 21, 2011 the Defendant forwarded Ron Salas's email of June 17, 2011 to Stanley Goldstein requesting Mr. Goldstein to assist the Defendant to transfer the Property from Len to Max. Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7.

**RESPONSE:**

Admitted

28. On January 17, 2012, more than six months later, the Defendant sent another email to Lynn Boileau, an associate of Mr. Goldstein requesting that she "get Lenny's name off of the property." Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7.

**RESPONSE:**

Admitted

29. On February 24, 2012, Len sent his father an email asking for the status of removing Len from the property title. Max responded on February 24, 2012 that he is "still working on this..." Emails between Max Salas and the Goldstein Firm, June, 2011 through February, 2012, Exhibit 7 .

**RESPONSE:**

Admitted

30. There were no further communications regarding the creation or recording of a Deed

for the transfer of the Property from Len to Max after February, 2012. L Salas Trans. _____.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

31.  From 2010 through early 2015 Len had numerous communications with Max asking Max to remove his name from the Property. L Salas Trans. 70:18 - 74:16

**RESPONSE:**

Admitted

32.  Len had several conversations with his father regarding getting his name off the loan and deed after 2010.  L Salas Trans. 71:25 - 74:16; Transcript of Len Salas's testimony at the hearing on Objections to the Claim of Exemption (of the Property) by the Debtor, Max Salas, in case no. 18-00260 in the United States Bankruptcy Court for the District of Maryland, Trial Transcript ("Exemption Trans."),Vol 1., Exhibit 20, 158:13 - 163:10; Deposition Transcript of the Deposition of Kendra Rowe Salas, August 27, 2021 ("K Rowe Trans."), Exhibit 14, 16:6-24.

**RESPONSE:**

Admitted

33.  The Sun Trust Note was in default during the period 2010 - 2018.  L Salas Trans., Exhibit 13,  55:11-20.

**RESPONSE:**

Admitted

34. That from the period 2010 through 2018 the Defendant did not declare the income from the rentals of rooms at the Property as income on his Federal or D.C. Income Tax Returns.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

35. The Plaintiffs are the holders of undisputed and accepted claims totaling $15.2 Million. Of that amount, the claim of the Brekelmans estate represents $7.5 Million and the claim of the McLoughlin Estate represents $7.7 Million. Stip. No. 6

**RESPONSE:**

Admitted

36. According to the Debtor's schedules and the Trustee's Final Report (D-209), in Case No. 18-2662, the Plaintiffs represent 99.8% of all allowed unsecured claims of the estate.

**RESPONSE:**

Admitted

37. The Plaintiffs' judgments were allowed claims in both bankruptcy estates (Len's and Max's).

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

38. The Plaintiffs received distributions on account of their claims from both estates.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

39. The Superior Court Judgments were recorded in the D.C. judgment records on or about April 5, 2018.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

40. On April 18, 2018 both Len and Max filed separate Chapter 11 bankruptcy cases in

the Middle District of Tennessee and the District of Columbia, respectively.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

41. At the time of the bankruptcy filings by Len and Max, Len was, and continued to be,

until May 3, 2022, the title owner of property located at 1610 Riggs Place, NW, Washington, D.C.

("the Property").

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

42. In 2007 Max deeded the Property to Len in 2007 after his father, Max, and Max's then

wife, divorced.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

43. Len then obtained a Deed of Trust from Sun Trust Bank for $870,000 ("the Sun Trust

Loan").

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

44. The proceeds of the Sun Trust Loan were paid to Max's wife as part of the divorce

settlement. Exemption Trans. Vol. 3, Exhibit 6, 70:2-17.

**RESPONSE:**

Admitted

45.  Len received no part of the $870,000.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

46. From 2007 through January 27, 2020, Len remained the sole owner of the Property.

Max's Confirmed Plan provides that the Confirmation Order constitutes "an Order conveying the

Property to Max Salas". *See*, Complaint, Exhibit B, Confirmed Plan, Max's Bankruptcy (Case

No. 18-00260) (D-298), p. 12, ¶ 4.4.

**RESPONSE:**

The wording of the Plan is admitted.  The remainder of the statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.  To the extent a response is required, the remainder of the statement is denied.  The facts contained in Paragraphs 1-24 of the Max Salas Affidavit, attached to the Response to Motion for Summary Judgment, illustrate that Len Salas held nothing but bare legal title to the Property.

47.  At the time of Len's purchase of the Property in 2007, Max had tax liens and other

obligations which made it impossible for Max to obtain a loan on the Property. Exemption Trans.

Vol. 3, 71:9 - 72:23.

**RESPONSE:**

Admitted

48.      At no time, since 2007, including, but not limited to, the time of the Quitclaim

Deed in  July, 2010, did Max make any payments to Len and Len received no property or other

value from Max related to the Trust or Quitclaim Deed.  Exemption Trans. Vol 3, Exhibit 6,

139:15 - 140:2; Len Salas testimony, Plan Confirmation Hearing, United States Bankruptcy Court

for the Middle District of Tennessee, December 13, 2018 ("L Salas Conf. Hrg. Trans."), 68:22 - 69:2. Exhibit 4.

**RESPONSE:**

Admitted

49.     Max delivered the original Quitclaim Deed to Mr. Goldstein's office but did not recall whether Mr. Goldstein mailed it back to Mr. Salas.  Exemption Trans. Vol. 3, 55:7 - 56:21.

**RESPONSE:**

Admitted

50. According to Max, he tried to refinance the Property several times after 2007, all to no avail. In fact, at least through 2015 every attempt to refinance the Property required the participation of Len as a co-signer or co-obligor.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

51.     There are no documents indicating that Max was liable on the SunTrust loan at any time and Max never entered into any agreement or understanding with Len that Max was liable or responsible.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

52.     There is no document raised, proffered or produced by Max indicating that Len was not the sole party responsible for the Deed of Trust payments until at least November, 2019.[1]

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule

of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

53. Max testified in his deposition in the Superior Court case in February, 2016 that there was one trust, the CLR Trust. He confirmed that, when he mentioned "the 1610 Salas Trust" he was referring to the same trust, namely, the CLR Trust. Max Salas testimony at the Exemption Hearing, Exemption Trans. Vol. 2, August 23, 2018 ("Exemption Trans. Vol. 2"),Exhibit 3, 33:23 - 50:25, Max Salas Deposition in Superior Court Case, Case Nos. 2015 CA 8054 B and 2015 CA 8061 B, Consolidated)(referred to herein as the "Superior Court Litigation'), February 24, 2016 ("M Salas Sup Ct Depo"), Exhibit 1, 42:18 - 43:2.

**RESPONSE:**

Admitted

54. From sometime after 2007 through the date of the fire, Max rented out rooms at the Property. The tenants, including Nina and Michael, signed leases under the name of "the CLR Trust" and Max signed each lease as Trustee.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

55. According to Len, the CLR Trust, was a trust created by Max for the benefit of his three sons, Chase, Len and Ron. Len Salas, Sup. Ct. Depo, Exhibit 11, 30:5-14.

**RESPONSE:**

Admitted.

56. Other than the 1611 Riggs Place Trust executed on July 6, 2010, the only family related trust of which Len is aware is the "CLR Trust." L Salas Trans. 148:1-13. In Len's Deposition Testimony in the Superior Court Litigation, Len testified, on March 9, 2016, that he

had no knowledge a trust other then the CLR Trust. Len Salas Deposition Testimony, March 9,

2016 in the Superior Court Litigation, Exhibit 11, 29:14 - 30:14

**RESPONSE:**

Admitted

57.  The lease payments were put into an account in the name of the CLR Trust and were

used to pay for the Deed of Trust obligations and other expenses associated with the Property.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule
of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

58.  Max did not want the rents deposited into his personal account.  Exemption Trans.

Vol 3., Exhibit 6,  222:12 - 16

**RESPONSE:**

Admitted for purposes of this motion only.

59.  Max told Len that he deposited the rent checks into "this account for 1610 [Salas

Trust]. Exemption Trans., Vol 1, Exhibit 20, 149:2 - 150:21.

**RESPONSE:**

Admitted

60.  During the period 2015 through 2018, and continuing after Max's Bankruptcy filing

until November, 2019, no payments were made on the Sun Trust Deed of Trust Note ("the Sun

Trust Note")  with the exception of one payment of made by Max from the insurance proceeds he

received as a result of the fire damage.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule
of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

61.  As of October, 2018, the deficiency on the SunTrust Note was $420,928.34.  Sun Trust Motion For Relief, filed November 2, 2018 in Case No. 18-2662 (D-79), pp. 2-3.

**RESPONSE:**

Admitted

62. As of April, 2018, the deficiency on the SunTrust Note was $374,282.18.  Sun Trust Motion For Relief, filed November 2, 2018 in Case No. 18-2662 (D-79), pp. 2-3.

**RESPONSE:**

Admitted

63.  As of April, 2018, Len remained the sole obligor on the SunTrust Note.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

64.  The transfer in 2010 was a violation of Len's Deed of Trust and Note with Sun Trust Bank. L Salas Depo Trans., Exhibit 13, 144:7 - 148:7, 152:3 - 153:10.  See SunTrust Deed of Trust, dated April 16, 2007, Exhibit A to SunTrust Motion for Relief from Stay ("SunTrust Motion"), filed in Case No. 18-2662 on November 2, 2018 (D-79-1), Exhibit 15.

**RESPONSE:**

Admitted for purposes of this motion only.

65.  At the time of the attempted Quitclaim Deed, in July, 2010, Len's only significant asset was the Property.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

66.   At all relevant times, Len worked only part time and had limited income and assets.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

67.   At all times following the transfer in 2010, Len was insolvent. His liabilities exceeded his assets and his income was insufficient to pay his obligations, including the Sun Trust Deed of Trust Note payments.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

68.   Len did not have sufficient funds to pay his attorneys in the Superior Court litigation. He lives "paycheck to paycheck." L Salas Trans. 76:20 - 77:2

**RESPONSE:**

Admitted

69.   At the time of his bankruptcy filing in April, 2018, Len was obligated for all payments due on the Sun Trust Note, as well as the judgments, totaling $15.2 Million, owed to the Plaintiffs. L Salas Trans. 61:1 - 63:2.

**RESPONSE:**

Admitted

70.   In 2016, Len's income was a total of $15,151.  L Salas Statement of Financial Affairs, filed April 18, 2018 in Case No. 18-2662, (D-1), Exhibit 16, p 38.

**RESPONSE:**

Admitted

71.   In 2017 Len's total income was $30,408. Exhibit 16, p. 38.

**RESPONSE:**

Admitted

72.  In 2018, through April 17, 2018 Len's total income was $6,720.  Exhibit 16, p. 38.

**RESPONSE:**

Admitted

73.  During the Superior Court litigation which ended with the 4 day trial held in late March and early April, 2018, Max paid certain expenses and legal fees owed by Len Salas because Len could not afford them.  See, for example, Max Salas Statement of Financial Affairs, filed in his bankruptcy case, No. 18-00260 in the United States Bankruptcy Court for the District

of Columbia on May 2, 2018 (D-13) ("M Salas SOFA"), p. 5 of 10, attached hereto as Exhibit 16.

**RESPONSE:**

Admitted

74.  Len's brother, Ron, paid for Len's bankruptcy proceedings and the retention of counsel for the appeal of the Superior Court litigation. Disclosure of Compensation of Attorney for Debtor, April 18, 2018 (D-1) p. 46 of 56; Motion of Debtor in Possession to Employ Michael C. Forster and Forster Law Firm as Special Counsel, filed April 27, 2018 in Case No. 18-2662, D-10, at page 3 of 10.

**RESPONSE:**

Admitted

75.  On his bankruptcy schedules filed herein on April 18, 2018 (D-1), Len Salas lists total assets of $53,373.38 and total liabilities of $16,107,795.41.  Len Salas Schedules of Assets and Liabilities, filed on April 18, 2018 in Case No. 18-2662, (D-1) pp. 12-36.

**RESPONSE:**

Admitted

76.  Len received no income, payments or property from Max in 2007 or 2010. L Salas

Mtg Trans., 4/1/19, Exhibit 5, 5:22 - 7:15.

**RESPONSE:**

Admitted

77.  Len repeatedly attempted to get Max to remove Len's name from the Property after

2010. L Salas Depo. Testimony, Exhibit 13, 70:18 - 74:16

**RESPONSE:**

Admitted

78.  Mr. Salas told his counsel, Mr. Albert and his associate, Mr. Cox, in 2018,  what Max

did with the Quitclaim Deed and left it up to his counsel to obtain the original from Mr.

Goldstein's Office. Exemption Trans. Vol 3, 57:13 - 58:6

**RESPONSE:**

Admitted

79.  After seeking to record through Mr. Goldstein's office in 2011 and/or 2012 (See

emails attached as Exhibit 7) Max did not make any further attempts to record the Deed.

Exemption Trans. Vol 3, 58:9-13.

**RESPONSE:**

Admitted for purposes of this Motion only.

80.  In his deposition Ron Salas testified, under oath, related to the Quitclaim Deed,

executed on July 6, 2010, as follows:

"Q And I believe you said, but I want to
clarify this, that between the time of 2012,
roughly, and I realize you said, I think, a year
or two after the transaction, so I'm not trying to
pin it down, but say roughly 2012, which would be
two years later, until today, are you aware of any
other reasons why the deed, the quitclaim deed
that you prepared would not have been or could not
have been recorded?

**A. I don't know of any reason and I did not
know that it was not recorded until the lawsuit
came in my brother's name.**

Q And what is it about the lawsuit that
came in your brother's name that made you believe
the quitclaim deed had not been recorded?

**A The only reason my brother would be
involved was because his name had to still be on
the title is the assumption I've made in my mind
I don't know that that is factually correct, but
that is my assumption, that it must not have been
filed or he wouldn't be in this situation.**

**He didn't live in the District, he
never- he didn't live in the house, and I- so
that's the only logical reason I could make that
he would be involved, that it was never done. And
until that point, I did not even know that it had
not been done. I assumed at some point that he
came up with the money and did it. But he didn't,
as we sit here today we all know.**

Transcript of the Deposition of Ron Salas in the United States Bankruptcy Court for the

District of Columbia, Case No. 18-00260, August 8, 2018, excerpts attached hereto as

Exhibit 8, ("R Salas Trans"), 73:15 - 74:21 (emphasis in original).[2]

     **RESPONSE:**

    Admitted

    81. The Plaintiffs Judgments are now final and binding on all parties as a result of the final

distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's

Bankruptcy. M Salas Chapter 11, Case No. 18-00260 in the United States Bankruptcy Court for

the District of Columbia, Docket Entries D-298 and 303; L Salas Chapter 7, Case No. 18-002662

in the United States Bankruptcy Court for the Middle District of Tennessee, Docket Entries D-209 (Trustee's Final Report) and D-220, Trustee's Final Account, and D-222 (Final Decree).

**RESPONSE:**

Admitted

82.  Max has not produced, and is currently unaware of the location of, the original Quitclaim Deed is, or if it even exists. Transcript of the Continued Deposition of Max Salas, March 8, 2022 ("M Salas Trans.") 51:2-12; 52:6-20

**RESPONSE:**

Admitted

83.  On June 16, 2011, Ron sent an email to the Defendant advising Max that the Trust had been registered and that Max needed to have a Quitclaim Deed created to transfer the Property to Max.  This was nearly a year after the Quitclaim Deed was created, the only deed relied upon by Max in asserting his ownership of the Property.  A copy of Ron's email, dated June 17, 2011, less than a year after the purported Quitclaim Deed of July 6, 2010, was produced in discovery by Len Salas in 2022.

**RESPONSE:**

The Defendant denies that the Quitclaim Deed is his only proof of ownership of the Property.  Otherwise, the statement is admitted.

84.  These emails attached as Exhibit 7 were within the scope of the document production requested from Max as part of the discovery requests in the Exemption Hearing adversary proceeding in Max's bankruptcy in D.C. Debtor's Responses to Movants' First Set Request for Production of Documents, served on August 6, 2018, in Case No. 18-260, Exhibit 21.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

85. Max, Ron and Len all testified at that hearing and all asserted, or supported the claim

that the Quitclaim Deed of July 6, 2010 was in effect in 2018.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

86.  Ron's email states, on June 17, 2011 that "The next step is for someone in D.C. to draft a Quitclaim Deed in order to move the property from the possession of Len to the Trust.  The document should be straight forward and will need to be signed by at least the grantor, Len." Exhibit 7, Bates Nos.: LenSalas000016-17.

**RESPONSE:**

Admitted

87.  On June 21, 2011 Max followed up with an email to his real estate attorney, Stan Goldstein.  In that email, Max asserts to the attorney, Mr. Goldstein, that "We need to have done is have Lenny sign a quick (sic) claim deed into the trust..."  Exhibit 7, Bates Number LenSalas000016.

**RESPONSE:**

Admitted

88.  In Max's email to attorney Lynn Boileau on January 17, 2012, he states : There are **two different** requests.  One is **to get Lenny's name off of the property**. (Want to do this asap) The second request is to refinance the property under the name of the trust.." (Emphasis supplied) Exhibit 7, Bates Number LenSalas000023.

**RESPONSE:**

Admitted

89.  On February 24, 2012 Len sent an email to Max asking "Where are we on this?" Max's response is "Still working on this...,,I am in Miami will be back soon."  Exhibit ____, Bates Number LenSalas000029.

**RESPONSE:**

Admitted

90. Max Salas testified that he is unaware that the attorneys he contacted in the D.C. area respecting the Trust's ownership of the Property ever created a deed to convey the Property into the Trust. M Salas Trans. , Exhibit 10, 64:16 -74:2.

**RESPONSE:**

Admitted.

91. Max also testified that he does not recall any further communications with counsel about the 1610 Riggs Place documents after February 27, 2012. M Salas Trans. 72:12-18.

**RESPONSE:**

Admitted

92. When asked whether he contacted the attorneys to determine if they had a copy of a deed for the Property, Max testified as follows:

**Q. Have you contacted Ms. Boileau or**
Mr. Goldstein to determine if they have
a copy of any deed that might have
been created?

**A. I did try to contact them. I
did try to contact them actually
recently. And I -- but I didn't -- I
mean, they were trying -- they
were -- no. I mean, we worked on
something and then they said it couldn't go
any further and depends on what you
were going to do. So I don't -- I guess -- I
can't guess. I don't know.**

M Salas Trans. 73:13-23

**RESPONSE:**

Admitted

93. Only Max Salas had an original of the Quitclaim Deed after July 6, 2010 and Max does not know where the original is or when he last had it.  Exhibit 10, M Salas Trans. 73:13-23, 77:2 - 82:23.

**RESPONSE:**

Admitted for purposes of this Motion only.

94. Max testified in his deposition in the Superior Court case in February, 2016 that there was one trust, the CLR Trust.  He confirmed that when he mentioned "the 1610 Salas Trust" he was referring to the same trust, namely, the CLR Trust.  Max Salas Deposition in Superior Court Case, Case Nos. 2015 CA 8054 B and 2015 CA 8061 B, Consolidated)(referred to herein as the "Superior Court Litigation'), February 24, 2016 ("M Salas Sup Ct Depo"), Exhibit 19, 42:18 - 43:2.

**RESPONSE:**

Admitted

95. Len Salas is not aware of the location of any of the wet ink signature originals of the July 2010 Quitclaim Deed (Transcript of the Deposition of Len Salas, August 27, 2021 ("L Salas Trans."), 15:4-9.  Len testified in his deposition that he provided an original "wet ink" original of the Quitclaim Deed, or a copy,  to his lawyer on the eve of the Superior Court trial which resulted in the judgment against Len and his father. L Salas Trans, 16:6-24, 19:11-25 - 21:18.  Regardless, Len testified that the document he produced on the eve of the Superior Court trial, which commenced on March 26, 2018, was kept in his possession at all known times between July, 2010 and March, 2018.  Id. Len's wife, Kendra, testified that she "had a pdf of it (the July, 2010 Quitclaim Deed) and that she thought it was the same as what Len had " I thought it was the same thing as what Len had, but I'm not sure." K Rowe Trans. 30:13-20.

**RESPONSE:**

Admitted

96.   Ron Salas stated that he was unaware the Quitclaim Deed had not been recorded

until he found out that Len had been sued in the Superior Court (in October, 2015. Transcript

of the Deposition of Ron Salas, August 8, 2018, Exhibit 8, 65:21 - 66:21

**RESPONSE:**

Admitted

97.   Ron Salas was unaware of the requirements of Quitclaim Deeds in D.C. Ron Salas's

testimony, Exhibit 12, at pp.227:5 - 228:12.

**RESPONSE:**

Admitted

98.   Ron stated he was unaware whether the trust documents he created were valid under

D.C. law in August, 2018. Ron Salas's testimony, Exhibit 12, 243:8-15.

**RESPONSE:**

Admitted

99.      The only deed referenced by Max or his counsel, allegedly entitling Max to an

ownership interest in the Property, is the 2010 Quitclaim Deed.  No other deed has been proffered,

or even mentioned by the Salas family or by Max, specifically.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule
of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

100. As of the filing of Len's bankruptcy case in 2018, Len was obligated to pay over $15

Million in damages to the Plaintiffs as a result of their judgments. Neither Len, nor the Trustee

filed objections to the Plaintiffs' claims filed in Len's bankruptcy.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

101. In Len's Schedule J, filed on April 18, 2018 in Case No. 18-2662 (D-1), p. 35, Len listed total monthly income of $4977.75 and total monthly expenses of $4,407.14. On April 5, 2018 Max was a creditor of Len's. He owed Len, at the very least, his contribution for the Plaintiffs' Judgment and the balance of the SunTrust Deed of Trust Note (at least $1,035,000 approx) per his consistent promise that he would pay that amount and his consistent assertion that he was responsible for payment of the SunTrust Note which was, at all relevant times, in Len's name.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

102. The Judgment is now final and binding on all parties as a result of the final distribution and closing of Len's Estate in this Court and the Confirmed Plan in Max's Bankruptcy. M Salas Chapter 11, Case No. 18-00260 in the United States Bankruptcy Court for the District of Columbia, Docket Entries ("D- ") D-298 and 303; L Salas Chapter 7, Case No. 18-002662 in the United States Bankruptcy Court for the Middle District of Tennessee, Docket Entries ("D- ") D-209 (Trustee's Final Report) and D-220, Trustee's Final Account, and 222 (Final Decree).

**RESPONSE:**

Admitted

103.   Len was solely obligated on the Sun Trust Deed of Trust on the Property which, according to the Defendant's bankruptcy schedules was over $1 Million in April, 2018. M Salas Schedules, Case No. 18-260 (D-12), p. 19 of 37, attached as Exhibit ___.

30. At no time, since 2007, including, but not limited to, the time of the Quitclaim Deed in July, 2010, did Max make any payments to Len and Len received no property or other value from Max related to the Trust or Quitclaim Deed. Transcript of Confirmation Hearing in Case No. 18-02662, December 13, 2018 at pp. 68-69, excerpts attached as Exhibit 4.  See also, Transcript of the Chapter 7 Meeting of Creditors of Len Salas, April 1, 2019 (L Salas Mtg. Trans.), Exhibit 5,  5:22 - 7:15.

**RESPONSE:**

Admitted

104. Max delivered the original Quitclaim Deed to Mr. Goldstein's office.  He does recall that Mr. Goldstein mailed it back to Mr. Salas.  Exemption Trans. Vol. 3, 55:7 - 56:21.

**RESPONSE:**

Admitted

105.   After seeking to record through Mr. Goldstein's office in 2011 and/or 2012 (See emails attached as Exhibit 7) Max did not make any further attempts to record the Deed. Exemption Trans. Vol 3, 58:9-13

**RESPONSE:**

Admitted

106.   In discussions with his newly hired bankruptcy counsel, Marc Albert (Stinson LLP) ("Albert"), Max learned that if the Property was owned by Len, it could not be

exempted in bankruptcy and would be subject to attachment and sale to partially satisfy the eventual judgments. D.C. Code § 15-501 (a)(14). These conversations took place in early 2018. Exemption Trans. Vol. 3, Exhibit 6, 119:9 - 122:9; Albert-R Salas emails, 2/14 - 3/7/18, Exhibit 19, Exemption Trans. Vol 1, Exhibit 20, 145:22 - 147:20.

**RESPONSE:**

Admitted for purposes of this Motion only, and such admission is made without waiving the attorney-client privilege.

107. Max also learned from Albert that if Max could claim he is the actual owner of the Property, he could claim the Property exempt in his subsequent bankruptcy proceeding and, due to D.C.'s generous homestead exemption, Max could then claim the entire equity in the Property as exempt from execution by the Plaintiffs.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.

108. Mr. Albert confirmed that no original was found after 2010 at the Exemption Hearing through Ron Salas' "rebuttal" testimony on August 24, 2018. Rebuttal Testimony of Ron Salas, at the Exemption Evidentiary Hearing, August 24, 2018. Exemption Trans., Vol 3, 4:10 - 5:16. See also, Exemption Trans. 5:19 - 6:3, 7:18 - 12:8, 13:17 - 15:24

**RESPONSE:**

Admitted

108. At the time of Ron Salas' conversation with Mr. Albert regarding copies of the trust documents, Ron Salas understood that Mr. Albert was representing Max regarding a potential bankruptcy filing after the Superior Court trial. Exemption Trans. 12:12 - 13:14

**RESPONSE:**

Admitted

109. Max Salas valued the Property at $2.5 Million on his schedules in or about May 2018, and the Property was appraised for approximately $2.4 Million in or about August 2019. Stip. No. 50.

**RESPONSE:**

Admitted

110. Pursuant to an order of this Court dated June 12, 2019, the trustee in this case was authorized to sell the estate's interest in the Trustee's avoidance and recovery rights under 11 U.S.C. §§ 544 through 551. Stip. No. 47

**RESPONSE:**

Admitted

111. On July 23, 2019, the trustee in Len Salas' case held an auction sale to sell the bankruptcy estate's interest in the avoidance and recovery actions pursuant to 11 U.S.C. §§ 544 through 553. Stip. No. 48

**RESPONSE:**

Admitted

112. The Plaintiffs were the successful bidders at the Trustee's auction sale. Stip No. 49

**RESPONSE:**

Admitted

113. The D.C. Bankruptcy Court made no final determination of the effect of the trustee's avoiding powers asserting that effect was up to Len Salas' bankruptcy estate. Stip. No. 44

**RESPONSE:**

Admitted

114. No deed was recorded naming Max Salas as trustee or owner of the Property prior to Len Salas' bankruptcy filing. Stip. No. 45

**RESPONSE:**

Admitted

115. Other than the original deed dated 2007 and the Confirmation Order, no deeds or other documents of title have been filed related to the Property as of June 6, 2022. Stip. No. 46

**RESPONSE:**

Admitted

116. From the time of the Fire until February or March 2018, no one resided in the Property. Stip. No. 35.

**RESPONSE:**

Admitted

117. During that time, and until November 2019, no payments were made on the SunTrust Loan with the exception of one payment made by Max Salas from the insurance proceeds he received as a result of the fire damage. Stip No. 36

**RESPONSE:**

Admitted

118. According to the schedules filed in Max Salas' bankruptcy, as of the commencement of his bankruptcy case, in April, 2018, the only lien creditors were the IRS ($6,768.66 claim) and SunTrust Mortgage ($1,030,825.86). Stip. No. 37

**RESPONSE:**

Admitted

119. The balance of the SunTrust Loan as of October 26, 2018 was $1,141,021.14. Stip. No. 38

**RESPONSE:**

Admitted


120. Max Salas has been making the required payments on the Property since November 2019, as of June 22, 2020. Stip. No. 39.

**RESPONSE:**

Admitted

121. At all relevant times, Len Salas had limited income and assets, other than the Property. Stip. No. 28.

**RESPONSE:**

Admitted

122. Max Salas intended to record the Quitclaim Deed in 2010 but had no money to pay the required recording and transfer taxes. Stip. No. 29.

**RESPONSE:**

Admitted

123. The Quitclaim Deed has never been recorded. Stip. No. 30

**RESPONSE:**

Admitted

124. As of June 17, 2011, Len and Max abandoned the Quitclaim Deed and no longer had

any intent to use or record it.  Emails dated June, 2011 through February, 2012, Exhibit 7.

**RESPONSE:**

This statement fails to comply with the requirements of Bankruptcy Rule 7056, Federal Rule of Civil Procedure 56, and Local Rule 7056-1; therefore, no response is required.  To the extent a response is required, the Defendant denies that the referenced emails establish this alleged fact and would request that the Plaintiffs identify a specific email upon which they rely.

125. While in Colorado, Len Salas and Max Salas executed a trust agreement which Ron Salas prepared using a Colorado form even though the purported trust property, the Property, was located in D.C. Stip. No. 25.

**RESPONSE:**

Admitted

126. The Defendant's Second Amended Disclosure Statement and Third Amended Plan of Reorganization, as confirmed by the D.C. bankruptcy court, recognize that the Plaintiffs are the owners of, and have the right to pursue, the avoidance actions which are alleged in the Complaint, as amended. Exhibit 2, Complaint Exhibit B, M Salas Second Amended Disclosure Statement, Exhibit 2, at p. 17.

**RESPONSE:**

Admitted

Dated: August 12, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Attorneys for Defendant

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein, including counsel for the Plaintiffs.

This 12th day of August, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.