IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Len Salas, | ) | Case No. 3:18-bk-02662 |
| | ) | Chapter 7 |
| Debtor. | ) | Judge Harrison |
| | ) | |
| | ) | |
| Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-Personal Representatives of the Estate of Nina Brekelmans | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Michael McLoughlin and Martha Johnson, Co-Personal Representatives of the Estate of Michael Patrick McLoughlin, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Ad Pro No. 3:20-ap-90027 |
| | ) | |
| Max Salas, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MAX SALAS'
MOTION FOR SUMMARY JUDGMENT**

**This matter is set to be heard on March 14, 2023 at 9:30 a.m. via Zoom video**

Defendant Max Salas ("Max Salas" or "Defendant") respectfully submits this memorandum in support of his Motion for Summary Judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.

# I. Introduction

On November 8, 2022, the Court considered and rejected the Plaintiffs' motion for summary judgment. Subsequently on January 5, 2023, after its further examination of the facts of this case, the Court entered an Order inviting the parties to file additional motions for summary judgment and/or briefs on certain issues raised by the Court. In essence, the Court asked the parties to address three questions:

1) Whether the United States Bankruptcy Court for the District of Columbia had previously ruled on the issue of ownership of the real property at issue, including whether it had already determined that Len Salas (the Debtor herein) owned nothing more than bare legal title?

2) Whether that finding by the United States Bankruptcy Court for the District of Columbia has a preclusive effect on this matter?

3) Whether the Plaintiffs are precluded from pursuing the causes of action alleged in their complaint because a reasonable purchaser of the real property or judgment lien creditor would have been on inquiry notice of Max Salas' ownership interest?

The undisputed facts demonstrate that (1) the United States Bankruptcy Court for the District of Columbia has already found that the Debtor Len Salas owns nothing but bare legal title, (2) collateral estoppel determines the outcome of this matter, and (3) any reasonable purchaser of the property would have been on inquiry notice. Accordingly, the Defendant respectfully requests that this Court enter summary judgment in his favor on all counts of the complaint. More specifically, applying these conclusions to the complaint's individual counts yields the following outcomes:

Count I – Declaratory Judgment under § 544(a)(3) – Barred due to inquiry notice

Count II - Declaratory Judgment under § 544(a)(1) – Barred due to inquiry notice

Count III - Declaratory Judgment under § 544(a)(2) – Barred due to inquiry notice

Count IV – Fraudulent Transfer under § 548 – Precluded by DC Court's order

Count V – Fraudulent Transfer under § 544(b)(1) – Precluded by DC Court's order

Count VI – Previously dismissed by this Court

Count VII – Relief under § 550(a) – No independent cause of action

## II.  Material Facts

The facts material to determining this dispute are deceptively simple and are uncontested. On April 11, 2018, just one week prior to Len Salas (the "Debtor") filing for bankruptcy protection in this Court, the Plaintiffs recorded documents with the District of Columbia recorder of deeds evidencing the judgment held by the Plaintiffs. (Defendant's Statement of Undisputed Facts, ¶ 2; Defendant's Statement of Undisputed Facts Exhibit B). As evidenced by the recorder's stamp on Exhibit B to the Defendant's Statement of Undisputed Facts, and as further evidenced by the title search attached as Exhibit C to the Defendant's Statement of Undisputed Facts, the documents recorded by the Plaintiffs would have appeared in any title search related to 1610 Riggs Place, NW, Washington, DC (the "Property"). (Defendant's Statement of Undisputed Facts, ¶ 3; Defendant's Statement of Undisputed Facts Exhibit B; Defendant's Statement of Undisputed Facts Exhibit C).

On September 25, 2018, the United States Bankruptcy Court for the District of Columbia issued a Memorandum Decision and Order for Objection to Homestead Exemption. (Defendant's Statement of Undisputed Facts, ¶ 1; Defendant's Statement of Undisputed Facts Exhibit A). Among the findings of the United States Bankruptcy Court for the District of Columbia was the following: "Accordingly, the court finds that under District of Columbia law, the Property was conveyed to Max and he holds both the legal and beneficial interests in the Property." (Defendant's Statement of Undisputed Facts Exhibit A, p. 57).

These are the *only* facts needed by this Court in order to grant summary judgment in favor of the Defendant.

### III. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c). *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). The Defendant submits that there are no genuine issues of material fact in this case and he is entitled to a judgment as a matter of law as to all counts in the Complaint. In support of this Motion, the Defendant relies upon the Defendant's Statement of Undisputed Facts which also incorporates by reference the Plaintiffs' Amended List of Disputed Facts (Doc. 74-1), as further supplemented by the Plaintiffs (Doc. 79-1) and as previously admitted by the Defendant (Docs. 75-1 and 81).

### IV. Argument

1. <u>The United States Bankruptcy Court for the District of Columbia has already found that the Defendant owns all legal and beneficial interests in the Property.</u>

The United States Bankruptcy Court for the District of Columbia has clearly, unequivocally, and undeniably ruled that the Defendant, Max Salas, is the owner of all legal and beneficial interests in the Property. The question of whether the Debtor, Len Salas, owned anything other than bare legal title was considered at length by the D.C. Bankruptcy Court in the context of the Plaintiffs' objection to the homestead exemption claimed by the Defendant in his own Chapter 11 bankruptcy proceeding. This is evident on the very face of the Memorandum Decision and Order Re Objection to Homestead Exemption (the "DC Order"), attached as <u>Exhibit A</u> to the Defendant's Statement of Undisputed Facts. *See, e.g.,* D.C. Order pp. 21 and 29-30.

After considering the Plaintiffs' argument that Len Salas was the owner of the Property, and the Defendant's argument that Len Salas owned nothing more than bare legal title to the Property, the D.C. Bankruptcy Court concluded: "Accordingly, the court finds that under District of Columbia law, the Property was conveyed to Max and he holds both the legal and beneficial interests in the Property." D.C. Order p. 57. With this conclusion, the D.C. Bankruptcy Court left no doubt that Len Salas owned nothing more than bare legal title, at most.

2. <u>The doctrine of collateral estoppel prevents the Plaintiffs from relitigating this issue, and has a preclusive effect upon this Court.</u>

As the Court correctly noted in its oral ruling after the November 8, 2022 hearing, and reiterated in its January 5, 2023 Order, "if the debtor, Len Salas, only holds bare legal title to the property, the plaintiffs would not be entitled to relief." Doc. 83, p. 2. As determined by the D.C. Bankruptcy Court, Len Salas owns *at most* bare legal title to the Property.[1] The only question that remains, then, is whether this Court is bound by the prior findings of the D.C. Bankruptcy Court cited above. The doctrine of collateral estoppel prevents the Plaintiffs from relitigating the issue of whether or not Len Salas owned anything other than bare legal title in the Property, and this Court is bound to uphold the conclusion of the D.C. Bankruptcy Court. As such, this Court must grant summary judgment in favor of the Plaintiffs as to Counts IV and V.

The doctrine of res judicata "usually is parsed into claim preclusion and issue preclusion." *Angelex Ltd. v. United States*, 2015 WL 5011421, 7 (D.D.C. Aug. 24, 2015). Moreover, issue preclusion, also called "collateral estoppel"[2] … 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment[.]'" *Id*. (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Nonetheless, the

---
[1] For further support of this conclusion, the Defendant incorporates by reference the arguments made and law cited in his Objection to Plaintiffs' Motion for Summary Judgment, Doc. 75.
[2] "Collateral Estoppel" is sometimes hereinafter referred to as "issue preclusion" for clarity purposes

Supreme Court has given guidance to courts, instructing lower courts to invoke the doctrine of issue preclusion "only after careful inquiry," explaining: "because [it] may govern grounds and defenses not previously litigated … it blockades unexplored paths that may lead to the truth." *Brown v. Felsen*, 442 U.S. 127, 132 (1979). Consequently, to preclude a party from relitigating an issue under the doctrine of issue preclusion, the moving party must demonstrate that:

> (1) the same issue now being raised was contested by the parties and submitted for judicial determination earlier; (2) the issue [was] actually and necessarily determined by the earlier court of competent jurisdiction; and (3) preclusion would not work a basic unfairness to the party bound by the first determination."

*Canonsburg Gen'l Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

First, the party asserting collateral estoppel bears the burden of showing that an issue in question is identical to what was decided before. *Merle v. United States*, 683 A.2d 755, 762 (D.C. 1996). Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

When the first two prerequisites for application of the issue preclusion doctrine are met, the plaintiff "must be permitted to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971) (internal quotation marks omitted). On this note, the Supreme Court has explained, "a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time … both orderliness and reasonable time saving in judicial

administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case." *Id*. at 324-25.

The D.C. Bankruptcy Court clearly ruled that Max Salas could properly claim a homestead exemption of the Property because he was the owner of *both* the legal and beneficial rights to the Property. That decision was affirmed by the District Court for the District of Columbia. Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the issue in a suit on a different cause of action involving a party to the first case.

District of Columbia courts have used the doctrine of issue preclusion to determine whether collateral estoppel was applicable to bar a suit. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (outlining that [issue preclusion applies when] (1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination). The Sixth Circuit employs a very similar test, adding only a requirement that the prior order be final, which is present in this case. *See N.L.R.B. v. Kentucky May Coal Co. Inc.*, 89 F.3d 1235, 1239 (6th Cir. 1996). This case presents a classic example of where issue preclusion is appropriate: the same parties to the homestead objection are parties to this case; the same ultimate issue is in dispute, that is whether Max Salas or Len Salas owns the Property; and the issue at stake was determined by a court of competent jurisdiction — the D.C. Bankruptcy Court. An application of the *Yamaha* test for issue preclusion clearly establishes that the Plaintiffs are barred from re-litigating whether Len Salas owns anything more than bare legal title to the Property.

> i. The same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case.

In evaluating the first element of issue preclusion, it is clear that the Plaintiffs seek to relitigate the same issue that has been decided by the D.C. Bankruptcy Court — who is the owner of the Property. This exact issue was decided by the D.C. Bankruptcy Court when it authored the D.C. Opinion. As discussed earlier, the D.C. Bankruptcy Court clearly stated that Max Salas was the legal and beneficial owner of the Property. Accordingly, by collateral estoppel precedent established by the D.C. Circuit, this order would bar further litigation on this issue. *See Klayman v. Rao*, 49 F.4th 550, 553 (D.C. Cir. 2022) (explaining that where Klayman was a party to Judicial Watch I and Judicial Watch II, and he sought to relitigate issues that were raised and decided in that litigation, his claims were barred by res judicata); *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 169 (D.D.C. 2021) (showing — by contrast — that the court will not apply collateral estoppel against a party on an issue tangential to an unconfirmed arbitration award against its bankrupt debtor, who did not even participate in the arbitration).

> ii. The issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case.

In evaluating the second element, it is clear that this element is met; namely, that the issue has been actually and necessarily determined by a court of competent jurisdiction in the prior case. In the first instance, the D.C. Bankruptcy Court expressly held that Max Salas owned all legal and equitable interests in the Property. The Plaintiffs then appealed that decision to the D.C. District Court, which affirmed the Bankruptcy Court. *See In re Salas*, No. CV 20-3091 (FYP), 2022 WL 1154596, at 9 (D.D.C. Apr. 19, 2022) (stating that "even if this Court could reach the merits of the Homestead Decision, and even if this Court considered Appellants'

arguments regarding the effect of the newly proffered testimony, Appellants would fail to persuade the Court that the Homestead Decision should be overturned"). Given these clear decisions from the D.C. Bankruptcy Court and the District Court, it is obvious that the issue of ownership of the Property was actually and necessarily adjudicated by *two* courts of competent jurisdiction. *See Yamaha Corp. of Am.* at 254.

    iii. Preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

Finally, in evaluating the last element of the issue preclusion test, preclusion works no basic unfairness to the Plaintiffs. *See Martin v. Dep't of Just.*, 488 F.3d 446, 254 (D.C. Cir. 2007). Simply put, whether issue preclusion works some unfairness upon a party turns primarily on whether "the losing party clearly lacked any incentive to litigate the point" at issue in the earlier case. *Canonsburg Gen. Hosp. v. Sebelius*, 989 F. Supp. 2d 8, 19 (D.D.C. 2013). Courts evaluating the fairness of preclusion also consider whether the "prior proceedings were seriously defective." *Martin*, 488 F.3d at 455. Neither concern is present in this case. As stated earlier, the Plaintiffs fully litigated the issue of the ownership of the Property both before the D.C. Bankruptcy Court and then the D.C. District Court. The Plaintiffs had every incentive to forcefully litigate the ownership issue as part of their objection to Defendant's homestead exemption; after all, winning the homestead exemption issue was the only practical way the Plaintiffs could ever collect any significant portion of their $15.2 million dollar judgments from either Max Salas or Len Salas. In fact, not only did they forcefully litigate that matter before the D.C. Bankruptcy Court, they appealed the D.C. Order to a federal district court and lost. As such, precluding the Plaintiffs from once again litigating this issue before this Court creates no basic unfairness.

After applying the issue preclusion / collateral estoppel test to the matter now before this Court, it is clear that the D.C. Bankruptcy Court's decision that Max Salas owns all legal and equitable interests in the Property is entitled to preclusive effect. As such, this Court must grant the Defendant summary judgment on Counts IV and V.[3]

3. <u>Any reasonable purchaser of the Property would have been on inquiry notice of the Defendant's interest in the Property.</u>

The last remaining question is whether a reasonable purchaser of the Property would have been on inquiry notice of the Defendant's ownership of the Property. In its January 5, 2023 Order, the Court framed the issue this way: "Here, the question may be whether courts in the District of Columbia would find that physical possession is sufficient to place the Trustee on inquiry notice." Doc. 83, p. 4. The Court went on to cite a number of cases from jurisdictions other than the District of Columbia that have held that physical possession by one party is sufficient to place a reasonable third party on inquiry notice: *Patel v. Rupp*, 195 B.R. 779, 784 (D. Utah 1996); *Reinhold v. Thorpe (In re Thorpe)*, 546 B.R. 172, 185 (Bankr. C.D. Ill. 2016); *Osberg v. Fibison (In re Fibison)*, 474 B.R. 864, 870 (Bankr. W.D. Wis. 2011); *LR Partners v. Steiner (In re Steiner)*, 251 B.R. 137, 142 (Bankr. D. Ariz. 2000); and *Fowler v. Rauso (In re Fowler)*, 425 B.R. 157, 198 (Bankr. E.D. Pa. 2010).

Indeed, courts within the District of Columbia have held that physical possession of real property by a person other than its title owner would be sufficient to put a party on inquiry notice where "such possession is 'sufficiently distinct and unequivocal as so as to put the purchaser on his guard.'" *Clay Props., Inc. v. Wash. Post Co.,* 604 A.2d 890, 897 (D.C. 1992) (quoting *Hayward v. Mayse,* 1 App. D.C. 133, 140 (D.C. 1893)). In this case, the record is replete with

---

[3] As noted by the Court in its prior order, a finding that Len Salas owned nothing more than bared legal title is fatal to the Plaintiffs' fraudulent transfer claims. The Defendant cites to his brief opposing the Plaintiffs' motion for summary judgment as further legal support for this conclusion.

indicia that Max Salas' possession of the Property was open, distinct and unequivocal: Max Salas lived in the Property (Plaintiffs' Undisputed Facts, ¶ 3); Max Salas was the only party who ever made mortgage payments on the Property (Plaintiffs' Undisputed Facts, ¶ 60, 117 and 120); Max Salas signed leases with the Plaintiffs to rent portions of the Property (Plaintiffs' Undisputed Facts, ¶ 54); Max Salas collected rent payments from the Property (Plaintiffs' Undisputed Facts, ¶ 57 and 59); and Max Salas collected and distributed insurance proceeds after the Property was destroyed by fire (Plaintiffs' Undisputed Facts, ¶ 60). While all of this is true and would put any third party on inquiry notice, this Court need not determine whether Max Salas' possession of the Property alone was sufficient to put a bankruptcy trustee, creditor, or good faith purchaser on notice of his ownership interest in the Property.

Instead, the fact that the Plaintiffs recorded notice of their judgments against Max Salas and Len Salas with the District of Columbia recorder of deeds would have *per se* provided inquiry notice to any reasonable third party. Because a trustee or any reasonable third party would have been put on notice of the judgments against Max Salas and Len Salas, which appeared in the chain of title to the Property, the Plaintiffs are precluded from any recovery under 11 U.S.C. § 544(a).

For purposes of § 544(a), notice may be actual, constructive, or inquiry. *Clay Properties, Inc., 604 A.2d at 895*. A trustee's actual knowledge of the contents of a deed is irrelevant under § 544(a) as the trustee assumes the role of a bona fide purchaser or judgment creditor without actual knowledge. *Sovran Bank v. United States (In re Aumiller)*, 168 B.R. 811, 818 (Bankr. D.D.C. 1994). However, that hypothetical purchaser may be held to constructive or inquiry notice. *See McCannon v. Marston*, 679 F.2d 13, 16–17 (3d Cir.1982). If that constructive notice or inquiry notice would put the purchaser on notice of the contents of a deed of trust, then, like a

Case 3:20-ap-90027 Doc 91 Filed 02/21/23 Entered 02/21/23 14:26:17 Desc Main
Document Page 11 of 17

purchaser with actual notice of the contents, the deed of trust would be effective against the purchaser. The District of Columbia Court of Appeals has described inquiry notice as follows:

> A purchaser is held to be on inquiry notice where he or she is aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances. The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed.

*Clay Properties, Inc.* 604 A.2d at 895.

In the District of Columbia, constructive notice has come to mean record notice. *See Id*. However, inquiry notice extends to that knowledge which a purchaser would have possessed after due investigation as measured by an objective standard of reasonable diligence under the circumstances. *See BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 500 (D.C. 2014) (quoting *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)); *Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 958 (D.C. 2003) (explaining that "the standards by which the discovery rule is applied are objective"). The critical question is whether a party exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him. *See Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000). Regardless, a judgment lien creditor fares no better than a hypothetical purchaser; simply put, if a purchaser would be on inquiry or constructive notice, so would a judgment lien creditor. *See In re Aumiller*, 168 B.R. at 818–19 (applying the same analysis of constructive and inquiry notice under District of Columbia law to both a purchaser and a judgment lien creditor); *In re El-Erian*, 512 B.R. 391, 397 (Bankr. D.D.C. 2014).

Section 544(a) of the Bankruptcy Code gives the trustee the rights of a hypothetical judgment lien creditor or a hypothetical bona fide purchaser of real property from the debtor at the time of the commencement of the case. 11 U.S.C. §§ 544(a)(1), (3). On this note, the trustee

can avoid a lien on real property if a bona fide purchaser or judgment lien creditor could avoid the lien on the petition date. *Hamilton v. Washington Mut. Bank FA (In re Colon)*, 563 F.3d 1171, 1173 (10th Cir.2009). State law governs who may be a bona fide purchaser or judgment lien creditor for purposes of section 544(a). *See Sovran Bank v. United States (In re Aumiller)*, 168 B.R. 811, 818 (Bankr.D.D.C.1994).

Under District of Columbia law, a deed conveying an interest in real property is not effective against "subsequent bona fide purchasers ... without notice of said deed" unless it is recorded. *See* D.C. Code § 42–401; see also *Clay Properties, Inc. v. Washington Post Co.*, 604 A.2d 890, 894 (D.C.1992) (referring to the previous codification of this statute, at D.C. Code § 45–801). In particular, as to third parties, a deed conveying an interest in real property "only take[s] effect from the time of its delivery to the Recorder of Deeds for record." D.C. Code § 42–401.

However, in cases similar to the one at hand, District of Columbia courts universally charge a reasonable third party with inquiry notice. For example, in *In re Aumiller*, a Chapter 7 trustee, or any hypothetical purchaser or creditor, was placed on inquiry notice of a creditor's interest in the debtor's real property, for purpose of determining whether creditor's equitable lien was avoidable under trustee's strong-arm powers. *In re Aumiller*, 168 B.R. 811, 819 (Bankr. D.D.C. 1994). There, a covenant between debtor and creditor was filed with recorder of deeds, and debtor agreed under the covenant to execute such documents as requested by creditor to cause a lien or encumbrance in favor of creditor to be recorded against debtor's property interests. The recording of the covenant with the D.C. recorder of deeds was sufficient to put a reasonable party on notice; thus, the Trustee could not exercise its strong-arm powers.

In another case, a D.C. court held that a reasonably prudent purchaser would have been on notice of the contents of a deed of trust granting a lien on Chapter 7 debtors' nonresidential

real property. *In re El-Erian*, 512 B.R. 391, 396 (Bankr. D.D.C. 2014). In *El-Erian*, despite the deed of trust containing both correct and incorrect square and lot numbers for the property and being indexed under the square and lot number for debtors' residence, the Trustee could not avoid the deed of trust using strong-arm powers. This result was reached because the deed of trust was recorded, thereby providing constructive notice to subsequent purchasers or lien holders of all matters which would have been disclosed by an examination of that deed of trust. The fact that the deed of trust was misindexed did not affect the validity of its recordation because a search of the grantor/grantee index would have revealed the deed of trust — despite its inaccuracies. The deed of trust indicated that the subject property was encumbered, or at the least would have led purchaser to inquire which property was encumbered by the deed of trust.

Finally, the D.C. Bankruptcy Court held that a reasonable purchaser would have been put on inquiry notice of the terms of a marital property distribution agreement simply by conducting a title search, seeing that the property at issue was owned as tenants by the entirety, but noticing that the parties were now divorced. In *Webster v. Hope (In re Hope)*, 231 B.R. 403, 423-26 (Bankr. D.D.C. 1999), the court found that a trustee was barred from pursuing a § 544(a) action because a reasonable party would have been put on notice by a recorded divorce judgment, and was then charged with inquiring further about the terms of that divorce. The court found that any title search of the property would have revealed that its owners had divorced. The court further found that, upon realizing that the parties were divorced, a reasonable party should have (a) read the divorce court's judgment and (b) inquired about the property distribution agreement referenced in the divorce court's judgment.

Applying these cases to the facts of the matter now before this Court, it is apparent that any reasonable third party (be it a lien creditor or a bona fide purchaser) would have been put on notice of the questions regarding the ownership of the property as a result of the Plaintiffs'

recording the judgments in the chain of title for the Property. A simple title search would – and indeed did – reveal the judgment liens. Any reasonable party would have thus been put on notice to inquire further about the facts and circumstances surrounding the judgment, as the D.C. Bankruptcy Court found in *Hope*. With any amount of due diligence, the third party would have quickly discovered that there existed a dispute about who owned the property, since Len Salas was only included in the underlying lawsuit because his name was on the deed to the Property and he subsequently filed multiple pleadings attempting to get out of the lawsuits because he exercised no ownership in fact over the Property. A reasonable purchaser or judgment lien creditor would surely be charged with such inquiry notice, as would a trustee. Because the Plaintiffs are pursuing this matter in a derivative fashion, on behalf of the trustee, they are likewise charged with inquiry notice in the case.

Any reasonable party would have been subject to inquiry notice of the dispute concerning ownership of the Property as of the petition date, because the notice of the adverse judgments was filed with the D.C. recorder of deeds just one week prior to the filing of this case. The judgments would have appeared in any title search conducted on the petition date. Inquiry notice is sufficient to defeat the trustee and/or the Plaintiffs' causes of action under 11 U.S.C. § 544(a). Thus, this Court should grant the Defendant summary judgment as to Counts I, II, and III of the complaint.[4]

## V. Conclusion

The D.C. Bankruptcy Court has already determined that Len Salas owns nothing more than bare legal title to the Property, at best. That determination precludes the Plaintiffs from re-

---

[4] As noted earlier, Count VII seeks relief under 11 U.S.C. § 550 which is not an independent action. Without any basis for recovery under § 544 or § 548, the Plaintiffs are entitled to no relief under § 550. Therefore, the Defendant is also entitled to summary judgment on Count VII.

litigating that issue and this Court is bound by the prior determination. As such, the Defendant is entitled to summary judgment on both fraudulent transfer counts (Counts IV and V).

The undisputed facts show that the Plaintiffs recorded notice of the judgments in the chain of title of the Property just one week before the filing of this bankruptcy. Due to that filing, any bona fide purchaser or judgment lien creditor of the debtor, Len Salas, would have been on inquiry notice of the facts and disputes related to the underlying lawsuit; this includes the claims made by Len Salas that Max Salas was the sole owner of the Property. The inquiry notice that Plaintiffs must be charged with invalidates any claim that they might otherwise have under 11 U.S.C. § 544(a). This means that the Court should grant the Defendant summary judgment as to Counts I, II, and III.

Having previously disposed of Count VI, and Count VII (one under § 550) containing no independent right, the Defendant should be granted summary judgment as to the entirety of Plaintiffs' complaint and this matter should be dismissed.

For all of these reasons, the Defendant respectfully requests that this Court grant summary judgment in his favor as to all causes of action alleged in this adversary proceeding.

RESPECTFULLY SUBMITTED:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6008
Email: phillip@thompsonburton.com

Attorneys for Defendant Max Salas

# CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the foregoing document has been served this 21st day of February, 2023, upon all parties of record requesting notice through the Court's electronic filing system, and by United States mail to:

Philip J. McNutt  
Law Office of Philip J. McNutt, PLLC  
11921 Freedom Drive, Suite 584  
Reston, VA 20190

Taylor A. Cates  
Burch, Porter & Johnson, PLLC  
130 North Court Avenue  
Memphis, TN 38103

      /s/ Phillip G. Young, Jr.  
      Phillip G. Young, Jr.