IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville

| | | |
|---|---|---|
| In re: | : | |
| | | CHAPTER 11 |
| LEN SALAS | : | CASE No. 18-02662 |
| | | JUDGE: HARRISON |
| Debtor | : | |

| | | |
|---|---|---|
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, | : | |
| CO-PERSONAL REPRESENTATIVES | : | |
| OF THE ESTATE OF NINA | | |
| BREKELMANS, et al | : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS | : | |
| Defendant | : | |

## FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

References to the "Joint Statement' means the parties Joint Statement of Uncontested Facts included on pp. 3 through 10 of the parties Amended Joint Pre-trial Statement filed herein on March 29, 2021 at Docket No. ("D-") 43.

References to "the Plaintiffs' Memorandum" means the Plaintiffs' Amended Memorandum in Support of the Plaintiffs' Motion for Summary Judgment filed herein on August 1, 2022 at D-74.

References to "List of Undisputed Facts" means the Defendant's Responses to the Plaintiffs Amended List of Undisputed Facts filed herein on August 12, 2022 at D-75-1

References to "Supplemental Undisputed Facts" refers to the Defendant's Response to Plaintiffs' Supplemental List of Undisputed Facts filed herein on September 28, 2022 at D-81.

References to "Requests for Admission" means the Defendant's Amended Responses to Requests for Admissions to the Defendant dated November 9, 2021 and attached hereto as Exhibit A.

References to "the M Salas Affidavit" means the affidavit dated August 10, 2022 and filed herein as an Exhibit to the Defentrust's Objections to the Plaintiffs' Motion for Summary Judgment, at D-75-2.

References to "the Complaint" means the Amended Complaint filed herein.

References to "the Superior Court Litigation" means the two D.C. Superior Court wrongful death cases filed against the Defendants in 2015 which resulted in Judgments against the Debtor and the Defendant in April, 2018.

The following undisputed facts are organized by the issue concerning which the Plaintiffs assert they have the most relevance. However, many of the undisputed facts set forth below apply to more than one issue presently before the Court for determination.

1. On the issue of Open and Unambiguous Possession by the Defendant, the Plaintiffs submit the following uncontested facts:

Len Salas was named a party to the Superior Court lawsuit in 2015 because he was, at all times relevant, the record title holder of the Property/ Joint Statement, ¶ 7, p. 4.

Max voluntarily deeded the property to Len so that Len could refinance the property for Max to pay off his now ex-wife's interest in the Property. Joint Statement, ¶¶11, 12, 13.

Len obtained a loan from SunTrust Bank, based upon his ownership of the Property and

his credit, of $870,000. Joint Statement, ¶12; Requests for Admission, ¶ 44.

The Defendant had tax liens and other obligations which made it impossible for the Defendant to obtain a loan on the Property. Joint Statement, ¶15. In addition, the Defendant has a tax evasion conviction on this record, Joint Statement, ¶16, Supplement List of Undisputed Facts, ¶ 47.

From sometime after 2007 through the date of the fire, the Defendant, acting as "agent" or "trustee" rented out rooms at the Property. Joint Statement, ¶19. M Salas Affidavit at ¶¶ 21, 22. All tenants signed leases with "the CLR Trust." and the Defendant signed each lease as trustee of the trust. Joint Statement, ¶20. M Salas Affidavit at ¶¶ 21, 22.

The Debtor understood the CLR Trust was a trust created for the benefit of the Defendant's three sons, including the Debtor and he so testified at his deposition in the Superior Court case. Joint Statement, ¶ 21, Supplemental Memorandum, Exhibit A.

All lease payments for rental income from the Property were deposited into an account in the name of the CLR Trust. M Salas Affidavit, at ¶¶ 19-22 ("I deposited **all rent checks**..." (Emphasis supplied); Requests for Admission, ¶ 26 (partially denied);Supplemental List of Undisputed Facts, ¶¶ 54, 55.

Through the date of the fire (June, 2015) and at all times prior to the bankruptcy filings (April 18, 2018) all governmental notices and tax bills and notices regarding the Property were addressed to Len Salas at 1610 Riggs Place, NW or at Len's current residence. Joint Statement, ¶23.

From the time of the fire until 2018 no one resided at the Property. Joint Statement, ¶38, List of Undisputed Facts, ¶ 3.

From the time of the fire until November 2019, only one payment was made on the SunTrust Deed of Trust and that was made from the insurance proceeds. Joint Statement, ¶39

The Defendant does not have the original Quitclaim Deed and is unaware of its location. , Requests for Admission, ¶¶ 1,2

The Defendant did not attempt to record the Quitclaim Deed after 2010. Requests for Admission, ¶3, List of Undisputed Facts, ¶ 13.

From 2007 through April 18, 2018 the Debtor was the sole obligor under the Sun Trust loan documents. The Defendant was not a listed or added obligor or guarantor of the SunTrust loan. Requests for Admission, ¶¶16, 18.

The Defendant attempted to refinance the Property several ties after 2007, all to no avail.

At least through 2015, every attempt to refinance the Property required the participation of the Debtor as co-signor or co-obligor. Supplemental List of Undisputed Facts, ¶ 50.

The Defendant had no written agreement or understanding with the Debtor that the Defendant was responsible for the Sun Trust Deed of Trust obligation. Requests for Admission, ¶ 17, Supplemental List of Undisputed Facts, ¶ 51, List of Undisputed Facts, ¶15.

The Loss Mitigation Statement attached to the Plaintiffs' Supplemental Memorandum, dated February 28, 2016 shows that Len is the Owner of the Property. Supplemental Memorandum, Exhibit F. ("I want to: Keep the Property." and "The property is currently: My Primary Residence." and "The property is currently: Owner Occupied.") Exhibit F at p. 6.

In the Superior Court case, the Defendant's deposition took place on February 24, 2016 and the Debtor's deposition took place on March 9, 2016. See Plaintiffs' Memorandum (D-74), Exhs. A and K.

The D.C Agency documents attached to the Supplemental Memorandum as Exhibits G through I show that the Debtor was the listed owner of the Property according to D.C. public records.

Neither the Debtor nor the Defendant produced a copy of the Quitclaim Deed of 2010 or the 1610 Riggs Property Trust as part of the Superior Court litigation. Requests for Admission, ¶ 56.

Neither the Debtor nor the Defendant produced a copy of the Quitclaim Deed to the Plaintiffs in the Superior Court litigation until after February 15, 2018. Requests for Admission, ¶57 (Defendant admitted the delayed production "was sometime after this general timeframe.)

The purpose of the 1610 Riggs Property Trust was to avoid having the property in the name of Max Salas. Requests for Admission, ¶59

Nether the Debtor nor the Defendant informed Sun Trust in writing that the Defendant was responsible for the Sun Trust Deed of Trust Note payments. Supplemental List of Undisputed Facts ¶ 16.

There were no further communications regarding the creation or recording of a deed for the transfer of the Property from the Debtor to the Defendant after February, 2012. Requests for Admission, ¶ 30, Supplemental List of Undisputed Facts, ¶ 30.

From 2007 through May 3, 2022 the Debtor remained the title owner of the Property. Requests for Admission, ¶¶ 41, 46.

2. The Trustee is the Real Party in Interest for Purposes of Collateral Estoppel.

Mr. Gigandet, the Trustee, declined to pursue the causes asserted in the Complaint and also declined to join in the Complaint. List of Undisputed Facts, ¶ 5.

The Plaintiffs requested that the Debtor's trustee pursue the estate's avoidance and recovery rights under 11 US.C. §§ 544 through 551. The trustee declined to do so electing instead to sell the estate's interest in those avoidance and recovery rights. Joint Statement, ¶51.

The Plaintiffs were the successful bidders at an auction sale of the estate's interest in the trustee's avoidance and recovery actions. Amended Joint Pre-trial Statement ("Pre-trial Statement"), Joint Statement of Uncontested Facts ("Joint Statement"), ¶ 4, p. 4.

This Court authorized the trustee to sell the estate's interest in the trustee's avoidance and recovery rights on June 12, 2019. Joint Statement, ¶52.

On July 23, 2019 the trustee conducted the court ordered auction sale of the estate's interest in the trustee's avoidance and recovery claims. The auction was attended by the Debtor's counsel and the Defendant and Ron Salas (by phone). The Plaintiffs were the successful bidders. Joint Statement, ¶¶53 through 55.

That the Complaint filed in this Adversary Proceeding was on behalf of the bankruptcy estate of the Debtor. Requests for Admission, ¶ 54, List of Undisputed Facts, ¶ 6.

3. The Defendant abandoned the 2010 Deed.

The original Quitclaim Deed was abandoned in 2011. Plaintiffs' Amended Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Exhibit 7.

At no time since 2015 did the Defendant contact Ms. Sylvia Jones (D.C. real estate agent) regarding the location or existence of the Quitclaim Deed. Requests for Admission, ¶ 41.

At no time since June, 2015 did the Defendant contact (attorney) Stan Goldstein or Capitol Title regarding the location or existence of the original Quitclaim Deed. Requests for Admission, ¶ 42.

Neither the Debtor nor the Defendant produced a copy of the Quitclaim Deed in their document production s part of the Superior Court litigation. Requests for Admission, ¶ 56.

Neither the Debtor nor the Defendant produced a copy of the Quitclaim Deed to the Plaintiffs in the Superior Court litigation until after February 15, 2018. Requests for Admission, ¶57 (Defendant admitted the delayed production "was sometime after this general timeframe.)

The purpose of the 1610 Riggs Property Trust was to avoid having the property in the name of Max Salas. Requests for Admission, ¶59. The Defendant admitted this Request and added "but the transfer to the trust **was only done to aid in refinancing the note**." Id.

That the Defendant had more than one conversion with the Debtor after 2010 about removing the Debtor from the title to the Property. Requests for Admission, ¶ 64.

The Quitclaim Deed was never recorded. Joint Statement, ¶32,

The original Quitclaim Deed has been lost. Joint Statement, ¶33, Supplemental List of Undisputed Facts, ¶¶ 11, 12.

There were no further communications regarding the creation or recording of a deed for the transfer of the Property from the Debtor to the Defendant after February, 2012. Requests for Admission, ¶ 30, Supplemental List of Undisputed Facts, ¶ 30.

The Defendant delivered the original Quitclaim Deed to Mr. Goldstein's office and does not recall Goldstein mailing it back to the Defendant. Supplemental List of Undisputed Facts, ¶ 104.

The Defendant made at least two attempts to obtain a new or different Quitclaim Deed from the Goldstein law firm in 2011 and 2012. Lists of Undisputed Facts, ¶ 25.

Prior to June, 2011, the Trust and Quitclaim Deed were abandoned by the Debtor and the Defendant. Plaintiffs' Memorandum, Exhibit 7, List of Undisputed Facts ¶¶ 27 - 30.

The Debtor repeatedly attempted to get the Defendant to remove the Debtor's name from the Property after 2010. List of Undisputed Facts, ¶ 77.

4. The Debtor held more than "bare legal title"

Len Salas was named a party to the Superior Court lawsuit in 2015 because he was, at all times relevant, the record title holder of the Property/ Joint Statement, ¶ 7, p. 4.

Max voluntarily deeded the property to Len so that Len could refinance the property for Max to pay off his now ex-wife's interest in the Property. Joint Statement, ¶¶11, 12, 13.

Len obtained a loan from SunTrust Bank, based upon his ownership of the Property and his credit, of $870,000. Joint Statement, ¶12.

The Defendant had tax liens and other obligations which made it impossible for the Defendant to obtain a loan on the Property. Joint Statement, ¶15. In addition, the Defendant has

a tax evasion conviction on this record, Joint Statement, ¶16, Supplement List of Undisputed Facts, ¶ 47.

The Defendant tried to refinance the Property several times after 2007 but did not succeed. Every attempt to refinance the Property required the participation of the Debtor as co-signor or co-borrower. Joint Statement, ¶¶17, 18.

From sometime after 2007 through the date of the fire, the Defendant, acting as "agent" or "trustee" rented out rooms at the Property. Joint Statement, ¶19. M Salas Affidavit at ¶ ___ . All tenants signed leases with "the CLR Trust." and the Defendant signed each lease as trustee of the trust. Joint Statement, ¶20.

The Debtor understood the CLR Trust was a trust created for the benefit of the Defendant's three sons, including the Debtor and he so testified at his deposition in the Superior Court case. Joint Statement, ¶ 21, Supplemental Memorandum, Exhibit A.

The Defendant was present at the testimony of the Debtor in 2016 when he testified concerning the "CLR Trust." Requests for Admission, ¶ 39.

At no time prior to 2020 did the Defendant dispute Len's testimony regarding the CLR Trust.

Through the date of the fire (June, 2015) and at all times prior to the bankruptcy filings (April 18, 2018) all governmental notices and tax bills and notices regarding the Property were addressed to Len Salas at 1610 Riggs Place, NW or at Len's current residence. Joint Statement, ¶23, Requests for Admission, ¶8.

The Quitclaim Deed was never recorded. Joint Statement, ¶32

The original Quitclaim Deed has been lost. Joint Statement, ¶33,

Other than the original deed of 2007 no deeds or other documents of title have been filed related to the Property through the bankruptcy filings of the Debtor and the Defendant in April, 2018. Joint Statement, ¶49.

Through 2019, no deed or other document of title was recorded showing that the Defendant had an interest in the Property. Joint Statement, ¶49

The original Quitclaim Deed was abandoned in 2011. Plaintiffs' Amended Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Exhibit 7.

In April, 2018 the Plaintiffs, in their D.C. Superior Court cases against the Debtor and the Defendant, obtained judgments against the Debtor and the Defendant as owner and manager of the

Property, respectively. Joint Statement, ¶¶35-37.

In early 2018, on the eve of the D.C. Superior Court trial, the Debtor filed a motion seeking to exclude the Debtor from the Superior Court cases of the Plaintifs on the basis of the abandoned, Quitclaim Deed, even though both the Debtor and the Defendant knew that the Deed was not effective as early as 2011. The Superior Court denied the Debtor's Motion. Joint Statement, ¶¶35, 36, Plaintiffs' Memorandum, Exhibit 7.

5. Unclean Hands Doctrine prevents relief

The original balance of the SunTrust loan taken out by the Debtor in 2007 was $870,000. The balance at the time of the bankruptcies of the Debtor and the Defendant was at least $1,037,592.78. Joint Statement, ¶12; Requests for Admission, ¶ 47.. The balance of the SunTrust loan as of October 23, 2018 was $1,208,720.40. Requests for Admission, ¶ 48.

From the time of the fire until November 2019, only one payment was made on the SunTrust Deed of Trust and that was made from the insurance proceeds. Joint Statement, ¶39

According to the Defendant's Monthly Operating Reports filed in his bankruptcy case, the Defendant made no payments on the SunTrust loan from April, 2018 through at least October, 2019.

The original Quitclaim Deed was abandoned in 2011. Plaintiffs' Amended Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Exhibit 7.

The documents attached to the Plaintiffs' Memorandum were produced, for the first time, in discovery documents delivered by the Debtor to the Plaintiffs in August, 2021.

During the period 2015 - 2018 the Defendant owed federal income taxes that were outstanding and overdue. Requests for Admission, ¶14.

Prior to 2018, the Defendant was unaware that either Ron Salas or the Debtor had copies of the 2010 Quitclaim Deed. Requests for Admission ¶15.

The Defendant's document production shows that the 1610 Riggs Place Trust maintained a bank account from October, 2018 through April, 2018. Other than an initial deposit, the Riggs Place Trust Account shows no activity. Supplemental Memorandum, Exhibit B.

Neither the Debtor nor the Defendant produced a copy of the Quitclaim Deed of 2010 or the 1610 Riggs Property Trust as part of the Superior Court litigation. Requests for Admission, ¶ 56.

Neither the Debtor nor the Defendant produced a copy of the Quitclaim Deed to the Plaintiffs in the Superior Court litigation until after February 15, 2018. Requests for Admission, ¶57

(Defendant admitted the delayed production "was sometime after this general timeframe.)

That the Defendant had more than one conversion with the Debtor after 2010 about removing the Debtor from the title to the Property. Requests for Admission, ¶ 64.

There were no further communications regarding the creation or recording of a deed for the transfer of the Property from the Debtor to the Defendant after February, 2012. Requests for Admission, ¶ 30, Supplemental List of Undisputed Facts, ¶ 30.

The Debtor, the Defendant and Ron Salas all testified at the Exemption Hearing, or supported the claim, that the Quitclaim Deed was in effect in 2018. Supplemental List of Undisputed Facts, ¶ 98.

The only deed referenced by the Defendant or his counsel, allegedly entitling the Defendant to an ownership interest in the Property is the 2010 Quitclaim Deed. No other deed has been proffered or even mentioned by the Salas family or the Defendant, specifically. Supplemental List of Undisputed Facts, ¶ 99.

In February, 2016 the Defendant testified that there was only one Trust, the CLR Trust. List of Undisputed Facts, ¶ 53.

The Debtor testified that the CLR Trust was created for the benefit of the Debtor and his brothers, Ron and Chase. List of Undisputed Facts, ¶ 55.

The Defendant did not want the rents, including those of Nina Brekelmans and Michael McLoughlin deposited into his personal account. List of Undisputed Facts, ¶ 58.

The attempted transfer by way of the Quitclaim Deed was a violation of the Debtor's Deed of Trust with Sun Trust Bank. List of Undisputed Facts, ¶ 64.

6. Collateral Estoppel

The D.C. Bankruptcy Court made no final determination of the effect of this Trustee's avoiding powers and asserted the status of the avoiding powers was left to the Tennessee bankruptcy court. Joint Statement, ¶48.

This Court authorized the trustee to sell the estate's interest in the trustee's avoidance and recovery rights on June 12, 2019. Joint Statement, ¶52.

On July 23, 2019 the trustee conducted the court ordered auction sale of the estate's interest in the trustee's avoidance and recovery claims. The auction was attended by the Debtor's counsel and the Defendant and Ron Salas (by phone). The Plaintiffs were the successful bidders. Joint Statement, ¶¶53 through 55.

That the Complaint filed in this Adversary Proceeding was on behalf of the bankruptcy estate of the Debtor. Requests for Admission, ¶ 54, List of Undisputed Facts, ¶ 6.

Respectfully submitted,

BURCH, PORTER & JOHNSON, PLLC

By: /s/ Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)
Tacates@bpjlaw.com

LAW OFFICE OF PHILIP J. McNUTT, PLLC

By: /s/ Philip J. McNutt
Philip J. McNutt
11921 Freedom Drive, Ste 584
Reston, VA 20190
703-904-4380
202-379-9217 (fax)
Pmcnutt@mcnuttlawllc.com

COUNSEL FOR THE PLAINTIFFS