
Marian F. Harrison
US Bankruptcy Judge

Dated: 5/23/2023

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE



| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 318-02662 |
| LEN SALAS, | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) CHAPTER 7 |
| NICOLAAS BREKELMANS AND | ) |
| GAIL GREGORY BREKELMANS, | ) |
| CO-PERSONAL REPRESENTATIVES | ) ADV. NO. 320-90027 |
| OF THE ESTATE OF NINA | ) |
| BREKELMANS, | ) |
| and | ) |
| MICHAEL MCLOUGHLIN AND | ) |
| MARTHA JOHNSON, CO-PERSONAL | ) |
| REPRESENTATIVES OF THE | ) |
| ESTATE OF PATRICK | ) |
| MCLOUGHLIN, | ) |
| Plaintiffs, | ) |
| v. | ) |
| MAX SALAS, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On March 21, 2023, this matter was before the Court on cross-motions for summary judgment. Previously, the Court heard argument on a motion for summary judgment filed

by Nicolaas Brekelmans and Gail Gregory Brekelmans, Co-Personal Representatives of the Estate of Nina Brekelmans, and Michael McLoughlin and Martha Johnson, Co-Personal Representatives of the Estate of Patrick McLoughlin (collectively "plaintiffs").[1] The Court ruled from the bench that summary judgment was not appropriate in this case. After further consideration, the Court raised two specific issues and requested that the parties address them with respect to summary judgment:

1. In relationship to the strong-arm avoidance claims under 11 U.S.C. § 544(a)(3) (a bona fide purchaser) and 11 U.S.C. § 544(a)(1) (a hypothetical judgment lienholder), whether it is appropriate to consider inquiry notice and if so, whether inquiry notice existed as a matter of law based on the undisputed facts.[2]

2. In relationship to the fraudulent conveyance claims under 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), whether the District of Columbia Bankruptcy Court ("D.C. Court") already determined the issue of ownership and bare legal title in its homestead exemption opinion.[3] If so, is the D.C. Court's Homestead Opinion entitled to preclusive or collateral effect in this proceeding.

---

[1] The plaintiffs have been granted derivative standing to pursue these claims on behalf of the estate.

[2] If a purchaser would be on inquiry or constructive notice, so would a judgment lien creditor. **Sovran Bank v. United States (In re Aumiller)**, 168 B.R. 811, 818-819 (Bankr. D.D.C. 1994) (applying same analysis of constructive and inquiry notice under D.C. law to both a purchaser and a judgment lien creditor). *See also* **Albert v. Green Tree Serv., LLC (In re El-Erian)**, 512 B.R. 391, 397 (Bankr. D.D.C. 2014) (citing *In re Aumiller*).

[3] *In re Salas*, No. 18-00260, 2018 WL 4621930 (Bankr. D.D.C. Sept. 24, 2018) ("Homestead Opinion").

## I. Summary Judgment Standards

Pursuant to Federal Rule of Civil Procedure 56(a), as incorporated by Federal Rule of Bankruptcy Procedure 7056, an entry of summary judgment is mandated "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court "must view the evidence and draw all reasonable inferences in favor of the nonmoving party." ***Browning v. Levy***, 283 F.3d 761, 769 (6th Cir. 2002) (citation omitted). The Court does not "'weigh the evidence and determine the truth of the matter but . . . determine[s] whether there is a genuine issue for trial.'" *Id*. (citation omitted).

## II. Claims Pursuant to 11 U.S.C. §§ 544(a)(3) and 544(a)(1)

In Counts I and II of the amended complaint, the plaintiffs seek to avoid Max Salas' interest in property located at 1610 Riggs Place, NW, Washington, D.C. ("Property") pursuant to 11 U.S.C. § 544(a)(3) (as a bona fide purchaser) and 11 U.S.C. § 544(a)(1) (as a hypothetical judgment lienholder). To determine whether bona fide purchaser or hypothetical judgment lienholder status exists, this Court must look to state law. ***In re El-Erian***, 512 B.R. 391, 396 (citations omitted). ***See also Treinish v. Norwest Bank Minnesota, N.A. (In re Periandri)***, 266 B.R. 651, 655 (B.A.P. 6th Cir. 2001) (citation omitted).

Under District of Columbia ("D.C.") law, if a deed conveying an interest in real property is recorded, it is effective against a subsequent bona fide purchaser whether or not they had notice. In contrast, when a deed is unrecorded, the Court must determine whether

the subsequent bona fide purchaser had notice of said deed. ***In re El-Erian***, 512 B.R. at 396 (citations omitted). In the present case, the deed was not recorded. Therefore, whether a subsequent bona fide purchaser would have had notice is the issue here. Under D.C. law, notice may be actual, constructive, or inquiry. ***Clay Props., Inc. v. Washington Post Co.,*** 604 A.2d 890, 895 (D.C. 1992). ***See also Webster v. Hope (In re Hope),*** 231 B.R. 403, 424 (Bankr. D.D.C. 1999).[4]

First, actual knowledge would be inapplicable because the trustee assumes the role of a bona fide purchaser *without* actual knowledge. ***In re Aumiller***, 168 B.R. at 818. As stated earlier, the plaintiffs were granted derivative standing and stepped into the shoes of the Trustee. As such, actual knowledge is irrelevant. Constructive notice is also inapplicable because constructive notice has come to mean record notice. ***Clay Props.***, 604 A.2d at 895 n.15. This leaves open the possibility of inquiry notice as a trustee may be held to such notice. ***In re El-Erian***, 512 B.R. at 396 (citation omitted).

In its prior order, this Court raised the issue of whether Max Salas' physical possession of the property created inquiry notice based on case law from other

---

[4] As stated earlier, if a purchaser would be on inquiry notice, so would a judgment lien creditor. ***In re Aumiller***, 168 B.R. 811, 818-19 (applying same analysis of constructive and inquiry notice under D.C. law to both a purchaser and a judgment lien creditor). ***See also In re El-Erian***, 512 B.R. at 397 (citing ***In re Aumiller***).

4

jurisdictions.[5] Under D.C. law, inquiry notice is found when a purchaser is "aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances. The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed." ***Clay Props.***, 604 A.2d at 895.

Max Salas asserts that the following undisputed facts would put a bona fide purchaser or a hypothetical judgment lienholder on inquiry notice:

1. Max Salas lived in the Property.

2. Max Salas was the only party who ever made mortgage payments on the Property.

3. Max Salas signed the leases to rent portions of the Property.

4. Max Salas collected the rent payments from the Property.

5. Max Salas collected and distributed insurance proceeds after the Property was destroyed by fire.

6. The plaintiffs recorded notice of their D.C. judgments against Max Salas and Len Salas with the D.C. Recorder of Deeds prior to the filing of Len Salas' bankruptcy petition in this Court and Max Salas' bankruptcy petition in the D.C. Court.

---

[5] *See **Reinbold v. Thorpe (In re Thorpe)**,* 546 B.R. 172, 185 (Bankr. C.D. Ill. 2016) ("actual physical possession and occupancy of the real estate is easily enough to trigger a duty of further inquiry"); ***Osberg v. Fibison (In re Fibison)***, 474 B.R. 864, 870 (Bankr. W.D. Wis. 2011) (defendant's sole possession of the property would prompt further inquiry); ***Fowler v. Rauso (In re Fowler)***, 425 B.R. 157, 198 (Bankr. E.D. Pa. 2010) ("[A] buyer of real property is *obliged* to *ask those* in *physical possession of property* (who are not also the current record titleholders) if they have some title to, or interest in, the occupied property that is adverse to the prospective buyer's title."); ***Patel v. Rupp***, 195 B.R. 779, 784 (D. Utah 1996) (Actual physical possession by an individual with an unrecorded interest in the property satisfies the first prong of the analysis because the bona fide purchaser will learn of that potentially adverse claim upon inquiring of that person of their interest.).

Based on this last undisputed fact, Max Salas asserts that the recording of the judgment would have per se provided inquiry notice to any reasonable third party. *In re Hope*, 231 B.R. 403, 423-26 (Trustee was barred from pursuing 11 U.S.C. § 544(a) action because reasonable party would have been put on notice by recorded divorce judgment and was then charged with inquiring further about the terms of the divorce.). Max Salas argues that with any amount of due diligence, a third party would have discovered there existed a dispute about who owned the property as Len Salas had filed multiple pleadings in the underlying lawsuits asserting he was not the owner of the property. The fact that the judgments were not actually final and appealable when recorded might also be a factor in determining whether inquiry notice existed.

The plaintiffs, on the other hand, point to other undisputed facts in support of their assertion that inquiry notice did not exist:

1. Len Salas was the named owner on the title to the Property.
2. The mortgage on the Property was in Len Salas' name only.
3. The rental leases were signed by Max Salas on behalf of "CLR" rather than individually.
4. The recorded judgment showed Len Salas was held liable as the owner of the Property.
5. The recorded judgment showed Max Salas was held liable for mismanagement not ownership of the Property.

As stated earlier, in considering motions for summary judgment, the Court does not "'weigh the evidence and determine the truth of the matter but . . . determine[s] whether there is a genuine issue for trial.'" **Browning v. Levy**, 283 F.3d 761, 769 (citation omitted). **See also Thompson v. Fresh Prods., LLC**, 985 F.3d 509, 523 (6th Cir. 2021) (court is not to weigh evidence or determine truth). In the present case, a determination of whether inquiry notice existed would require the weighing of evidence, and therefore, is not an appropriate matter for summary judgment. As such, the Court finds the cross-motions seeking summary judgment on the strong-arm avoidance claims under both 11 U.S.C. §§ 544(a)(1) and (3) must be denied.

### III. Claims Pursuant to 11 U.S.C §§ 544(b)(1) and 548(a)(1)(B)

In Counts IV and V of the amended complaint, the plaintiffs seek to invoke the Trustee's powers to avoid fraudulent transfers under 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B). In denying the plaintiffs' original motion for summary judgment, this Court ruled that if the proof showed that Len Salas had only bare legal title, there would be no recoverable interest in the Property under the fraudulent conveyance provisions. This ruling was premised on the Supreme Court's decision in **United States v. Whiting Pools, Inc.**, 462 U.S. 198, 204 n.8 (1983), and the many cases which have cited it for the proposition that where a debtor only holds bare legal title, and not equitable title to property, only the legal title becomes part of the debtor's bankruptcy estate. **See, e.g., Kapila v. Moodie (In re Moodie)**, 362 B.R. 554, 561 (Bankr. S.D. Fla. 2007) ("[A]n interest that is limited in the hands of the debtor is equally limited in the hands of the estate,

7

and therefore, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property."); ***Geremia v. Dwyer (In re Dwyer)***, 250 B.R. 472, 474 (Bankr. D.R.I. 2000) (Bare legal title has no value to an estate, and a transfer of bare legal title cannot form the basis for a fraudulent transfer action); ***Swanson v. Stoffregen (In re Stoffregen)***, 206 B.R. 939, 942 (Bankr. E.D. Wis. 1997) (Where the debtor owned only bare legal title to the property, a transfer of the property could not be recovered under 11 U.S.C. § 548.).

Pointing to the in-depth discussion of ownership found in the D.C. Court's Homestead Opinion, this Court offered the parties an opportunity to present arguments as to whether the D.C. Court already decided the issue of ownership and bare legal title. And if so, whether the D.C. Court's Homestead Opinion is entitled to preclusive or collateral effect in this proceeding. First, a review of the Homestead Opinion is required.

### A. D.C. Court's Homestead Exemption Opinion

In deciding that Max Salas was entitled to the District of Columbia homestead exemption, the D.C. Court reviewed the attempted transfer of the property from Len Salas to a "1610 Riggs Property Trust" in 2010. In doing so, the D.C. Court determined that the trust never existed and was a nullity *ab initio*. **In re Salas**, 2018 WL 4621930, *18. The D.C. Court then considered the impact of the invalid trust on the conveyance of the property. The D.C. Court held that although the trust was invalid, a resulting trust was not created because valuable consideration was given. *Id.* at *19. As such, the D.C. Court

8

held that legal and beneficial rights were conveyed to Max Salas, the intended beneficiary of the conveyance. *Id*. Finally, the D.C. Court addressed the impact of the transfer never being recorded:

> [T]here is the issue that Max failed to record the *Quitclaim Deed*. This, however, does not invalidate the transfer. A deed conveying property will be valid, even if that deed is never recorded as required by D.C. Code § 42-401, because that section "deals with acknowledgment, certification, and recordation as protections for 'creditors and subsequent bona fide purchasers,' . . . [t]hose requirements do not bar the operation of a signed, sealed, and delivered deed against parties and their assignees."

*Id.* at *20. Accordingly, the D.C. Court determined "that under District of Columbia law, the Property was conveyed to Max, and he holds both the legal and beneficial interests in the Property." *Id.*

### B. Application of Collateral Estoppel

Pursuant to D.C. law, the doctrine of collateral estoppel, also known as issue preclusion, "'renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.'" *In re Salas*, 2018 WL 4621930, *11 (quoting *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995)). Stated differently, if there has been prior litigation, issue preclusion applies if "(1) [it involves] the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits,

(4) by a court of competent jurisdiction." *Peek v. SunTrust Bank, Inc.*, 313 F. Supp. 3d 201, 205 (D.D.C. 2018) (citation omitted).

"'[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Therefore, the Court must consider whether the issue in question is identical to what was litigated in the D.C. Court. *Merle v. U.S.*, 683 A.2d 755, 762 (D.C. 1996).

The issue of ownership interest was at the heart of the D.C. Court's decision to allow Max Salas to claim a homestead exemption, as it is in the present litigation with regards to the fraudulent conveyance claims. The D.C. Court determined Max Salas held both legal and beneficial rights to the Property despite Len Salas being the titled owner. Moreover, a determination of ownership was essential to the D.C. Court's decision that Max Salas was entitled to claim the homestead exemption. Specifically, if the D.C. Court had found that Len Salas was the actual owner, Max Salas would not have been entitled to claim the homestead exemption. In the present case, this Court has determined that the Property is only recoverable by the estate if Len Salas, the debtor in this case, held something more than bare legal title, making ownership an essential consideration. As such, the Court finds the first requirement of issue preclusion has been met.

The second requirement for issue preclusion is also met, as the prior decision is a valid, final judgment on the merits. The D.C. Court held an evidentiary hearing and entered a lengthy memorandum decision on the homestead exemption issue, and the judgment is final.[6]

The third requirement for issue preclusion is more complex. Once the first two requirements are met, the issue becomes whether the plaintiffs had "'a fair opportunity procedurally, substantively and evidentially to pursue [the] claim the first time.'" ***Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.***, 402 U.S. 313, 333 (1971) (citation omitted). In the D.C. Court, the plaintiffs represented themselves, whereas in this adversary proceeding, the plaintiffs have stepped into the shoes of the Trustee. However, that does not end the discussion as the question of privity must be decided.

"The term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit." ***Gill and Duffus Servs., Inc. v. A.M. Nural Islam***, 675 F.2d 404, 405 (D.C. Cir. 1982). As such, "'[a] privy is one [who is] so identified in interest with a party to the former litigation that he or she represents precisely

---

[6] The plaintiffs' appeal of the Homestead Opinion to the D.C. District Court was dismissed and remanded. ***Brekelmans v. Salas (In re Salas)***, No. 18-cv-2318, 2020 WL 32567 (D.D.C. Jan. 2, 2020). The plaintiffs then filed a motion for reconsideration in the D.C. Bankruptcy Court based on newly discovered evidence. This motion was denied, ***In re Salas***, No. 18-00260, 2020 WL 6054783 (Bankr. D.C. Oct. 13, 2020), and the D.C. District Court affirmed. ***Brekelmans v. Salas (In re Salas)***, No. 20-3091, 2022 WL 1154596 (D.D.C. April 19, 2022).

11

the same legal right in respect to the subject matter of the case.'" ***Herrion v. Children's Hosp. Nat'l Med. Ctr.***, 786 F. Supp. 2d 359, 371 (D.D.C. 2011) (quoting ***Smith v. Jenkins***, 562 A.2d 610, 615 (D.C. 1989)). ***See also EDCare Mgmt., Inc. v. DeLisi***, 50 A.3d 448, 451 (D.C. 2012) (citation omitted).

The plaintiffs submitted the case of ***Kind Operations, Inc. v. Cadence Bank, N.A. f/k/a ALoStar Capital Fin. (In re PA Co-Man, Inc.)***, 644 B.R. 553 (Bankr. W.D. Pa. 2022), in support of their argument. As noted in ***Kind Operations***, normally a trustee or creditor acting as successor-in-interest to the trustee's interests is not bound by a state court judgment where the same creditor was acting in its individual capacity. ***Id.*** at 637. In that case, the creditor, acting as the trustee's assignee, pursued a myriad of civil actions against multiple defendants based on a private foreclosure sale of substantially all the debtor's assets prior to the debtor filing for bankruptcy protection. ***Id.*** at 567-568. As a result of the pre-petition sale, the debtor and its other creditors were essentially left with nothing. ***Id.*** Two of the defendants raised issues of res judicata and collateral estoppel, asserting that certain claims were barred because the creditor was also the plaintiff in state litigation pursued against them. ***Id.*** at 637. The court held that no privity existed because in the state court litigation, the creditor was representing its own self-interest. Whereas, in the bankruptcy adversary proceeding, the creditor was acting on behalf of the estate. ***Id.***[7]

---

[7] Additionally, the ***Kind Operations*** court noted that the state court actions were void because they were filed post-petition in violation of the automatic stay. ***Id.*** (citations omitted).

12

Unlike in *Kind Operations*, this case presents a unique set of circumstances. Here, the plaintiffs represent 99.8% of all allowed unsecured claims of the estate, making the estate's interests in this adversary virtually identical to the plaintiffs' interests in the D.C. litigation. Moreover, the plaintiffs, represented by the same attorney, fully and zealously litigated the issue of ownership in the D.C. Court. Thus, a finding of issue preclusion in this instance would not work some unfairness as "the losing party clearly [did not] lack[ ] any incentive to litigate the point" at issue in the earlier case. *Canonsburg Gen. Hosp. v. Sebelius*, 989 F. Supp. 2d 8, 19 (D.D.C. 2013) (citations omitted). Like the litigation now, the plaintiffs had every incentive to forcefully litigate the ownership issue as part of their objection to Max Salas' homestead exemption. If the plaintiffs had won on the issue of ownership in the D.C. bankruptcy litigation, Max Salas would not have been able to claim his homestead exemption. As a result, Len Salas would have been the owner of the Property, and that Property would have been part of his estate.

Moreover, there is no reason to believe the proceedings in the D.C. Court were defective. *Martin v. Dep't of Justice*, 488 F.3d 446, 455 (D.C. Cir. 2007) (quoting *Blonder-Tongue Labs., Inc.*, 402 U.S. at 333) (Courts evaluating the fairness of preclusion also consider whether the "'prior proceedings were seriously defective.'"). As stated earlier, the matter was rigorously litigated and affirmed on appeal.

For these reasons, the Court finds that the plaintiffs, acting on behalf of the Trustee, are collaterally estopped from relitigating the issue of ownership or bare legal title. But

13

even if collateral estoppel did not apply, the undisputed material facts support the same conclusion. Len Salas only lived at the Property for a brief time during which he paid rent to Max Salas. Len Salas never made any mortgage payments, paid any insurance premiums, or paid any property taxes. In fact, Len Salas never considered himself the owner of the property. While there are multiple discrepancies and contradictions throughout the voluminous record in this case, there is no dispute that Len Salas signed the mortgage and had his name on the title for the sole purpose of helping Max Salas keep his home. The same is true for Max Salas. The undisputed facts show Max Salas had multiple conversations with family and professionals regarding how to get Len Salas' name off the title and mortgage. He even had his other son generate documents to remove Len Salas' name from the Property. Max Salas' inability (or unwillingness) to take the necessary steps to remove Len Salas from the mortgage and title is the only reason Len Salas' name remained on the title. And based on the caselaw discussed above, the Court finds as a matter of law that Len Salas only holds bare legal title.

For all of these reasons, the Court finds that Max Salas is entitled to summary judgment on the fraudulent conveyance claims brought pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B).[8]

---

[8] Neither party sought summary judgment relief on the plaintiffs' claim of actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A) and rightfully so. The existence of fraudulent intent is a question of fact, so summary judgment is rarely an appropriate remedy. **Renneker v. Wyman (In re Wyman)**, 626 B.R. 480, 499–500 (Bankr. S.D. Ohio 2021) (citations omitted).

## IV. 11 U.S.C. § 550

Count VI of the plaintiffs' amended complaint seeks relief pursuant to 11 U.S.C. § 550. Section 550(a) does not give rise to any affirmative relief on its own. Instead, it sets forth the available remedies if a transfer is avoided pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), or 724(a). ***See Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)***, 340 B.R. 829, 837-38 (Bankr. E.D. Mich. 2006). Because the Court finds that summary judgment should be denied as to the plaintiffs' strong-arm claims, summary judgment on Count VI is not appropriate at this time.

## V. Conclusion

Based on the Court's findings, neither side is entitled to summary judgment on Count I, II, and VI of the plaintiffs' amended complaint,[9] and Max Salas is entitled to summary judgment on Counts IV and V.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

---

[9] Count III of the plaintiffs' amended complaint requests relief pursuant to 11 U.S.C. § 544(a)(2), which provides that a trustee has the rights and powers of a hypothetical "creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time." The plaintiffs did not seek summary judgment on Count III in either their original motion or their supplemental brief. However, Max Salas has asserted that he is entitled to summary judgment on this claim based on inquiry notice. In making this argument, Max Salas provided no case law specifically addressing notice as it relates to 11 U.S.C. § 544(a)(2), nor was this Court able to find any. Accordingly, to the extent Max Salas is seeking summary judgment on Claim III of the amended complaint, the motion is denied.

15

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:20-ap-90027    Doc 101    Filed 05/24/23    Entered 05/24/23 07:42:53    Desc Main
Document    Page 15 of 15