IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville

| In re: | : | |
| --- | --- | --- |
| | | CHAPTER 11 |
| LEN SALAS | : | CASE No. 18-02662 |
| | | JUDGE: HARRISON |
| Debtor | : | |

| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, | : | |
| --- | --- | --- |
| CO-PERSONAL REPRESENTATIVES | : | |
| OF THE ESTATE OF NINA | | |
| BREKELMANS, et al | : | |
| Plaintiffs | : | |
| v. | : | Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS | : | |
| Defendant | : | |

PLAINTIFFS' MOTION TO ALTER OR AMEND UNDER FED. R. BANKR. P. 9023

COME NOW the Plaintiffs herein, by and through their undersigned counsel and move this Court to reconsider its Order denying summary judgment on Counts I and II of their Amended Complaint and granting the Defendant's Motion for Summary Judgment on Counts IV and V of the Plaintiffs' Amended Complaint and in support of their Motion submit the following Memorandum of Points and Authorities:

**Introduction and Background**

1. On May 24, 2023 this Court entered an Order Denying all Summary Judgment

requests related to Counts I through III of the Plaintiffs' Complaint[1] and granting the Defendant's Summary Judgment request as to Counts IV and V of the Complaint "the Summary Judgment Decision"). The Court's Summary Judgment Decision is based upon the Court's Memorandum also dated May 24, 2023 ("the Summary Judgment Memorandum") and followed the filing of Memoranda by both parties on the Plaintiffs Motion for Summary Judgment, the Defendant's Objections and Opposition to the Plaintiffs' Motion, and a hearing on November 8, 2022, at which time the Court declined to grant Plaintiffs' Motion.

2. On January 5, 2023, this Court entered an Order seeking additional briefing from the parties on two distinct issues, namely (paraphrasing): (1) whether the Defendant's actual residence at the subject property in D.C. ("the Property") was sufficient to put a purchaser, or lien creditor on notice that the Defendant was the actual owner of the Property thus establishing inquiry notice that could defeat the Trustee's status as a "bona fide purchaser" and "judgment lien creditor"; and (2) whether the Plaintiffs were precluded from pursuing the Trustee's causes of action based upon the ruling of Judge Teel in the Defendant's D.C. bankruptcy proceeding on the basis of collateral estoppel or issue preclusion.

3. The Defendant filed a Motion for Summary in Reply to the Court's January 5th Order and Plaintiffs filed their Supplemental Memorandum in further support of their previous Motion for Summary Judgment, both filed on February 21, 2023. On March 21, 2023 the Court held a hearing and heard abbreviated argument from counsel for the parties. At the Court's suggestion, the Plaintiffs filed their Second Supplemental Memorandum in support of the Plaintiffs' 16 for

---

[1] All references to the "Complaint" refer to the Amended Complaint filed herein on February 16, 2021 (D-40).

Summary Judgment on March 26, 2023. The Court issued its Summary Judgment Memorandum and Summary Judgement Decision on May 24, 2023.

4. In its Summary Judgment Memorandum, this Court determined that summary judgment is not appropriate for Counts I through III (and VI) of the Complaint but determined that issue preclusion did apply to Counts IV and V and, therefore, granted the Defendant's Motion for Summary Judgment on those Counts to the Defendant.

5. While it is obvious the Court has spent a great deal of time considering the facts, background and arguments of the parties, the Plaintiffs, nevertheless, respectfully assert that the Court's decision is in error on several important points which the Plaintiffs believe should result in the grant of summary judgment in their favor on all Counts of the Complaint. The Plaintiffs assert, alternatively, at a minimum, the Court should reconsider and reverse its grant of summary judgment to the Defendant on Counts IV and V of the Complaint.

6. The Plaintiffs also assert that their Motion should be granted, in the sound discretion of this Court, in order to avoid manifest injustice and the possibility of two trials in the event the Court's interim ruling granting Summary Judgment on Counts IV and V of the Plaintiffs' Complaint is reversed and remanded on appeal.

**Argument**

7. The Plaintiffs respectfully submit that the Court did not consider, or did not properly consider, the following;

    a. the Plaintiffs purchased the Trustee's causes of action at a court ordered auction in which the Defendant also participated. Order in Case No. 3:18-bk-02662, June 12, 2019, D-179, Trustee's Notice of Rescheduled Auction, Case No. 3:18-bk-02662, July 16, 2019,

D-187; See Trustee's Report of Sale in Case No. 3:18-bk-02662, August 14, 2019, D-191, to which the Trustee attached a document titled "Sale of Estate Property Free and Clear of Liens and Interests" which document confirmed the purchase by the Plaintiffs at the auction sale held on July 23, 2019 and reported to the Court in open Court on July 23, 2019; and

  b. This Court failed to consider in its decision that the Plaintiffs did not originally seek to pursue the Trustee's claims. It was only after the Trustee filed a Motion in this court attempting to sell his causes of action to the Defendant (through his son, Ron) that the Plaintiffs objected. This court ruled that the Trustee should hold an auction sale if any party offered the trustee more than the original offer by Ron Salas. The Plaintiffs made a qualifying, competing offer and the Trustee held an auction sale, pursuant to this Court's ruling, at which both the Defendant and the Plaintiffs had the opportunity to bid. Both did bid and the Plaintiffs were ultimately the successful bidders. The Plaintiffs represent two distinct claims against the Estate, in different amounts. The only similarities concerning the Plaintiffs' claims are that both children were killed in the same fire, both at the Property, and their two, different, wrongful death, cases, although filed separately, were consolidated by the D.C. Superior Court. See Amended Complaint, paragraph 12. See also Amended Complaint paragraphs 11 through 13.

  c. At the hearing on the Plaintiffs Objections to the Trustee's Motion to Sell the Trustee's causes of action to the Defendant (through his son, Ron), the Defendant's attorney, Phillip Young represented to this Court that the Defendant's purpose in offering to purchase the Trustee's causes of action was to prevent the Trustee from pursuing any such causes (to the potential detriment of all creditors, including the Plaintiffs); and

  d. Neither the Court, nor the Defendant produced any cases which deviate from

the well established and uniformly accepted maxim that the Trustee and the Debtor's Estate are the real parties in interest regarding the Trustee's causes of action and, therefore, in order for issue preclusion to apply, collateral estoppel, or *res judicata* must apply, in all respects, to the Trustee, or the Debtor's Estate. Neither the Trustee, nor the Debtor's Estate were parties to the D.C. Bankruptcy's Exemption Decision. Moreover, it is clear from Judge Teel's ruling, upon which this Court relied that the D.C. bankruptcy court considered the facts related to the Defendant's alleged "ownership" of the Property **only in the context of the Exemption Decision** and specifically **declined to determine the status of this Debtor's Estates potential avoidance and recovery claims.**

e. In the Court's Summary Judgment Memorandum, the Court also failed to address the unrefuted fact that the Debtor and the Defendant were aware, as of at least June, 2011, that the Deed upon which they relied and which they both submitted to the D.C. Bankruptcy Court, was actually abandoned and not in existence, at any time. The actions of the Debtor and the Defendant, along with the Defendant's son, Ron, represent a scheme to defraud the creditors of this estate from recovering the Property which will provide the Plaintiffs some relief for the tragic loss of their children and at least a small recovery to provide them some sense of justice. Regardless, there is credible, consistent and unrefuted evidence that the Defendant and the Debtor sought to defraud creditors of this estate from recovering the Property, or its equity, in partial satisfaction of their claims. At a minimum, the unrefuted facts asserted by the Plaintiffs in their Motion and supporting Memoranda are more than sufficient to require a trial on the issue of actual fraud, another issue that was neither briefed, argued, presented, or decided in the D.C. Bankruptcy Case.

f. The Plaintiffs paid over $150,000 into the estate for the ability to pursue the causes of action which the Court now states they cannot pursue. The Court had Judge Teel's decision early in this case, including prior to the appointment of Mr. Gigandet as Trustee and, therefore, well prior to the auction sale which resulted in the Plaintiffs purchase, **from the estate** of the Trustee's causes of action. **See,** for example, the Debtor's Disclosure Statement, filed in the Debtor's bankruptcy Case No. 02662, on November 9, 2018, D-83, at pp. 3-6, in which the Debtor set forth his arguments why these present causes were not viable:

> As discussed further herein, and as will be further analyzed in a response to the Motion to Convert, Dismiss or Appoint Trustee, the Debtor's position is that a trustee (as well as the Debtor in the capacity of Debtor-in-Possession with the rights and powers of a trustee) would be unsuccessful in avoiding such a transfer due to applicable law, and **the surrounding facts that have previously been litigated and decided in the DC Bankruptcy Case.**

*Id.*, at p. 4 (emphasis added). The argument continued for another two pages. *Id.*

g. The Court also did not grant summary judgment on Counts I, II and II ofd the Complaint asserting that there were competing facts in dispute and that summary judgment was not appropriate. However, in its Summary Judgment Memorandum, the Court appears to have not considered the case law precedent that establishes that when an owner deeds his property to another but remains in possession, his deed represents "notice to the world" that he is no longer the owner. See discussion in Plaintiffs' Supplemental Memorandum, filed herein on February, 21, 2023, D-92, Section E, generally, and pp. 36-37, ¶¶ 85 -87 in particular. The Plaintiffs assert that the case law discussed in Section E and particularly the *McKinley* case cited and discussed in paragraphs 86 and 87, along with the supporting cases cited in *McKinley*[2] require granting

---

[2] One of the cases cited by *McKinley* is the Maryland Court of Appeals (now Maryland Supreme Court) case of *Wicklein v. Kidd*, 149 Md. 412, 131 A. 780. The common law of the

Summary Judgment to the Plaintiffs on Counts I and II of their Complaint based upon the following undisputed facts:

  i. At all relevant times prior to approximately February, 2018, the Defendant hid his ownership of the Property (the Defendant produced no recorded or public record which showed the Defendant as the Owner. Even the leases he signed in 2014 and 2015 showed the landlord as the CLR Trust (Plaintiffs' Supplemental Memorandum, filed February 21, 2023 (D-92) ("Supplemental Memorandum"), Exh A (D-92-1); and

  ii. In 2016, during the period when the Defendant and the Debtor were being deposed in the D.C. Superior Court wrongful death case, the Defendant and the Debtor represented to Sun Trust, the holder of the deed of trust on the Property (in the Debtor's name), in a Loss Mitigation Statement, that the Debtor was the owner of the Property; See Plaintiffs' Supplemental Memorandum, February 21, 2023 ("Supplemental Memorandum"), Exh. F; and

  iii. All public notices regarding ownership of the Property were in the name of the Debtor, not the Defendant, until at least 2019 ( See, for example, Supplemental Memorandum, Exhs. G, H and I); and

  iv. Neither the Debtor nor the Defendant had possession of an original deed after January, 2012 (Plaintiffs' Amended List of Undisputed Facts, August 1, 2022, D-74-1, Nos. 8 through 13.);

  v. in June, 2011, less than a year after the purported execution of the July, 2010 Quitclaim Deed, Ron Salas, the Defendant's son and the Debtor's brother directed the

---

District of Columbia is based on the common law of Maryland at the time of cession unless modified by statute. See generally ***O'Connor v. United States***, 399 A.2d 21, 25 (D.C. 1979). ***Estate of Keough v. Keough***, 2019 D.C. Super. LEXIS 20, *27

Debtor and the Defendant to prepare a deed to convey the Property to the trust Ron created in July, 2010 (Amended Memorandum in Support of the Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Memorandum"), Exh G; and

    vi. No deed was created or signed by Len after July, 2010.

  h. The Defendant's Plan of Reorganization establishes that the Plaintiffs have the right to pursue the trustee's causes of action. The only restriction contained in the Plan is to "defenses". There is no mention or contemplation of preclusion which the Plaintiff assert is not a defense contemplated in the Defendant's Plan. The Plaintiffs bargained for this language and withdrew their objections to the Defendant's plan in reliance on the Defendant's ability to only raise "defenses." See argument in Plaintiffs' Second Supplemental Memorandum, filed on March 36, 2023, D-100, at p. 5, ¶10.

**Legal Analysis**

 8. A Motion to reconsider is governed by Fed. R. Bankr. P. ("FRBP") 9023 which incorporates Fed. R. Civ. P. ("FRCP") 59. FRBP 9023 provides that a motion for reconsideration under FRCP 59 must be filed within 14 days of the entry of the subject judgment or order.

 9. FRCP 59 (a)(1)(B) provides that "The Court may, on motion, grant a new trial on all or some of the issues - and to any party - ... (B) after a non-jury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."

 10. In the case of ***Key Mech. Inc. v. BDC*** 56, LLC (In re: BDC 56, LLC), 330 F.3d 111 (2d cir. 2003) the Second Circuit stated that in order to grant a motion for reconsideration under FRCP 59(a) the movant must point to controlling decisions or data that the court overlooked. In

the Sixth Circuit, the grounds for determining whether to grant a motion to reconsider under Fed. R Civ. P. 59(e) are stated as follows:

> a motion to reconsider generally must be based on one of the grounds available for motions to alter or amend judgment or upon a showing that the court clearly overlooked material facts or controlling law that were presented by the movant in its prior motion and that would result in a different disposition. Id. The Court may grant a motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. **Id**. (citing **United States v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n**., 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017)). As indicated above, a motion to reconsider may be based on these four grounds, or upon essentially a fifth or sixth ground: (5) that the court clearly overlooked material facts (or, in the case of an order on a Rule 12(b) motion, factual allegations from the complaint) that were presented by the movant in its prior motion and that would result in a different disposition; or (6) that the court clearly overlooked controlling law that was presented by the movant in its prior motion and that would result in a different disposition.

Quoted in ***O'Connor v. Lampo Grp., LLC***, No. 3:20-cv-00628, 2021 U.S. Dist. LEXIS 204079, at *3-4 (M.D. Tenn. Oct. 22, 2021).

11. In the case of ***Al-Sadoon v. FISI*Madison Fin Corp.*** 188 F.Supp. 899, the District Court for the Middle District of Tennessee stated that:

> This court generally will consider motions for reconsideration pursuant to the grounds available for motions to alter or amend under Rule 59(e) or upon a showing that the court clearly overlooked material facts or controlling law that were presented by the party in its prior motion and that would result in a different disposition.

***Id.,*** at 902.

12. The decision whether to grant a motion for reconsideration, including an order disposing of some, but not all of the Plaintiffs' claims, as here, is a matter within the discretion of the trial judge. ***Tolbert v. Potter***, 206 F. App'x 416, 417 (6th Cir. 2006)

13. This District has recently emphasized that relief under Rule 59(e) is difficult and the

moving party is required to meet an exacting standard. In the case of ***Memphis A. Phillip Randolph Inst. v. Hargett,*** 485 F. Supp. 3d 1003, 1004 (M.D. Tenn. 2020), the Court stated:

> Generally, relief under Rule 59(e) is an "extraordinary remedy" restricted to those circumstances in which the moving party has set forth facts or law of a strongly convincing nature that indicate that the court's prior ruling should be reversed. ***Harris v. Perry***, No. 2:12-cv-02668-STA-dkv, 2016 U.S. Dist. LEXIS 131942, 2016 WL 5396701, at *3 (W.D. Tenn. Sept. 27, 2016). The Sixth Circuit has made clear that the standard for manifest injustice is "an exacting standard" and that a successful Rule 59(e) motion must "clearly establish a manifest error of law." ***Heithcock v. Tenn. Dept. of Children's Servs.***, No. 3:14-CV-2377, 2015 U.S. Dist. LEXIS 139751, 2015 WL 5970894, at *1 (M.D. Tenn. Oct. 14, 2015).

14. With all due respect to this Court's Memorandum and Order, the Plaintiffs assert that they clearly meet this District's standard for relief.

15. The Plaintiffs assert that the Court's Summary Judgment Decisions failed to consider the matters, facts and law, argued above, and the following, each of which, alone, is grounds for modification of a portion of the Court's ruling and together are sufficient grounds for granting summary judgment for the Plaintiffs on all Counts of the Complaint, or at least preserving all issues for trial:

    a. The Court did not address the assertion, supported by unrefuted emails between the Salas family members, that there was no deed in effect related to the property after 2010.

    b. The Court did not address, or gave little importance to, the unrefuted case law showing that the Trustee and the Debtor's Estate are different entities than the creditors in previous proceedings and that in derivative actions, such as this, the Trustee and the Debtor's Estate are the real parties in interest for purposes of issue preclusion.

    c. The Court is stating in its opinion that the size of the Plaintiffs' claims, not their derivative standing, compels judgment in favor of the Defendant. That is illogical and

defeats the whole purpose of derivative standing as cited in the Plaintiffs' Supplemental Memorandum, filed on February 21, 2023, D-92, particularly, Section C, ¶¶ 52 - 54, pp. 19-20. See also additional discussion and argument below.

      d. In this case, the Defendant sought to purchase the estate's claims against him, through his son, Ron, an attorney. The Plaintiffs did not seek to purchase the claims until the Trustee moved this court for permission to sell the estate's claims to Ron Salas, for his father, for the purpose of ***not pursuing the claims against Max.*** See Declaration of Philip McNutt attached hereto.

      e. The Court used the size of the Plaintiffs' claims as the deciding factor in determining that issue preclusion should apply. The Plaintiff has found no case law that supports that argument and the court also cited none. The status of the Trustee as the real party in interest is the sole determining factor which the court seems to have either not considered or given insufficient status and relevance. In the Plaintiffs' Second Supplemental Memorandum, D-100, the Plaintiffs set forth what they believe is the proper criteria:

> 11. Numerous bankruptcy courts, and appellate courts, have consistently ruled that, for all purposes, including issue preclusion, the real party in interest is "the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." ***See, for example, Farrell Constr. Co. v. Jefferson Parish, La.***, 896 F.2d 136, 140 (5th Cir. 1990).
>
> 12. This Court conclusively determined that the Plaintiffs met the 6th Circuit's "strict prerequisites for exercising derivative standing..." See, Memorandum Opinion, February 11, 2021 (D-38), at pp. 5-16. Thus, the Plaintiffs "stand in the shoes of the trustee" in the pending Complaint.
>
> 13. Derivative standing, like that in the instant case, is a suit brought in the name of the debtor, or the debtor's estate. The Plaintiff steps "into the shoes of the debtor or trustee." ***Gecker v. Marathon Fin. Ins. Co. (In re Auto. Prof'ls,***

> *Inc.)*, 389 B.R. 630, 634 (Bankr. N.D. Ill. 2008).
>
> ...
>
> 17. The court, in ***Modiri v. 1341 Rest. Grp., Inc.***, 904 A.2d 391, 394-97 (D.C. 2006), emphasized that "a privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." internal citation omitted. The legal rights asserted in the instant case are those solely belonging to the Trustee or the Debtor's Estate. The Trustee is not privy to the debtor or to the debtor's estate when pursuing recovery or avoidance actions. ***In re Worldcom, Inc.***, 401 B.R. 637, 651 (Bankr. SD.N.Y.). Because the Plaintiffs, as representatives of the Debtor's Estate, stand in the shoes of the Trustee, the real party in interest, and are not in privity with any party to the D.C. Exemption Decision, issue preclusion does not apply here.

Plaintiffs' Second Supplemental Memorandum, D-100, ¶¶ 1-13, pp. 6-7.

    f. In the Plaintiffs Supplemental Memorandum, D-92, ¶58, at p.22, the Plaintiffs concluded their argument on issue preclusion as follows:

> Finally, the family's consistent lies and misrepresentation [sic] regarding the status of the alleged 2010 transfer makes the Defendant ineligible for relief. Issue Preclusion, unlike Res Judicata, is subject to "equitable considerations."
> ***American Forest Res. Council v. Shea***, 172F.Supp.2d 24, 30 (D.C.D.C. 2001).

    Under well established precedent, the consistent and continuing bad acts, misrepresentations and outright fabrications to both this Court and the D.C. Bankruptcy Court do not entitle the Defendant to any relief under the issue preclusion theory or any other theory since the Bankruptcy Court is a court of equity.

    g. The Court failed to consider the substantial fact pattern after 2010 and, particularly after the commencement of the Superior Court Wrongful Death action, all carefully documented and set forth, in chronological detail in the Plaintiffs' supporting Memorandum and Statements of Uncontested Facts. This fact pattern clearly shows fraudulent and deceitful

behavior by the Defendant and the Debtor which should bar relief on all issues, but, as argued herein, particularly on the issue of issue preclusion.

h. The Court uses the size of the Plaintiffs' claims against them as if the size of the judgment awarded in a jury trial should be held against the Plaintiffs. However, the Court did not consider the fact that the reason the Debtor and the Defendant filed for bankruptcy protection was solely related to the Plaintiffs' Judgments. To then limit the Plaintiffs remedies, clearly available under well established bankruptcy law and precedent, provides an unfair advantage to debtors like the Debtor and Defendant here, an advantage not set forth any where in the Bankruptcy Code and clearly inequitable to the Plaintiffs, in their status as representatives of the Estate. The Debtor and the Defendant filed bankruptcy and should not be able to manipulate the bankruptcy process to the detriment of the Plaintiffs, the legitimate purchasers of the Trustee's claims as a result of an auction independently ordered by this Court and held without undue influence or any inequitable or improper acts by the Plaintiffs.

i. The court failed to grant summary judgment on the issue of inquiry notice even though the case law makes it clear under the undisputed facts of this case that the transfer of the deed to his property from the Defendant to the Debtor eliminates the need for any further inquiry. *See* discussion in the Plaintiffs' Supplemental Memorandum, filed on February 21, 2023, D-92, at ¶¶ 85-87, pp. 36-37. Thus, by following the case law the matter of inquiry notice should have been decided in favor of the Plaintiffs.

j. In its Summary Judgment Memorandum, the Court determined that the size of the Plaintiffs' claims changed their derivative status. Neither the Defendant nor the Court cited any case law to support that position. The Court did cite one case, ***Canonsburg Gen. Hosp. v.***

***Sebelius***, 989 F.Supp.2d 8, 19 (D.D.C. 2013 for the proposition that "issue preclusion in this instance would not work some unfairness as "the losing party clearly [did not] lack [] any incentive to litigate the point"... Memorandum Opinion at p. 13.  However, that analysis seems to ignore three important points.  The first is that consideration of "unfairness" is only one of the criteria upon which issue preclusion is determined.  In this case the other criteria related to the previously litigated issues and the privity of the parties simply do not exist. The second is that the Plaintiffs did not, and could not, litigate the issue of the Trustee's avoidance and recovery powers because they were neither the trustee nor his representative nor standing in the shoes of the Trustee at the time.  The third important distinction is that although the issue in the D.C. Bankruptcy Court was whether the Defendant had a sufficient interest in the Property to grant an exemption, that interest, however determined by the D.C. Bankruptcy Court, did not preclude the ability of this bankruptcy estate to pursue avoidance or recovery actions, as Judge Teel specifically stated several times in the Exemption hearing and in his 56 page Memorandum.  In fact, at the hearing in the Defendant's D.C. bankruptcy case in August, 2018, Judge Teel stated: "It seems to me it's Len Salas' Chapter 7 Trustee who is going to have an incentive to avoid the transfers invoking Section 544." See Exemption Hearing Transcript, Vol 1, August 22, 2018, pp. 24-26 ("August 22 Excerpt"), attached as Exhibit 1 to the Plaintiffs' Second Supplemental Memorandum, at 24: 20-22.  Also See discussion in the Plaintiffs' Second Supplemental Memorandum, D-100, at Section C which provided several references to statements findings and conclusions stated on the record by Judge Teel.

      The Plaintiffs respectfully assert that the only fair reading of those sections is that Judge Teel did not intend to, and did not, in his decision, assert or imply any preclusive effect of

his decision on the Trustee's claims in this Debtor's Estate. See also discussion in the Plaintiffs' Second Supplemental Memorandum, at ¶¶ 6 through 9. If the Plaintiffs are correct, then they also assert, respectfully, that this Court has read something into Judge Teel's decision which is simply not there. Judge Teel made it clear that all claims of the Estate of Len Salas were beyond the scope of the Exemption Hearing and were never a part of the hearing or the D.C. Bankrupcty Court's determination.

Furthermore, the *Canonsburg* case bears little resemblance to the facts or circumstances of the instant case. First, *Canonsburg* involves a hospital's claim under the Administrative Procedures Act ("APA") against an agency of the U.S. Government. Second, the prior decision which was the basis of the issue preclusion in the case was based upon the same, exact claim, fully adjudicated between the exact same parties in another U.S. District Court. The only difference between the first case and *Canonsburg* was the location of the Courthouse. There is no issue of derivative standing in *Canonsburg* and the Plaintiff sought the same relief under the same statute in both cases. Here the Plaintiff is pursuing solely derivative claims specifically excluded from the prior proceeding, under a totally different statute and on behalf of the Debtor's Estate.

k. The Court approved the Trustee's report of sale and the Plaintiffs then became the successful joint bidders. If the Court's theory in granting summary judgment were to play out under the facts of this case then it would have been just as improper for the Defendant to buy the Trustee's claims as the Court now asserts, after the fact, that it was improper for the Plaintiffs to purchase the Trustee's claims. The Court also failed to consider the fact that the Plaintiffs represent two claims, not just a single claim. The Court seems to be punishing the Plaintiffs for

jointly pursuing these claims. What if only one of them were doing so? Should that make a difference? And suppose that there were dozens of creditors, each individually representing substantial, but not substantially all of the, claims against the estate. Should the fact the entire group, or the substantial majority of the claims of creditors purchased the estate's claims make a difference? Clearly Not. However, the Court's ruling stands for the untenable proposition that if a vast majority of creditors seek to acquire the estate's claims, they should be denied. That result is simply incongruous with the intent of the bankruptcy code and the Court should modify its prior Order as a result.

16. The Plaintiffs respectfully assert that they have identified several, material and undisputed, facts which were not adequately considered by the Court which are sufficient grounds for modification of the Court's Summary Judgment Order. Those facts bear directly on the Court's ruling related to issue preclusion and the issue of inquiry notice.

17. At a minimum there are both facts in dispute and lack of precedent for the Court's ruling which the Plaintiffs respectfully argue should require a trial on all issues, if not the grant of summary judgment in favor of the Plaintiffs.

**Conclusion**

For the reasons stated herein, and those argued in the Plaintiffs' Motion for Summary Judgment, and supporting Memoranda, the attached exhibits and the voluminous number of undisputed facts set forth in the Plaintiffs' Motion and Opposition (to the Defendant's Motion), the Plaintiffs assert that the Court should grant their motion to alter or amend, either granting the Plaintiffs' motion for summary judgment in its entirety or reversing the Court's grant of Summary Judgment to the Defendant and set all matters for trial. The Plaintiffs further request

any other or additional relief which is consistent with the foregoing.

>Respectfully submitted,
>
>BURCH, PORTER & JOHNSON, PLLC
>
>By: /s/ Taylor A. Cates
>130 North Court Avenue
>Memphis, TN 38103
>901-524-5165
>901-524-5000 (fax)
>Tacates@bpjlaw.com
>
>LAW OFFICE OF PHILIP J. McNUTT, PLLC
>
>By:  /s/ Philip J. McNutt
> Philip J. McNutt
>11921 Freedom Drive, Ste 584
>Reston, VA 20190
>703-904-4380
> 202-379-9217 (fax)
>Pmcnutt@mcnuttlawllc.com
>
>COUNSEL FOR THE PLAINTIFFS

<u>Certificate of Service</u>

I HEREBY CERTIFY THAT a copy of the foregoing Motion, was delivered electronically, on the 7th day of June, 2023 through the Court's ecf noticing system to the following:

>THOMPSON BURTON PLLC
>Phillip Young
>One Franklin Park
>6100 Tower Circle, Ste 200
>Franklin, TN 37067
>615-465-6008
>615-807-3048 (fax)
>phillip@thompsonburton.com
>
>
> /s/ Philip J McNutt

Philip J. McNutt