IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville, Tennessee

| | |
|---|---|
| In re: | : |
| LEN SALAS | : Case No. 18-2662-MFH |
| Debtor | : |

| | |
|---|---|
| NICOLAAS BREKELMANS AND GAIL GREGORY BREKELMANS, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF NINA BREKELMANS, et al | : : : |
| Plaintiffs-Appellants | : |
| v. | : Adversary Proceeding No. 3:20-ap-90027 |
| MAX SALAS | : |
| Defendant-Appellee | : |

MOTION OF PLAINTIFFS-APPELLANTS FOR LEAVE TO FILE
INTERLOCUTORY APPEAL FROM THE BANKRUPTCY COURT'S
ORDERS DENYING THE PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT, GRANTING, IN PART, THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING
THE PLAINTIFFS' MOTION TO ALTER OR AMEND THE BANKRUPTCY
COURT'S ORDER GRANTING AND DENYING SUMMARY JUDGMENT

COME NOW the Plaintiffs and Appellants herein, by and through their counsel of record

and Move for leave to file their Appeal from the Bankruptcy Court's Orders Denying the

Plaintiffs' Motion for Summary Judgment, Granting, in part, the Defendant's Motion for

Summary Judgment, and Denying the Plaintiffs' Motion to Alter or Amend the Bankruptcy

Court's Order Granting and Denying the parties' Motions for Summary Judgment and, in support

thereof, state as follows:

All references to docket entries ("D-__") shall refer to docket entries in the adversary proceeding captioned above. References to docket entries in the Debtor's Chapter 7 Case will be referred to as "Bankr. D-__".

**Background of the Case and Undisputed Facts**

This case essentially involves the question whether or not the Plaintiffs, standing in the shoes of the Chapter 7 Trustee of the Debtor, Len Salas, and representing the Debtor's Estate in a derivative proceeding, may avoid or recover the Debtor's alleged transfer, to the Defendant, of valuable property in the District of Columbia. The Debtor's estate seeks to avoid the alleged transfer under the Trustee's avoidance powers set forth in 11 U.S.C. § 544 (a) or, alternatively, as a fraudulent conveyance under 11 U.S.C. § 548 (a) and applicable state (D.C.) law.

The subject of the Plaintiffs' Complaint is the Defendant's alleged interest in a valuable, single-family residence (converted to a rental property) located at 1612 Riggs Place, NW, Washington, DC. ("the Property"). The Property was conveyed by the Defendant to his son, the Debtor herein, in 2007, by an unrestricted Deed. In July, 2010, the Debtor, the Defendant and Ron Salas, the Defendant's son and brother of the Debtor, a recently licensed Colorado attorney at the time ("Ron"), attempted a transfer of the Property by Quitclaim Deed through a Colorado trust, designated the 1612 Riggs Property Trust. The trust was created in Colorado under Colorado law even though the sole trust asset was the Property (in D.C.).

In June, 2011 there were a series of email communications among, Ron, the Debtor, the Defendant, and the Defendant's attorneys in the D.C. area, which clearly show that while the trust was registered (improperly) in Colorado in or about 2011, the Quitclaim Deed was no

2

longer in effect.  In those eMails, Ron instructed his father, the Defendant, to obtain a deed in

D.C. In the same time frame, through early 2012, there were a series of eMail communications

among the Debtor, Len, the Defendant, and the Defendant's D.C. counsel about getting the

Debtor's name off the title to the Property.  No other communications have been discovered and

the original Quitclaim Deed was lost, abandoned or destroyed in or about 2011.

       After 2011 neither the Defendant nor his sons are/were aware of the location of the

Quitclaim Deed and the Defendant did not attempt to find the Quitclaim Deed after 2011.

However, both the Debtor and the Defendant acknowledge that the Debtor continuously sought

to have his name taken off the Deed to the Property from 2011 through at early, 2015.  The

Defendant argued that the numerous communications between the Defendant and the Debtor

related to refinancing the Property and not to removing the Debtor from the Deed but the

wording of the communications is unequivocal that the Debtor was still on the Deed and wanted

to get off the Deed.  The Plaintiffs believe, and have asserted, that the reasons why the Debtor

was never removed from the Deed related to claims, or potential claims, against the Defendant

by the Internal Revenue Service ("the IRS"), and other taxing or regulatory authorities, or simply

to avoid taxes or other obligations related to his potential ownership of the Property.

       In June, 2015 a tragic fire, determined to be started through the negligence of the Debtor

and the Defendant, swept through the Property.  As a result of investigations by local authorities

and fire investigators, it was determined that the Debtor and the Defendant were illegally renting

out rooms at the Property without a proper license and in violation of the D.C. housing

construction and safety requirements for rental properties.  The lack of safety requirements was

determined to be the cause of the deaths of Nina Brekelmans and Michael Patrick McLoughlin,

the children of the Plaintiffs, respectively.

The Plaintiffs filed separate lawsuits, represented by different law firms, in the D.C. Superior Court in the fall, 2015. During discovery, in or about March, 2016, the Defendant caused his son to file a loan mitigation application with the first trust lender on the Property. The Debtor was the sole obligor under the first deed of trust note and represented himself to be the sole owner of the Property as late as March, 2016.

In late 2017 when it appeared likely that a substantial judgment was going to be entered against the Defendant, he sought local (D.C.) bankruptcy counsel. The Defendant contacted and retained Marc Jordan, a long standing bankruptcy attorney and trustee in D.C. As a result of conversations the Defendant had with his D.C. bankruptcy counsel, the Defendant attempted to resurrect the defunct, abandoned or lost, Quitclaim Deed on the understanding that the Defendant might be able to claim ownership of the Property by virtue of the Deed and use that ownership to claim D.C.'s generous (100% of equity) homestead exemption.

The Debtor used the lost Quitclaim Deed as the basis for seeking summary judgment in the Superior Court case, contending that, due to the Quitclaim Deed, he was not owner of the Property and, therefore, not liable for the wrongful death of Nina and Michael. The Superior Court rejected that contention and the cases went to trial (consolidated) against both the Debtor and the Defendant. In early April, 2018, judgments were entered against both the Debtor and the Defendant, in favor of Nina ($7.2 Million) and Michael ($7.5 Million). On April 18, 2018, the Debtor and the Defendant filed separate Chapter 11 bankruptcies in Tennessee and D.C., respectively.

In September, 2018, the D.C. Bankruptcy Court (Teel, J.) filed a 56 page Memorandum

and Order concluding that, while the Quitclaim Deed and Trust could not be used by the Defendant to claim an ownership interest in the Property, the result of the failed trust and Quitclaim Deed were sufficient to create an interest resulting trust to make the Defendant the owner and thus, entitled to the D.C. Homestead Exemption. In Judge Teel's Memorandum he specifically excluded any claims of the Tennessee bankruptcy estate to recover the property and during the evidentiary hearing on the Plaintiffs' Objections to the Defendant's claim of exemption, Judge Teel predicted that his decision would have no legal effect in an avoidance action in Tennessee which might well "overrule" a decision (to allow the exemption).

In December, 2018, the Debtor's case was converted to a case under Chapter 7 of the United States Bankruptcy Code and a Trustee was appointed. After the appointment of the Trustee, the Plaintiffs had discussions with the Trustee about pursuing claims for avoidance and recovery of the Property from the Debtor. However, after apparently discussing the case with the Defendant's counsel, the Trustee switched his position and attempted to sell the bankruptcy estate's claims to the Defendant (through his son, Ron). This court ordered an auction sale of the estate's claims and the Plaintiffs were the successful bidders in a lengthy auction between the Defendant and the Plaintiffs.

The above statements of background facts are supported by the Plaintiffs' Amended List of Undisputed Facts, supplemented by the Plaintiffs' Supplemental List of Undisputed Facts and the Defendant's response which almost unanimously agreed with the Plaintiffs' Amended List. D-74-1, D-79-1, and D-81, respectively

**Procedural Background**

1. The adversary proceeding which is the subject of this Motion was commenced by the

Plaintiffs on or about March 2, 2020.  After determination of two separate motions to dismiss by the Defendant, the Plaintiffs filed an Amended Complaint on February 16, 2021 (hereinafter referred to as "the Complaint").  (D-40)

2. The Plaintiffs'Complaint consists of six separate causes of action.  The first three causes of action are under the Trustee's avoidance powers pursuant to 11 U.S.C. § 544 (a).  The fourth cause of action is for avoidance of a fraudulent conveyance under 11 U.S.C. § 548 (a)(1). The fifth cause of action is also a fraudulent conveyance action, but pursuant to D.C. Code § 28-3104, *et seq*. The sixth cause of action is for recovery of an avoided transfer pursuant to 11 U.S.C. § 550. (D-40)

3.  After a substantial period of discovery, the Plaintiffs filed their Motion herein seeking summary judgment on all counts of their Complaint.  The Motion is dated July 29, 2022,  (D-73). The Defendant opposed the Motion and the court held a hearing on the Plaintiffs' Motion on November 8, 2022.  On November 8, 2022 the Bankruptcy Court denied the Plaintiffs' Motion (D-82).

4.  On January 5, 2023 the Bankruptcy Court issued an Order and scheduled a hearing on two issues that the court determined may be dispositive of the Complaint (D-83)("the January, 2023 Order").  The issues are summarized as follows:

a.  Did D.C. Bankruptcy Judge Teel's decision in August, 2018 on the Defendant's claim of a homestead exemption under D.C. law preclude these Plaintiffs from pursuing their claims in the captioned bankruptcy case of the Defendant's son, the Debtor herein?; and

b.  Did the Defendant's possession of the subject D.C. property constituted notice

of his ownership such that the "inquiry notice" to the Plaintiffs' would defeat the trustee's avoiding powers under 11 U.S.C. § 544 (a)?

5. In response to the January, 2023 Order, the Plaintiffs submitted a supplemental memorandum (D-92) and the Defendant filed a Motion for Summary Judgment (D-89) along with a Memorandum in support (D-91), along with a Response to the Plaintiffs' Supplemental Memorandum (D-94). The Plaintiffs' filed an Opposition to the Defendant's Motion (D-95).

6. The Bankruptcy Court held a hearing on the issues set forth in the Court's January 5, 2023 Order on March 21, 2023.

7. On May 24, 2023, the Bankruptcy Court filed its Opinion (D-101) and Order (D-102) denying the parties' motions for summary judgment on Counts I-III of the Complaint and partially granting the Defendant's Motion for Summary Judgment on Counts IV and V.[1]

8. The Plaintiffs filed a Motion to Alter or Amend the Bankruptcy Court's Order of May 24, 2023 (D-102) on the basis that the Bankruptcy Court failed to give proper consideration to the manner in which the Plaintiffs' acquired their right to pursue the estate's claims on behalf of the estate and standing in the shoes of the Trustee; and that the Court failed to give proper consideration to the D.C. case of *McKinley v. Crawford*, 58 F.2d 528 (D.C.App. 1932) and cases from approximately 15 other jurisdictions which either support *McKinley*, or proceeded *McKinley* with the same legal conclusion.

**Argument**

---

[1]In its Memorandum Opinion, the bankruptcy court noted (and reiterated at the hearing on August 15, 2023, 2023) that the court did not consider summary judgment on the actual fraud section of 11 U.S.C. § 548 (a)(1) since neither party requested summary judgment and the existence of actual fraud is a question of fact which generally precludes summary judgment. Memorandum Opinion, May 24, 2023 (D-101), at p. 14, n. 8.

9.  Interlocutory Appeals are governed by Fed. R. Bankr. P. ("FRBP") 8004 which states, in part, that the Motion seeking leave of court to file the Appeal must accompany the Notice of Appeal.  The Plaintiffs' Notice of Appeal is filed simultaneously herewith.

10.  FBRP 8004 (b) sets forth the necessary contents of a motion for leave to appeal pursuant to 28 U.S.C. § 158 (a)(3).  The Plaintiffs-Appellants are seeking leave to appeal to the 6th Circuit Bankruptcy Appellate Panel ("B.A.P.") established pursuant to 28 U.S.C. § 158 (b). The required contents include

      a.  the facts necessary to understand the question presented; and

      b.  the question itself; and

      c.  the relief sought; and

      d.  the reasons why leave to appeal should be granted; and

      e.  a copy of the interlocutory order or decree and any related opinion or memorandum.

Fed. R. Bankr. P. 8004 (b)(1).

11.  Appellate courts considering review of interlocutory decisions of bankruptcy courts have applied the standards set forth in 28 U.S.C. § 1292 (b) pursuant to which an appellant must show:

(1) the question involved is one of law; and (2) the question is controlling; and (3) there is substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation. ***Vitols v. Citizens Banking Co.***, 984 F.2d 168, 170 (6th Cir. 1993. ***See also, Cardwell v. Chesapeake & Ohio Ry. Co.***, 504 F.2d 444, 446 (6th Cir. 1974)  In accord, ***Wicheff***

*v. Baumgart (In re Wicheff)*, 215 B.R. 839, 844 (B.A.P. 6th Cir. 1998), **Smith v. U.S. Bank Nat'l Ass'n (In re Smith)**, 2019 Bankr. LEXIS 2845, 2019 WL 4271977 (6th Cir. B.A.P. 2019).

12. In **In re Trump**, 874 F.3d 948 (6th Cir. 2017), the Sixth Circuit granted a petition for leave to appeal an Order of the United States District Court partially denying the petitioners' motion to dismiss an action brought by protestors alleging incitement to riot under Kentucky law. The sixth Circuit granted Mr. Trump's petition to appeal the order partially denying petitioners' motion on the basis that the sufficiency of the Complaint is a question of law. *Id.*, at 951. **See also, *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.***, 270 F.3d 1018, 1025 (6th Cir. 2001) (granting petition to hear interlocutory appeal based upon denial of a motion to dismiss and partial motion for summary judgment).

13. The **Trump** Court further determined that the resolution of the question of the applicability of First Amendment rights "could materially affect the outcome of the case." **In re City of Memphis**, 293 F.3d 345, 351 (6th Cir. 2002). See also **In re Baker & Getty Fin. Servs., Inc.**, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992), citing **Arizona v. Ideal Basic Indus.**, 673 F.2d 1020, 1026 (9th Cir. 1981). In the instant case the resolutions of the questions presented could result in the grant of summary judgment in favor of the Plaintiffs and eliminate the necessity of a trial.

14. A substantial ground for difference of opinion exists "where reasonable jurists might disagree on an issue's resolution, nor merely where they have already disagreed " **Trump**, 874 F.3d at 952, quoting **Reese v. BP Exploration, Inc.**, 643 F.3d 681, 688 (9th Cir. 2011).

> Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.

*Id*.

15. Finally, granting this Motion "may materially advance the termination of the litigation" because, if the appellate panel finds that the Plaintiffs decided in favor of the Plaintiffs on either question raised, the litigation would end. ***Trump***, supra.

16. The questions asserted for review by the Plaintiffs are questions of law. The first relates to whether, as a matter of law, the inquiry notice question submitted by the court to the parties in the Bankruptcy Court's January 5, 2023 Order, is resolved by the body of case law, including controlling case law in the District of Columbia, which states that the Defendant's deed of the property to his son constitutes "notice to the world" that the Defendant is no longer the owner of the property despite his continued possession of the property after the deed to his son. ***McKinley v. Crawford***, 58 F.2d 528 (D.C.App. 1932). The Bankruptcy Court determined that the factual issues that the parties presented to the court prevented summary judgment. See, Memorandum Opinion, (D-101), at p. 7. However, the Defendant does not dispute that he delivered a deed to his son, without conditions, that transferred ownership to the son and the deed was never withdrawn, or modified. The Plaintiffs-Appellants contend that delivering that deed, in the District of Columbia, requires the conclusion that, as a matter of law, the son is the record owner of the Property and, therefore, under the "inquiry notice" question presented by the Bankruptcy Court, the Plaintiffs are entitled to judgment *as a matter of law*. ***See, McKinley, supra*** . ***See also Bloomer v. Henderson***, 8 Mich.398, 77 Am.Dec. 453; ***Van Keuren v. Central R. Co.***, 38 N.J. Law, 165; ***Strong v. Efficiency Apt. Corp.***, 159 Tenn. 337, 17 S.W.2d 1, 19 S.W.2d 273; ***Wicklein v.Kidd***, 149 Md. 412, 131 A. 780.

17. The Plaintiffs'-Appellants further contend that the court's attention to the matters

which it deems disputed by the parties, and, therefore, not subject to summary judgment are matters that relate solely to the issue of whether the Defendant's "possession" of the subject property was "open, notorious and unequivocal."[2] That issue of fact is irrelevant to whether, under **McKinley** and the numerous cases which support the **McKinley** decision, the Plaintiffs are not subject to "inquiry notice" related to the Defendant's possession of the subject property, **as a matter of law**. If found correct, the Plaintiffs' position should result in summary judgment.

18. Likewise, the court's determination that the Defendant is entitled to summary judgment on the claims for constructive fraudulent conveyance, are determinable, under undisputed facts, as a matter of law. The Plaintiffs contend that the Bankruptcy Court erroneously distinguished the **Kind Operations** case by finding that because the Plaintiffs represented almost all the unsecured claims of the estate, they were bound by Judge Teel's determination in the Defendant's D.C. bankruptcy case, namely, that the Defendant was the owner of the property (by virtue of an alleged, unrecorded deed dated July, 2010) and, therefore, the Plaintiffs could not assert their claims for constructive fraud against the Defendant. The Bankruptcy Court made its decision, even though, the court both acknowledged, and determined that the Plaintiffs were acting solely on behalf of the bankruptcy estate and were "standing in the shoes" of the Debtor's Trustee, in a derivative action.

19. The Bankruptcy Court cited no case similar to the facts of this case in support of its decision, but merely determined, based upon general legal theories not consistent with the facts

---

[2] Although the bankruptcy court deemed it inappropriate to determine the issue of the Defendant's "possession" as "open", "notorious" of "unequivocal" the Plaintiffs contend that the undisputed facts show that the Defendant's possession was hidden and discreet, and, therefore, the inquiry notice case law proffered by the Court still favored the Plaintiffs.

of this case, that the size of the Plaintiffs' estate claims alone made the Plaintiffs' subject to collateral estoppel. The Bankruptcy Court concluded that issue preclusion applied to the Plaintiffs because it "would not work some unfairness..." Memorandum Opinion, D-101, ap p.

20. The Court's determination necessitates the conclusion that issue preclusion applied because the Trustee in this bankruptcy case is somehow in privity with the Plaintiffs in the D.C. Bankruptcy Case (assuming the D.C. Bankruptcy Court's exemption decision has any affect on the Trustee's avoiding powers in this case, regardless of who brings that claim and on whose behalf). See Memorandum Opinion, (D-101), at p. 1. Then the Bankruptcy Court determined that because the Plaintiffs represent more than 99.9% of all unsecured claims that makes the Trustee and the estates' interest "virtually identical". That determination would chill the ability of any estate to get interested parties to pursue claims on behalf of the estate. In this case, for example, more than $46,800 of administrative claims, including the Trustee and the U.S. Trustee were paid from the auction bid by the Plaintiffs, in addition to a priority claim of the IRS totaling $5,025.53. Recovery pursuant to the Plaintiffs' Complaint would result in additional fees to the Chapter 7 Trustee and other professionals (i.e. Accountants) hired by the Trustee, as well as substantial payments to 6 unsecured creditors of which the Plaintiffs are just two. See, for example, Summary of Trustee's Final Report, February 3, 2020 (Bankr. D-210). The Bankruptcy Court has also ignored that if there is any recovery, that recovery will go directly into the Debtor's Estate and will benefit the Estate directly, as well as all remaining creditors, not just the Plaintiffs.

21. There is simply no rational basis for placing the derivative status of the Plaintiffs, the parties "standing in the shoes of the trustee," in a different category solely due to the size of their

claims. To decide otherwise would subject the Plaintiffs to disparate treatment in violation of the Fourteenth Amendment to the U.S. Constitution as well as penalize them for the size of their claims which is based solely on the harm caused them by the Debtor and the Defendant, something for which they should not be punished. ***See City of Cleburne v. Cleburne Living Ctr.,*** 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985), quoted and cited in ***Chambers v. Stengel***, 256 F.3d 397, 401 (6th Cir. 2001). Parties are deemed to be similarly situated only when they are "in all relevant purposes alike" or do not "differ in several material respects." ***Nordlinger v. Hahn***, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992); ***TriHealth, Inc. v. Bd. of Comm'rs***, 430 F.3d 783, 790 (6th Cir. 2005).

22. The Bankruptcy Court also incorrectly determined that the Debtor held only "bare legal title." However, a careful review of the case law on the issue shows that the Debtor held much more than "bare legal title." There was a clear intent to transfer title from the Defendant to the Debtor without restriction and without return of title to the Defendant at some point in time. And if, the Debtor held only "bare legal title" that could have been resolved any time between 2007 and 2018, but never was. The only clear inference is that the intent of the Defendant was that the Debtor retain and maintain actual title to the Property and not the "bare legal title" which Congress intended would not provide a sufficient basis for ownership for purposes of the Bankruptcy Code.

23. Equity also dictates reversal of the Bankruptcy Court's summary judgment order. The obvious reason for the comparative size of the Plaintiffs' claims, in addition to the horrendous damages and suffering by the Plaintiffs and their children, is that the sole reason why the Debtor and the Defendant filed bankruptcy was to avoid the Plaintiffs' claims, not to

discharge any other significant debt. The attempts of the Debtor and the Defendant to escape the just payments awarded to the Plaintiffs should not be rewarded by a dismissal of the Complaint through the means of a faulty claim of collateral estoppel.

24. The Plaintiffs also assert that the decision of the Bankruptcy Court is at odds, not only with uniformly established case law precedent, but also with the court's own decisions concerning the instant complaint being derivative of estate's claims and the trustee's status as the real party in interest, thus violating the doctrine of *stare decisis*.

> The doctrine of stare decisis holds that a court, in the absence of any intervening change in the law, is to abide by a principle of law laid down in a past decision to a present case having substantially the same facts. ***In re Vargas***, 342 B.R. 762, 764 (Bankr. N.D.Ohio 2006). The doctrine of stare decisis, however, is not absolute, allowing courts the flexibility to reexamine their past decisions. Yet, **deviation from a legal holding set forth in a prior decision is always the strong exception, not the norm**, given the doctrine's strong policy underpinnings: it promotes evenhandedness and predictability, thereby contributing to the actual and perceived integrity of the judicial process. ***Id.*** at 764-65, citing ***Payne v. Tennessee***, 501 U.S. 808, 827-28, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In this way, the Supreme Court has stated that before a court should part from a rule of law set down in a past decision, a "special justification" is needed. ***Patterson v. McLean Credit Union***, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) .

Cited in ***Irby v. Preferred Credit (In re Irby)***, 359 B.R. 859, 861 (Bankr. N.D. Ohio 2007)(emphasis added).

25. The court authorized the sale of the estate's claims to the Defendant for the purpose of avoiding the estate's ability to pursue those claims. See Trustee's Notice and Motion to Sell, April 10, 2019, (Bankr. D-162) and the Bankruptcy Court's Order granting the Trustee's Motion, June 12, 2019 (Bankr. D-179). In its latest orders, from which the Plaintiffs are seeking to appeal, the Bankruptcy Court has asserted that its previous orders do not apply to this case, whether the approval of the auction sale, or the conclusion that the Plaintiffs stand in the shoes of

the Trustee.

26.  The Bankruptcy Court's Orders are defective in many respects and should be reversed, granting summary judgment to the Plaintiffs' based, *inter alia*, on the following uncontested facts:

a.  In the D.C. Bankruptcy Court's decision, Judge Teel clearly stated that the issue of recovery or avoidance by this estate's trustee, were independent from his decision and therefore, could not be used as issue preclusion in the son's estate.

b.  The D.C. Bankruptcy Court (Teel, J.) even predicted that his decision granting the Defendant an exemption to the subject property, would be irrelevant upon appropriate action by the trustee of the son's estate.  That calculation is based in part on the undisputed fact that the Quitclaim Deed relied upon by the Bankruptcy Court was never recorded.  The "ownership" created by Judge Teel's decision in the D.C. Exemption matter was based upon an unrecorded deed.  If that deed had been recorded within the two years prior to the Debtor's bankruptcy, then the Bankruptcy Court's argument that the D.C. Court's finding of ownership would be conclusive.  However, the D.C. Court determined only that a transfer had occurred, a transfer that was not perfected prior to the Debtor's bankruptcy filing.  Therefore, the D.C. Bankruptcy Court's determination regarding ownership affected the Defendant's ownership of the Property **for purposes of exemption only** and did not, and was not intended to, affect the recovery or avoidance of that "ownership" by the bankruptcy estate of the Debtor in Tennessee.

c.  The Plaintiffs' requested the trustee of the son's estate to pursue recovery actions on behalf of the estate but the trustee refused.  If the trustee had pursued those claims he would not have been bound by any issue preclusion doctrine.

d.  Instead of pursuing the estate causes of action against the Defendant the trustee, without any prior notice to the Plaintiffs, filed a motion in the Bankruptcy Court seeking to sell the estates claims against the Defendant to the Defendant himself (through his son, Ron, as straw man).

e.  The Plaintiffs objected to the sale of the estate's claims to the Defendant.  At the hearing on the objections the Defendant's lawyer, Mr. Young, appeared and asserted to the court that the purpose of purchasing the claims was to acquire the claims so no one would be able to pursue them on behalf of the estate.

f.  The Bankruptcy Court overruled the Plaintiffs' objections but did establish a procedure for the auction of the estate's claims.

g.  Plaintiffs' counsel appeared at the auction on behalf of the Plaintiffs.  The only other parties at the auction were the Defendant and his counsel, Mr. Young.  During the auction, the only parties bidding were Mr. Young, the Defendant's attorney, ostensibly on behalf of Ron Salas, the Defendant's son, and Plaintiffs' counsel representing the two decedent's estates

h.  The Plaintiffs were the successful bidders at the auction.  As a result of the auction, the Defendant's original purchase price, which only could be interpreted as "a sweetheart deal" with the trustee, an offer of $10,000, was increased to $156,000.

i.  The auction sale was approved by Order of the Bankruptcy Court.

j.  The auction sale resulted in increasing the estate's value from $0.00 to $156,000.

k.  As a result of the substantial income to the estate, the trustee substantially increased his compensation, both as trustee and as counsel to the trustee.  The estate also paid out

substantial claims of Debtor's counsel and the trustee's accountant, Chapter 11 administrative expenses owed to the U.S. Trustee and the priority claim of the Internal Revenue Service. All those claims were paid in full. The remainder of the estate was used to pay 5 unsecured claims, pro rata, including the claims of the Plaintiffs.

l. The claims of the Plaintiffs are two separate and distinct claims. They were consolidated for trial in the D.C. Superior Court because they involved the same circumstances (the two decedents died in a tragic, preventable fire, and as a result of inadequate fire prevention and fire escape facilities at the son's residence managed by the Defendant), and the same witnesses. However, the Superior Court entered two judgments, one for each of the Plaintiffs.

Additional pertinent facts:

m. the basis of the Defendant's claim of "ownership" of the subject property consists solely of an alleged "Quitclaim Deed" dated July, 2010 which was clearly abandoned by the Defendant and the Debtor sometime in or about June, 2011 and which was lost or destroyed in 2011.

n. all public records of the District of Columbia, and all public notices regarding the subject property were sent to, and in the name of, the Debtor and not the Defendant.

o. the Deed of Trust on the property was in the sole name of the Defendant.

p. Although the Defendant has claimed that he made all payments on the property after 2007 (the date of the deed to his son), he did not acknowledge to any person or party that he actually owned the property. Even after the fire that caused the death of Michael Patrick McLoughlin and Nina Brekelmans, in June, 2015, the Defendant had his son file a loan mitigation application with the first trust lender asserting that his son was the owner of the

property.

q. No payments were made on the first deed of trust on the subject property since the fire with the sole exception of a single payment made from the insurance proceeds. The insurance policy was in the Defendant's name. Since June, 2015 the first payment on the property, other than the insurance proceeds payment was no earlier than November, 2019, 21 months after the Defendant and his son filed their separate Chapter 11 bankruptcies.[3]

27. The second question, also a matter of law, is whether an adverse decision to the Plaintiffs' in this case is binding on them in the present litigation in which the Plaintiffs are standing in the shoes of the Trustee in bankruptcy and are suing on behalf of the bankruptcy estate, the real party in interest. The second question is important in the context of bankruptcy cases since the trustee is often limited in his ability to pursue claims on behalf of the estate due to a lack of monetary and other resources.

28. These questions, for which leave to appeal is sought, are controlling since a decision in favor of the Appellants would yield judgment in favor of the Appellants on the first three counts of the Complaint which allege the right to recover under the Trustee's avoidance powers under 11 U.S.C. § 544 (a). In addition, with respect to the second question asserted above, related to whether issue preclusion applies to a third party suing on behalf of the estate, if this court determines the question in favor of the Appellants, the Appellants would be entitled to judgment on their fraudulent conveyance Counts (IV and V) of their Complaint since those counts, asserting constructive fraud are based upon undisputed facts.

---

[3]The son's bankruptcy, filed in this court, was converted to a Chapter 7 bankruptcy in December, 2018.

29. There is substantial ground for difference of opinion respecting the correctness of the Bankruptcy Court's decision since neither the Bankruptcy Court or the Defendant have cited any case which applies directly to the undisputed facts necessary to decide the two questions, *as a matter of law*, and the Plaintiffs assert that they have cited controlling law on both issues which the Bankruptcy Court appears to have ignored or overlooked. The Appellants have found no cases which counter the decision in **McKinley** a case decided by the D.C. Court of Appeals, and neither the Bankruptcy Court nor the Defendant have cited any case which states that the Trustee and the bankruptcy estate are the real parties in interest in derivative actions like the one at issue here.

30. An immediate appeal would clearly advance the termination of this litigation for two reasons: (1) if the Appellate Court reverses the Bankruptcy Court's summary judgment orders the case would then be settled at summary judgment without the need for a trial because deciding either question in favor of the Plaintiffs-Appellants would result in judgment upon reversal and remand; and (2) in the event leave is not granted and the Plaintiffs-Appellants lose at the trial, the Plaintiffs would still appeal the court's summary judgment order but, if that appeal is then successful, the parties would either have wasted their time and resources on an unnecessary trial, or would have to have a new trial on the same facts and with the same witnesses.

31. In addition to the factors asserted above and recognized in **Vitols**, **Trump**, and other cases cited hereinabove, the grant of the summary judgment which the Plaintiffs assert is appropriate under the undisputed facts and controlling law referenced above, would eliminate the need for a trial which would result in the necessity of significant travel by the parties, counsel and the witnesses, including Maryland (Martha Johnson and Michael McLoughlin), Florida (Gail

and Nico Brekelmans), D.C. (the Defendant), Murfreesboro, TN (the Debtor), Denver Colorado (Ron Salas), Memphis, TN (Cates) and Virginia (McNutt).

32. The Plaintiffs, through this Motion, are seeking leave to appeal the Bankruptcy Court's Order Denying the Plaintiffs' Motion for Summary Judgment and Granting the Defendant's Motion for Summary Judgment (as to Counts IV and V) of the Complaint, as well as the Bankruptcy Court's Order denying the Plaintiffs' Motion to Alter or Amend. Through the appeal sought, the Plaintiffs-Appellants are seeking reversal of the Bankruptcy Court's Orders of May 24, 2023 (D-101) and August 16, 2023 (D-109) and the entry of summary judgment in favor of the Plaintiffs on all Counts of their Complaint.

33. Attached to this Motion are the following documents:

a. The Bankruptcy Court's Order dated January 5, 2023 setting hearing on summary judgment questions submitted by the court (D-83); and

b. the Bankruptcy Court's Memorandum Opinion of May 24, 2023 (D-101); and

c. the Bankruptcy Court's Order Denying the Plaintiffs' Motion for Summary Judgment and Granting the Defendant's Motion for Summary Judgment (D-102); and

d. the Bankruptcy Court's Order Denying the Plaintiffs' Motion to Alter or Amend.

WHEREFORE, for the reasons set forth above, the Plaintiffs-Appellants pray for an Order granting their Motion seeking leave to appeal and for such other and further relief as is consistent with the allegations and arguments of the foregoing Motion.

Respectfully submitted,

BURCH PORTER & JOHNSON, PLLC

By: /s/ Taylor A. Cates
    Taylor A. Cates
130 North Court Avenue
Memphis, TN 38103
901-524-5165
901-524-5000 (fax)
Tacates@bpjlaw.com

LAW OFFICE OF PHILIP J. McNUTT, PLLC


By: /s/ Philip J. McNutt
    Philip J. McNutt
11921 Freedom Drive, Ste 588
Reston, VA 20190
703-904-4380
202-379-9217 (fax)
Pmcnutt@mcnuttlawllc.com

<u>Certificate of Service</u>

    I HEREBY CERTIFY that a copy of the foregoing Notice of Appeal was delivered electronically through the Court's ecf noticing system to the United States Trustee, Phillip G. Young, Jr., attorney for the Defendant-Appellee, and all parties requesting notice, all on this 28th day of August, 2023.


    /s/ Philip J. McNutt
    Philip J. McNutt